## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Case No. 09-02140 (HB)** |
| | § | |
| **BI-LO, LLC** *et al.*, | § | **Chapter 11** |
| | § | |
| **Debtors.**[1] | § | **(Joint Administration)** |
| | § | |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) EXTENDING THE TIME PERIOD DURING WHICH THE DEBTORS HAVE THE EXCLUSIVE RIGHT TO FILE A PLAN AND DISCLOSURE STATEMENT AND TO SOLICIT ACCEPTANCES AND (B) EXTENDING THE DEADLINE UNDER SC LBR 3016-1 FOR DEBTORS TO FILE A PLAN AND DISCLOSURE STATEMENT

BI-LO, LLC ("BI-LO" or the "Company") and its affiliated debtors in possession (collectively with BI-LO, the "Debtors") file this motion (the "Motion") requesting entry of an order, in substantially the form attached hereto as **Exhibit A**, extending the time period during which the Debtors have the exclusive right to file a plan of reorganization and disclosure statement (the "Exclusive Period") through and including December 20, 2009 and to solicit acceptances thereof (the "Acceptance Period") through and including February 18, 2010. Debtors also seek an extension of the deadline set forth in SC LBR 3016-1 for the Debtors to file a plan of reorganization and disclosure statement through and including December 20, 2009.

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: BI-LO, LLC (0130); BI-LO Holding, LLC (5011); BG Cards, LLC (4159); ARP Ballentine LLC (6936); ARP James Island LLC (9163); ARP Moonville LLC (0930); ARP Chickamauga LLC (9515); ARP Morganton LLC (4010); ARP Hartsville LLC (7906); and ARP Winston Salem LLC (2540).

## I. **PRELIMINARY STATEMENT**

1.      As with the Chapter 11 filings of other large, complex debtors, the Debtors in these Chapter 11 Cases have been working over the first ninety days to stabilize their operations, preserve employee morale, strengthen customer loyalty, defend against competitors, and respond to hundreds of pleadings and informal requests by the various constituencies.  In these first 12 weeks in Chapter 11—a period the Debtors regard as the first phase of the proceedings—the Debtors have achieved considerable success in their objectives and, moreover, have even been able to improve the financial performance of the business. These results are due to the considerable efforts of the Debtors' executive management team, their advisors, and the hard-working employees, notwithstanding multiple challenges during this phase of the proceedings.

2.      With an extension of the Exclusive Period and the Acceptance Period, the Debtors will be able to focus on and aggressively pursue additional objectives in the second phase of these Chapter 11 Cases.  Several weeks ago, they launched a comprehensive review of the Debtors' business and are in the process of formulating a detailed five year business plan (the "Five Year Plan"), which, as discussed later, involves an number of detailed analyses and work streams, the purpose of which is to improve operations, increase profitability, and create a path to reorganize under and emerge from Chapter 11.

3.      It is the Debtors' intention to promptly complete the work on the Five Year Plan and then to work with its different constituencies in an effort to build consensus regarding that business plan and, from there, to formulate and propose a plan of reorganization that is in the

best interests of the Debtors' constituencies and maximizes value and recoveries for the stakeholders.  Extension of exclusivity is warranted in order to enable the Debtors to do so.

## II.  JURISDICTION, PROCEDURAL HISTORY, AND FACTUAL BACKGROUND

4.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Local Civil Rule 83.IX.01, D.S.C.  The Motion is a core proceeding pursuant 28 U.S.C. §§ 157(b)(2)(A), (L) & (O).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.    The bases for the relief requested are § 1121(d) of title 11 of the United States Code (the "Bankruptcy Code" or the "Code"), Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and SC LBR 3016-1.

6.    On March 23, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned cases (the "Chapter 11 Cases").  On March 23, 2009, the Court entered an order designating the Chapter 11 Cases as Complex Chapter 11 Cases pursuant to SC LBR 2081-2. On March 24, 2009, the Chapter 11 Cases were administratively consolidated under Case No. 09-02140.

7.    The Debtors are operating their business and managing their properties as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  On March 30, 2009, the Office of the United States Trustee for the District of South Carolina (the "US Trustee") appointed the official committee of unsecured creditors (the "Committee").

8.    BI-LO operates as a regional retail supermarket chain under the "BI-LO" and "Super BI-LO" banners.  As of the Petition Date, BI-LO was one of the largest food retailers

in the Southeast United States, operating more than 200 stores in South Carolina, North

Carolina, Georgia, and Tennessee, with the majority of stores located in South Carolina.  BI-

LO's corporate headquarters is located in Greenville, South Carolina, and it employs more

than 15,000 employees in more than 200 locations in four states.  The additional Debtors are

affiliates of BI-LO who own assets related to BI-LO's business.

9.      The organization of the ten Debtors is shown in the following chart:



### III.  RELIEF REQUESTED

10.    The Exclusive Period set forth in § 1121(d) of the Bankruptcy Code currently

expires on July 21, 2009, and the 180-day deadline for filing a Plan and Disclosure Statement

set forth in SC LBR 3016-1 currently expires on September 21, 2009.

11.    By this Motion, the Debtors seek entry of an order, pursuant to § 1121(d) of the

Bankruptcy Code, granting a 120-day extension of the Exclusive Period and the Acceptance

Period through and including December 20, 2009 and February 18, 2010, respectively.

12.    The Debtors also seek an extension through and including December 20, 2009

of the 180-day deadline for filing a Plan and Disclosure Statement provided by SC LBR 3016-

1.

### IV.  THE DEBTORS' FINANCIAL PERFORMANCE,
### GOALS, ACTIVITIES, AND TIMELINE

13.    Extension of exclusivity is appropriate for many reasons:  the financial

performance of the business is improving in the postpetition era; the Debtors are well into

developing the Five Year Plan; the Debtors are preparing to satisfy the GE DIP loan's

timetable with respect to inventory in stores whose lease assumption-or-rejection deadlines are

not consensually extended; the C&S negotiation has just begun; the Debtors have learned who

the major, active constituencies are and have come to understand their respective interests;

and the Debtors have fully and timely paid all amounts due postpetition or, with respect to

certain prepetition amounts, specifically authorized by the Court for payment.  Each of these

reasons is an independent basis for extending exclusivity, and, taken together, present a

compelling case for the requested extension.

### A.  *Current State of the Company's Business*

14.    To begin, BI-LO's financial performance and liquidity have been and remain strong.  Through the first 20 weeks of the year, ended May 23, the Company's overall sales are 2.5% ahead of budget and flat versus the same period last year, though BI-LO is operating 8 fewer store locations than the same period last year.  More importantly, comparable same store sales are 1.4% ahead of the same period last year, marking the first time in over two years the Company has increased comparable store sales.  In addition, BI-LO has increased its market share in each of the last three months (March, April and May), reflecting the resurgence of the BI-LO brand versus other food retailers in the market.  Earnings have also improved as a result of stronger sales trends and cost reduction initiatives taken by the Company.  Year-to-Date EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization) is 23% ahead of budget and 6% above the same period last year.  This strong performance has also translated into improved cash flow and liquidity for the Company, as BI-LO had over $59 million of net availability under its DIP facility as of May 23.

### B.  *The Five Year Business Planning Process*

15.    The early days of the Chapter 11 Cases have been quite demanding on the Debtors' management and professionals.  While attending to the case and many important related issues outlined below, the management team has remained focused on managing and operating a successful grocery store chain, and has done so with success.  As described at each of the Court's prior hearings, BI-LO continues to outperform the Company's business plan in both top line sales and reported EBITDA and cash flow.  This success has come in spite of not just the difficult current economic climate but also of the overlay of the

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) EXTENDING THE TIME PERIOD DURING WHICH THE DEBTORS HAVE THE EXCLUSIVE RIGHT TO FILE A PLAN [ETC] - page 7**

bankruptcy process, which has added a unique set of challenges and elements to their efforts and demands on their time.

16.     While attending to the operations of the business and the continuous demands and requests of the Debtors' constituencies and appearing at court hearings, the Debtors' executive management (Mr. Byars, the Chief Executive Officer, and Mr. Carney, the Chief Financial Officer), the Debtors' Financial Advisor (Mr. Carroll and his colleagues of William Blair & Co., LLC), the Chief Restructuring Officer (Mr. Feder and his colleagues of Alix Partners, LLC), along with numerous employees of the Debtors, have launched a complete review of the business of the Debtors, from bottom to top, with the goal of formulating a business plan for the enterprise for the next five years (referred to by the Debtors as the "Five Year Plan").  This comprehensive planning process, which was described in testimony by Mr. Carney at the hearing of June 3, 2009, comprises eight separate, though inter-related, work streams supported by a large number of separate analyses, all with the goal of making adjustments determined to be needed, if any, to the geographical footprint of the business(the locations at which business is conducted), improving operations, and increasing profitability of the enterprise; and all of such analyses will roll up into the Five Year Plan that lays out the Debtors' understanding of their near- and medium-term business prospects and plan. Under their internal timetable, the Debtors presently anticipate completion and delivery of the Five Year Plan (subject to appropriate confidentiality restrictions) to the major creditor constituencies by mid-to-late July 2009, just about the time the Debtors' initial Exclusive Period would otherwise expire.

17.    The Debtors will use the Five Year Plan to undergird its business activities and its restructuring proceedings throughout the rest of the Chapter 11 Cases.  In this context, it should be observed that Bankruptcy Code§ 1123  contemplates a wide variety of restructuring options:

(A) retention by the debtor of all or any part of the property of the estate;

(B) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan;

(C) merger or consolidation of the debtor with one or more persons;

(D) sale of all or any part of the property of the estate, either subject to or free of any lien, or the distribution of all or any part of the property of the estate among those having an interest in such property of the estate;

(E) satisfaction or modification of any lien;

(F) cancellation or modification of any indenture or similar instrument;

(G) curing or waiving of any default;

(H) extension of a maturity date or a change in an interest rate or other term of outstanding securities;

(I) amendment of the debtor's charter; or

(J) issuance of securities of the debtor, or of any entity referred to in subparagraph (B) or (C) of this paragraph, for cash, for property, for existing securities, or in exchange for claims or interests, or for any other appropriate purpose . . . .

Bankruptcy Code § 1123(a)(5).

18.    It is important to understand how critical the Five Year Plan will be in determining the outcome of these Chapter 11 Cases.  It will be the foundation for determinations of value, the exploration of recapitalization and refinancing possibilities, and the evaluation of any sale opportunities.  It literally will be the center of all opportunities and decisions.

19.     At this point in the Chapter 11 Cases, none of such options has been foreclosed; to the contrary, the Debtors will, after completing the Five Year Plan and working with all constituencies, explore all alternatives in determining how to achieve the best results for the estate and all constituencies.

20.     In summary of some of the possible outcomes or actions that will be driven by the Five Year Plan, the following options will be considered (each of which should be understood to be only hypothetical at this time):



21.     It may be observed, also, that refinancings, recapitalizations, and a sale either of the business or of particular stores/markets will require a longer lead time today than prior to the deterioration of credit and equity markets last year, as lenders, investors, and buyers now take longer to complete due diligence, negotiate terms, and arrange funding.

22.     After internal completion of the Five Year Plan, the Debtors will consult with their constituencies about to gain input and feedback.  Assuming this is provided by the

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) EXTENDING THE TIME PERIOD DURING WHICH THE DEBTORS HAVE THE EXCLUSIVE RIGHT TO FILE A PLAN [ETC] - page 10**

constituencies in a reasonable manner, it is realistic to expect that the Five Year Plan will not

be truly finalized until mid-to-late August.

23.     Until the Five Year Plan has been completed and analyzed, the Debtors have

made no determination as to which of the many paths towards emergence from Chapter 11 is

the best route and submit that such a determination by any party would be premature.

Instead, the Debtors believe that such determinations should wait until the Debtors business

has been properly analyzed and the Five year Plan developed and vetted.

24.     The Debtors therefore submit that the Exclusive period and Acceptance Period

be extended to give the Debtors adequate time to complete the Five Year Plan and develop it

into the basis for a plan of reorganization as appropriate.

## C.   *The GE DIP Loan's Timetable*

25.     The postpetition financing approved by the Court and extended to the Debtors

by GE—which is functioning very smoothly—does not expires until April 8, 2010, so maturity

of the loan is not a time constraint at this juncture of the Chapter 11 Cases.

26.     But the GE loan does contain an important intermediate timetable pertaining to

the maintenance of value of inventory in the borrowing base and thus the availability, or

amount of accessible credit, under the credit agreement.

27.     The timetable is grounded upon the DIP lender's concern about the effect of the

time limits of Bankruptcy Code § 365(d)(4) for assumption or rejection of nonresidential real

property leases.   In order for inventory to remain in the borrowing base, the Debtors must

either obtain consensual extensions of the § 365(d)(4) deadline from any particular store

landlord or else must obtain Court approval for a store liquidator.

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) EXTENDING THE TIME PERIOD
DURING WHICH THE DEBTORS HAVE THE EXCLUSIVE RIGHT TO FILE A PLAN [ETC] - page 11**

28.    The GE DIP loan-driven timetable is as follows:

No Later Than Date

| | |
|---|---|
| June 23rd | Deliver Proposed Store Sale Procedures to constituencies for review and comment. |
| July 1st | File Generic Store Sale Procedures Motion (for use if needed). |
| July 15th | Hold discussions with constituencies regarding store divestiture package. |
| July 17th | Develop and circulate GOB agent RFP. |
| July 22nd | Hearing Regarding Sale Procedure |
| July 30th | Begin Sale Procedure (as needed). |
| August 17th | Hire GOB Agent from RFP and inform GE. |
| August 20th | Initial bids due on stores. |
| September 14th | Winning bidders documented/selected. |
| September 14th | Begin GOB on stores without buyers. |
| September 30th | Store Sale Auction. |
| October 19th | Deadline to Assume/Reject, as extended by Court order (Dkt # 658). |

29.    Of course, the Debtors are seeking, with the assistance of their lease consultant,

DJM, consensual extensions from their landlords of the § 365(d)(4) deadline out past the

present deadline of October 19, 2009; but in an abundance of caution, the Debtors must

prepare for at least certain store liquidations based on this timetable.

30.    Since the lease negotiation and provisional inventory liquidation process

timetable extends into the autumn, additional good cause exists for the extension of the

Exclusive Period and Acceptance Period.

## D.    *The C&S Negotiation and Supply Alternatives*

31.    C&S Wholesale Grocers, Inc. ("C&S") is a designated critical vendor of BI-LO

that supplies about 70 percent of all groceries and merchandise and performs related services

for the BI-LO stores.  Under the *Order Approving Payment To, And Allowing Administrative*

*Claim Of, C&S Wholesale Grocers, Inc. As A Critical Vendor On Certain Terms And*

*Conditions* (Dkt # 676), BI-LO has paid in full the $17.2 million arrearage for C&S's

prepetition goods and services under the prepetition *BI-LO LLC Supply Agreement*, as

amended (the "Supply Agreement").  All postpetition deliveries have been and are presently being paid in full each Monday.

32.     Significant additional issues remain between the Debtors and C&S.  Pursuant to the First Amendment to BI-LO LLC Supply Agreement dated March 21, 2009, C&S agreed with BI-LO to negotiate about revisions to the Supply Agreement during a period extending from the Petition Date through December 1, 2009.  During this period, significant surcharges otherwise accruing are deferred by C&S for payment.   Such lengthy period reflects recognition on both parts that the issues to be discussed are numerous and that resolution of such issues will likely require extended negotiations.

33.     After several preliminary conversations, serious business discussions along this line commenced in the past week.  The necessity of the Debtors to understand future costs of distribution prior to reorganization and the lengthy negotiation pathway with C&S are additional reasons why the Exclusive Period should be extended.

## E.   The Debtors' Constituencies and Their Interests

34.     The Debtors have numerous creditors (some 3,750 are listed on BI-LO's Schedules D-F) and one equity security holder.

35.     The Bar Date in these Chapter 11 Cases is August 13, 2009, a date that falls after the Debtors' initial Exclusive Period.  Moreover, the Bar Date for governmental units is even later, September 21, 2009.  While every effort has been made to identify all claims and potential claims on the Schedules, it is quite likely that unanticipated claims and claim amounts may be filed before the Bar Date.

36.     Without opportunity to understand the claims, analyze them, and reconcile them to the Debtors' books and records, the Debtors' ability to assess the viability of a plan of reorganization will be impaired.  Uncertainty as to the universe of claims to be dealt with in these Chapter 11 Cases is a good cause for extension of the Exclusive Period.

37.     Without detracting from the significance of any party in interest, and in no particular order, the most visible and involved of the creditor and equity constituencies are the DIP lender, General Electric Business Financial Services, Inc. ("GE"); the Official Unsecured Creditors Committee (the "Committee"); C&S; the Term Lenders; Koninklijke Ahold N.V. ("Ahold") and the landlords; Blue Cross/Blue Shield; and Lone Star Fund V, L.P. ("Lone Star").

38.     GE.  GE's prepetition debt has been retired through the postpetition loan, except for minor remaining, contingent indemnification claims; but GE is of course a major creditor to whom the Debtors report regularly and frequently and with whom the Debtors have ongoing dialog as to restructuring issues.

39.     Committee.  The Committee comprises representatives of trade vendors and one landlord:

- Kraft/Nabisco
- Kellogg Company
- Sara Lee Corp.
- Cardinal Health 110, Inc.
- C&S Wholesale Grocers, Inc.
- Developers Diversified Realty Corp.
- Coca-Cola Bottling, Inc.
- Flowers Baking Co. of Morristown, LLC
- Bottling Group, LLC (Pepsi)

40.    The Committee is particularly concerned with the possibility that, although the business is operating well, the Chapter 11 Cases might turn into a liquidation.  It is true that in the past two years, the vast majority of retail Chapter 11 cases have ended in liquidation; and in that milieu the Committee and its professionals are quite experienced and adept.  But BI-LO has quite different attributes from such retail failures—substantial liquidity, strong cash flow, and significant strategic value—and the vendors are supportive of reorganization.

41.    The Debtors have worked closely with the Committee, its counsel, and its financial advisor in developing a program to support the continued trade credit from the Debtors' vendors and on numerous other issues important to the Debtors estates and all unsecured creditors.  The Debtors worked closely with the Committee on the Debtors' *Motion for Entry of an Order Establishing Procedures for Payment of Claims Pursuant to 11 U.S.C. § 503(b)(9)* (Dkt # 659 the "503(b)(9) Motion") (decision pending).

42.    The Debtors anticipate that discussions with the Committee will become increasingly important as the Debtors complete their Five Year Plan and proceed towards an exit from Chapter 11.  Continued, productive, and ongoing discussions with the Committee constitute additional cause for the extension of the Exclusive Period and Acceptance Period.

43.    C&S.  As noted above, C&S is a highly significant party in these Chapter 11 Cases.    C&S is well represented and is active in these Chapter 11 Cases on its own behalf and as Co-Chair of the Committee.  Negotiations about the Supply Agreement have begun, as has consideration of alternative sources or supply and of self-distribution.

44.    Term Lenders.  Agented by Bank of New York—Mellon, the Term Lenders are:

- KKR Financial on behalf of various funds
- Ares Management, LLC on behalf of various funds

- Canyon Partners
- Merrill Lynch Credit Products
- Grace Bay Holdings II, LLC (c/o Bayside Capital, Inc.)
- C. Saunders LLC (c/o Wellspring Capital Management and Guggenheim Partners)

45.     The Term Lenders are well represented and have been active in the Chapter 11 Cases.  As the largest component of the Debtors' funded debt, the resolution and treatment of their large claims are significant issues in the Chapter 11 Cases.   The disagreements between the Term Lenders and the Debtors heretofore have been centered on value and views about dealing with value.

46.     On one hand, the value of the estate will become clearer after the completion of the Five Year Plan.  These Chapter 11 Cases will benefit all constituencies, not just the Term Lenders, if the Debtors are afforded the time and opportunity to discharge their fiduciary duties to maximize value for the benefit of all interested parties, not solely secured claims. Value of the estate, deriving from the Five Year Plan, is key here.

47.     On the other hand, the Debtors have stated that the value of that portion of the estate that is encumbered to the Term Lenders is a significant issue for the estate, and they have a motion in abeyance, the *Debtors' Motion For Valuation Of The Term Lenders' Collateral For And During The Pre-Confirmation Stage Of The Case* (Dkt # 386), addressed to that issue.  The Debtors and the Term Lenders negotiated the *Consent Order Approving Adequate Protection Cash Payments and Related Matters* (Dkt # 557) as a bridge to further negotiations while determination of the value of the Term Lenders' collateral remains in abeyance, freeing the parties to focus on the Debtors' business plan and other issues critical to the Chapter 11 Cases.

48.     Time and opportunity to maximize estate value for the benefit of both secured and unsecured claims, as well as for negotiations with the Term Lenders as an alternative to litigation of claim issues, furnish additional cause for extension of the Exclusive Period.

49.     Ahold; Landlords.   Ahold is a significant creditor of the Debtors by virtue of having long ago guaranteed about two-thirds of the Debtors' store leases.   In recognition of its significant role in the Debtors' cases, Ahold entered into the *Ahold Cost-Sharing Agreement* (the "Ahold Agreement") with the Debtors, approved by the Court's *Order Approving Compromise with Koninklijke Ahold N.V. Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. §§ 105(a) and 365* (Dkt #401), which is functioning smoothly and beneficially for the estate.

50.     Ahold is well represented and is an active creditor in the Chapter 11 Cases, as evidenced by its recent opposition to the 503(b)(9) Motion; and, despite that disagreement, Ahold has both provided financial support in the form of the Ahold Agreement and continuously expressed its belief in and support for the reorganization, recapitalization, or sale of the Company as a going concern.   The Debtors intend to continue to negotiate and work with Ahold for mutual advantage during the remainder of the Chapter 11 Cases.

51.     Relatedly, the Debtors' store landlords are well represented and quite involved in the Chapter 11 Cases.   All postpetition payments of rent and lease obligations are current. Negotiations remain to be had with the landlords regarding a variety of issues, ranging from requests for rent modifications, extension of the § 365(d)(4) deadline for rejection of leases (if any more are determined for rejection, and subject to the Ahold Agreement) or for assumption of leases.

52.    The issues to be addressed with Ahold and the landlords in the months to come provide further cause for an extension of the Exclusive Period.

53.    <u>Other creditor constituencies and major issues and tasks</u>.    The Debtors have negotiated extensively with Blue Cross/Blue Shield of South Carolina regarding resolution of a prepetition issue and regarding extension of the term of medical coverage provided to BI-LO employees through Blue Cross/Blue Shield; and the Debtors expect to file a motion to address same in the very near future.

54.    Further, BI-LO has a list of claims against its former subsidiary, Bruno's Supermarkets, LLC ("Bruno's"), which is the Chapter 11 debtor in its own Chapter 11 case pending in the Northern District of Alabama ("Bruno's Case").    Bruno's may in turn assert claims against BI-LO; if so, BI-LO will make a proposal regarding the inter-estate, inter-court resolution of such claims.    Furthermore, the issues of any claim to be filed by C&S in Bruno's Case and BI-LO's guaranty held by C&S are significant and yet to be reified and addressed.

55.    Responding to numerous and ongoing document and information requests from the various constituencies has required a significant amount of time and effort and likely will continue to do so.

56.    Review and analysis of all outstanding leases and contracts is underway.

57.    All of these matters and tasks present further reasons why exclusivity should be extended.

58.    <u>Lone Star</u>.    The Debtors believe that their estates are more valuable than the sum of all claims.    Assuming that is correct, then the equity security holder, Lone Star

(through its affiliate, LSF5 BI-LO Investments, LLC, the immediate non-debtor parent of the Debtors) is entitled to receive or retain value pursuant to a plan in respect of its equity investment.

59.    Apart from its interest derived from its investment, as the owner, Lone Star participates in the governance of the Debtors postpetition, just as it did prepetition.  Each of the Debtors is a limited liability company that is managed by its sole member, except for BI-LO, which also has a Board of Directors composed of one Lone Star representative, John Kinzer, and one independent director, the former Interim CEO and grocery industry veteran, Randall Onstad.  Solely because a LLC files a Chapter 11 case, the governance of the entity does not change; rather the equity owner continues to hold the governance rights accorded by relevant state law, in this instance, Delaware business entity law.  There is no difference between publicly and privately owned firms in this regard; corporate governance does not change merely because the entity files a Chapter 11 petition, and Lone Star is properly participating in these Chapter 11 Cases by exercising those governance rights.

60.    Lone Star is well represented and has indicated to the Debtors and the creditors its desire and intention to be fully involved in the reorganization proceedings.

### F. *Performance of the Debtors' Reporting and Postpetition Payment Obligations*

61.    As the Court should expect of the Debtors' team of professionals and advisors, all of the Debtors' reporting obligations have been timely met.

    a. Specifically, the Debtors' filed their Bankruptcy Schedules and Statements of Financial Affairs on May 1, 2009, as requested by the US Trustee and Court and prior to the date requested by the Debtors.

b.  The US Trustee was able to hold the Debtors 341(a) Meeting of Creditors on
May 14, 2009, without any continuation.

c.  The Debtors have filed the Monthly Operating Reports as expected for the April
and May financial periods.

d.  The Debtors have provided all information requested by the US Trustee in its
assurance roles and has paid the required US Trustee fees.

62.    The Debtors have timely and fully made all payments (totaling many millions of
dollars) due to GE, C&S, all other vendors, the employees, and the Term Lenders for
adequate protection.  Further, the Debtors have, pursuant to explicit Court authorization, paid
the prepetition arrearage of C&S and the prepetition wages and other amounts due to
employees.

## V.  BASIS FOR RELIEF REQUESTED

63.    <u>Only</u> the Debtor has the statutory responsibility to take into account <u>all</u> of the

divergent interests and issues of <u>all</u> of the foregoing constituencies of creditors and equity

holder and the functional ability to forge wide-ranging agreements and to formulate a plan of

reorganization that accommodates <u>all</u> those interests and resolves <u>all</u> those issues.    The

primary means by which these Debtors, like debtors in possession in any other successful,

non-liquidating Chapter 11 cases, maintains appropriate control of the Chapter 11 process in

order to cause such accommodations and resolutions to occur and to succeed is to retain its

exclusive right to propose and confirm a plan under Code § 1121.  The Debtors are off to a

good start to achieve such results, and cause exists for the Court to order the extension of the

Exclusive Period and Acceptance Period to enable the Debtors to proceed with their

responsibilities.

64.    Section 1121(b) of the Bankruptcy Code provides the Debtors with the exclusive

period of 120 days from the Petition Date during which no other party may file a plan.

Further, if a debtor files a plan within the 120 day Exclusive Period, § 1121(c)(3) provides

that the Exclusive Period is extended for an additional sixty (60) days to allow acceptance by

each class of claims or interests that is impaired under the plan (i.e., the Acceptance Period).

Section 1121(d) provides that, upon request of a party in interest, notice, and a hearing, the

Court, for cause, may extend the 120-day Exclusive Period, which request must be made

within the original 120-day Exclusive Period or the 180-day Acceptance Period.

65.    The term "cause" as used in § 1121(d) of the Bankruptcy Code is not defined in

the Bankruptcy Code.    In determining whether "cause" exists for an extension of the

Exclusive Period, courts have relied on several non-exhaustive factors, including the following:

a.    the size and complexity of the debtor's case;
b.    the necessity of sufficient time to negotiate and prepare adequate information;
c.    the existence of good faith progress toward reorganization;
d.    a finding that a debtor has demonstrated reasonable prospects for filing a viable plan;
e.    whether the debtor has made progress in negotiations with its creditors;
f.    the length of time the case has been pending;
g.    whether unresolved contingencies exist; and
h.    a finding that a debtor is paying its bills and not extending the period of exclusivity simply to exert pressure on creditors.

*In re Adelphia Communications Corp.*, 352 B.R. 578, 586-87 (Bankr. S.D.N.Y. 2006); *see also In re Homestead Partners*, 197 B.R. 706, 720 (Bankr. N.D. Ga. 1996). In determining whether cause exists, the question of whether to extend the Exclusive Period rests within the sound discretion of the court. *Adelphia*, 352 B.R. at 586. The bankruptcy court has discretion to decide which factors are relevant and give appropriate weight to each. *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003).

66.    The Debtors' Chapter 11 Cases satisfy each of the foregoing case-law factors.

### a.  *the size and complexity of the debtor[s'] cases*

67.    The Debtors' Chapter 11 Cases are large and complex, as demonstrated by the discussion of its various, sometimes discordant, constituencies and their interests. Furthermore, size and complexity is shown in the *Schedules* and *Statements of Financial Affairs* (see, e.g., BI-LO's Schedules of Assets and Liabilities, Dkt #543), the Debtors' business operations in more than 200 grocery store locations in four states, numerous real property and personal property leases and executory contracts, funded debt in excess of $320

million, more than 15,000 employees, and the fact that more than 50,000 creditors have been

given notice of the Chapter 11 Cases (including current and former employees).

68.    As of the date of the filing of this Motion, the Court's docket reflects that more

than 790 motions, orders, notices, and other papers have been filed during the past 86 days of

these Chapter 11 Cases.   The following are the final orders entered by the Court upon the

motions and applications of the Debtors:

| Date Filed | Court Docket # | Title of Order |
|---|---|---|
| 6/10/09 | 0770 | Order to Seal Records re: Exhibits 3 and 4 Admitted June 3, 2009 |
| 6/10/09 | 0767 | Order Granting BI-LO's Motion for Approval of Its Agreement to Subordinate a Portion of BI-LO's Claims Against Bruno's Estate |
|  | 0763 | Order Authorizing the Debtors to Employ and Retain DJM Asset Management, LLC as Lease Mitigation Consultant and Appraiser for the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 328(a) |
| 6/4/09 | 0751 | Order Authorizing the Debtors to Employ and Retain William Blair & Company, L.L.C. as Investment Banker for the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 328(a) Effective Nunc Pro Tunc to the Petition Date |
| 6/3/09 | 0747 | Order Authorizing Rejection of Certain Equipment Leases |
| 6/2/09 | 0720 | Order Authorizing the Debtors to Employ and Retain DJM Asset Management, LLC as Lease Mitigation Consultant and Appraiser for the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 328(a) |
| 6/2/09 | 0713 | Second Consent Order Granting Extension of Time for Debtors to Object to the Verified Motion of Cardinal Health 110, Inc., Seeking Relief from the Automatic Stay and Continuance of Motion |
| 6/2/09 | 0712 | Second Consent Order Granting Extension of Time for Debtors to Object to the Notice of Application for Administrative Expense Pursuant to 11 § U.S.C. 503 (b)(9) Filed by Cardinal Health 110, Inc. and Continuance of Motion |
| 5/31/09 | 0697 | Order Approving Payment to, and Allowing Administrative Claim of, C&S Wholesale Grocers, Inc. as a Critical Vendor on Certain Terms and Conditions |
| 5/29/09 | 0688 | Second Consent Order Granting Extension of Time for Debtors to Object to the Verified Motion of Cardinal Health 110, Inc., Seeking Relief from the Automatic Stay and Continuance of Motion |
| 5/29/09 | 0687 | Second Consent Order Granting Extension of Time for Debtors to Object to the Notice of Application for Administrative Expense Pursuant to 11 U.S.C. § 503(b)(9) Filed by Cardinal Health 110, Inc. and Continuance of Motion |
| 5/29/09 | 0676 | Order Approving Payment to, and Allowing Administrative Claim of, C&S Wholesale Grocers, Inc. as a Critical Vendor on Certain Terms and Conditions |
| 5/21/09 | 0658 | Order Extending the Deadline by Which the Debtors Must Assume or Reject Unexpired |

| Date Filed | Court Docket # | Title of Order |
|---|---|---|
| | | Leases of Nonresidential Real Property |
| 5/21/09 | 0656 | Order Authorizing Rejection of Sublease of New Spring Community Church |
| 5/8/09 | 0608 | Consent Order Granting Extension of Time for Debtors to Object to the Verified Motion of Cardinal Health 110, Inc., Seeking Relief from the Automatic Stay and Continuance of Motion |
| 5/8/09 | 0607 | Consent Order Granting Extension of Time for Debtors to Object to the Notice of Application for Administrative Expense Pursuant to 11 U.S.C. § 503(b)(9) Filed by Cardinal Health 110, Inc. and Continuance of Motion |
| 5/1/09 | 0577 | Consent Order Approving Adequate Protection Cash Payments and Related Matters |
| 5/1/09 | 0542 | Order Scheduling Omnibus Hearing Dates |
| 5/1/09 | 0540 | Consent Order Authorizing Appointment of Consumer Privacy Ombudsman |
| 5/1/09 | 0539 | Order Authorizing the Debtors (A) to Employ and Retain Grafe Auction Company as Liquidator to Conduct Public Auction Sales; (B) to Sell Certain Equipment Assets Free and Clear of All Liens, Claims, Interests and Encumbrances; and (C) to Disburse the Net Proceeds to the Term Lender for Credit Upon Their Claims |
| 4/27/09 | 0513 | Order Authorizing the Debtors to Employ and Retain Vinson & Elkins L.L.P. as Counsel for the Debtors Effective Nunc Pro Tunc to the Petition Date |
| 4/23/09 | 0491 | Consent Order with Respect to Motion Authorizing Assumption of a Certain Nonresidential Real Property Lease and Certain Related Relief |
| 4/23/09 | 0487 | Order Authorizing Rejection of Certain Nonresidential Real Property Leases and Providing Certain Related Relief |
| 4/23/09 | 0485 | Final Order Determining Adequate Assurance of Payment for Future Utility Services and Setting a Final Hearing |
| 4/23/09 | 0482 | Order Authorizing the Debtors to Sell and Transfer Certain Pharmacy Inventory and Records and to Disburse the Net Proceeds Thereof to the Debtors' DIP Lenders |
| 4/23/09 | 0481 | Order Pursuant to 11 U.S.C. § 363(b) Authorizing the Debtors to Employ and Retain AP Services, LLC to Provide Restructuring Services and to Designate Michael Feder as Chief Restructuring Officer Effective Nunc Pro Tunc to the Petition Date |
| 4/22/09 | 0477 | Order Authorizing the Debtors to Employ and Retain Nelson Mullins Riley & Scarborough, L.L.P. as Bankruptcy Co-Counsel and General Corporate Counsel for the Debtors Effective Nunc Pro Tunc to the Petition Date |
| 4/16/09 | 0406 | Final Order (A) Approving Senior Secured Superpriority Postpetition Financing, (B) Authorizing Use of Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection and (E) Modifying Automatic Stay |
| 4/16/09 | 0401 | Order Approving Compromise with Koninklijke Ahold N.V. Pursuant to Bankruptcy Rule 9019(a) and 11 U.S.C. §§ 105(a) and 365 |
| 4/13/09 | 0381 | Order Approving Procedures for Rejecting Unexpired Leases of Nonresidential Real Property |
| 4/9/09 | 0330 | Order (A) Authorizing the Debtors to Pay Certain Prepetition Claims of Vendors and PACA Claimants and (B) Approving Procedures Related Thereto |
| 4/8/09 | 0314 | Order Authorizing Continuation of Insurance Policies and Payment of All Obligations in Respect Thereto |

| Date Filed | Court Docket # | Title of Order |
|---|---|---|
| 4/3/09 | 0238 | Order Granting Debtors' Motion for Emergency Hearing on the Motion of the Debtors for Entry of an Order Approving Compromise with Koninklijke Ahold N.V. Pursuant to Bankruptcy Rule 9019(a) and 11 U.S.C. 105(a) and 365 |
| 4/3/09 | 0233 | Order Authorizing the Debtors to File Under Seal the C&S Agreements |
| 4/3/09 | 0225 | Order Authorizing the Debtors to Remit and Pay Certain Taxes and Fees |
| 3/31/09 | 0168 | Order Authorizing Debtors' Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business |
| 3/27/09 | 0119 | Corrected Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members |
| 3/27/09 | 0117 | Order Granting the Debtors Additional Time Within Which to File Schedules and Statements |
| 3/27/09 | 0116 | Order Authorizing the Debtors to (A) Prepare a Consolidated List of Creditors and Equity Security Holders in Lieu of a Mailing Matrix, (B) File a Consolidated List of the Twenty Largest Unsecured Creditors and (C) Mail Initial Notices |
| 3/27/09 | 0115 | Order Establishing Certain Notice, Case Management and Administrative Procedures |
| 3/27/09 | 0114 | Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members |
| 3/27/09 | 0113 | Order Granting Authority for the Debtors to Honor Certain Prepetition Customer Programs |
| 3/27/09 | 0112 | Supplemental Order Amending Order Authorizing the Debtors to Continue to Provide Employee Medical and Similar Benefits and Pay Prepetition Claims Related to the Foregoing |
| 3/27/09 | 0111 | Order Approving Debtors' Motion for Emergency Hearing |
| 3/25/09 | 0060 | Amended Order Authorizing the Debtors to Continue to Provide Employee Medical and Similar Benefits and Pay Prepetition Claims Related to the Foregoing |
| 3/25/09 | 0057 | Order Authorizing the Debtors to Employ Kurtzman Carson Consultants LLC as Claims, Noticing, and Balloting Agent |
| 3/24/09 | 0049 | Order Authorizing the Debtors to Continue to Provide Employee Medical and Similar Benefits and Pay Prepetition Claims Related to the Foregoing |
| 3/24/09 | 0048 | Order Authorizing the Debtors to (A) Continue Existing Cash Management System, (B) Maintain Existing Bank Accounts and Business Forms and (C) Maintain Existing Investment Practices |
| 3/24/09 | 0047 | Order Authorizing the Debtors to Pay Certain Prepetition Claims of Alcoholic Beverage Claimants and State Governments for Lottery Ticket Proceeds |

| Date Filed | Court Docket # | Title of Order |
|---|---|---|
| 3/24/09 | 0046 | Order Authorizing the Debtors to Pay Certain Prepetition Wages, Salaries and Other Compensation |
| 3/25/09 | 0045 | Order Granting Authority to Turn Over Certain Funds Held in Trust and to Continue Performance and Honor Obligations Under Consignment Arrangements |
| 3/24/09 | 0043 | Order Directing Joint Administration of the Debtors' Related Chapter 11 Cases |
| 3/23/09 | 0014 | Order Designating the Debtors' Chapter 11 Cases as Complex Chapter 11 Cases Pursuant to Local Rule 2081-2 and Notice of Hearings on First Day Pleadings and Initial Status Conference |
| 3/23/09 | 0013 | Order Designating the Debtors' Chapter 11 Cases as Complex Chapter 11 Cases Pursuant to Local Rule 2081-2 and Notice of Hearings on First Day Pleadings and Initial Status Conference |
| 3/23/09 | 0012 | Order Designating the Debtors' Chapter 11 Cases as Complex Chapter 11 Cases Pursuant to Local Rule 2081-2 and Notice of Hearings on First Day Pleadings and Initial Status Conference |

69.     Clearly these Chapter 11 Cases are complex proceedings.  On the legal front, the Debtors have accomplished a great many things so far, and they are moving the Chapter 11 Cases forward expeditiously.

### b.    *the necessity of sufficient time to negotiate and prepare adequate information*

70.     Due to the complexity and size of the Chapter 11 Cases, the Debtors require additional time to negotiate with the numerous parties in interest in the Chapter 11 Cases.

71.     The principal creditors and other constituencies and their divergent interests together with the negotiations to date are discussed above.

72.     A large number of documents and a large volume of information has been provided to the constituencies of the estate, and that process is ongoing.

73.     This factor is thus satisfied.

### c.      *the existence of good faith progress toward reorganization*

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) EXTENDING THE TIME PERIOD DURING WHICH THE DEBTORS HAVE THE EXCLUSIVE RIGHT TO FILE A PLAN [ETC] - page 26**

74.     Thus far, the Debtors have made substantial, good faith progress toward reorganization and have demonstrated reasonable prospects for filing a viable plan.  For example, the Debtors have obtained orders granting all of their numerous first day motions with only small exceptions.  Such orders include but are not limited to

- authorization for use of cash collateral,

- significant, upsized debtor-in-possession financing of aggregate amount $125 million,

- engagement of appropriate professional persons,

- approval to liquidate unused equipment in connection with certain "dark" store locations,

- approval of the Ahold Agreement,

- the ciritcal-vendor agreement with its largest supplier, C&S, and retirement of its $17.2 million prepetition arrearage,

- a consent order to resolve the motion for adequate protection filed by the Term Lenders by making monthly cash payments, the character of which (i.e., either principal, as the Debtors contend, or else as interest, fees, costs, and charges, as the Term Lenders contend) remains to be resolved later in the Chapter 11 Cases either by agreement or by further court order on the Debtor's Rule 3012 motion, and

- the inter-estate agreement reached by BI-LO with the Bruno's and its Official Unsecured Creditors Committee in the Bruno's Case and the avoidance, so far, of a claim against BI-LO on account of claims, if any, of C&S against Bruno's.

75.     In addition to the orders, initial good progress has been made toward a thorough examination of all aspects regarding alternatives for the Debtors.  The Debtors have informed

the Committee and other creditors about the alternatives and about their process to date; the Five Year Plan is on target for completion; DJM has begun addressing the store leases; preliminary discussions have begun with potential strategic buyers/investors; and high-level discussions have commenced with GE and other lenders regarding exit financing.

76.     Finally, the Debtors' management has restored and improved employee morale and shifted employees' focus and priority toward greater customer service and increasing store-level performance.  Financial performance has improved steadily, and the Debtors are operating efficiently and paying all amounts that are appropriate and due for payment on time. The factor of good faith progress is well demonstrated.

### d.  *a finding that a debtor has demonstrated reasonable prospects for filing a viable plan*

77.     These achievements to date demonstrate that the Debtors will be able to fulfill their goal of filing a viable plan of reorganization.

78.     The financial progress during the postpetition era of the Debtors' business operations should provide assurance to the Court that the estate is valuable and that a successful Chapter 11 case is underway.

### e.  *whether the debtor has made progress in negotiations with its creditors*

79.     Moreover, the case developments detailed above, including the Ahold Agreement, the agreement with C&S, and agreements with numerous utilities and other creditors in connection with first day motions, all demonstrate that the Debtors have made significant progress in negotiations with their creditors, satisfying this criterion.

80.     Moreover, the Debtors have met formally with the Committee three times and informally with the Committee's professionals on a regular and ongoing basis.    Further discussions are underway with C&S, Ahold, the Term Lenders, and landlords.

### f.  *the length of time the case has been pending*

81.     Additionally, the Debtors' Chapter 11 Cases have been pending for slightly less than three months at the date of the filing of this Motion, with the Petition Date having been March 23, 2009, so there is no issue of delay.

82.     Rather, the Debtors have not had any real room to breathe yet and to thoughtfully develop reorganization plan and exit strategy.    The provision for extending exclusivity in Bankruptcy Code §1121(d) enables the Court to provide such time to the Debtors.

### g.  *whether unresolved contingencies exist*

83.     Significant and time consuming contingences still need to be resolved, including the sale and assignment of such stores, if any, that are determined in the Five Year Plan to be suitable and appropriate for disposition, or alternatively, for rejection of the leases and liquidation of the personal property associated with such stores.

84.     The determination, negotiation, and resolution of claims back and forth, whatever they may be, by and between BI-LO and its former subsidiary Bruno's remains to be accomplished in the months to come.    As a part of the process, BI-LO recently filed its § 503(b)(9) claim against Bruno's, and it will file its Proof of Claim for all other of its claims in Bruno's Case in a few days.

85.     Further, but hardly insignificantly, the valuation of collateral may, absent an agreement, require determination by the Court under Code § 506(a) and Rule 3012.

86.     Last, and very importantly, negotiations with C&S for amendments to the Supply Agreement have just begun and may require a significant amount of time.

87.     The factor of "unresolved contingencies" is amply met.

### h.  *a finding that a debtor is paying its bills and not extending the period of exclusivity simply to exert pressure on creditors.*

88.     Finally, the Debtors are paying all their postpetition bills on time and without any financial problem (assisted by the GE DIP financing) and are not seeking the extensions simply to exert pressure on creditors.  Rather, maintaining the Debtors' exclusivity enables the Debtors to remain the center of the Chapter 11 Cases and to foster broad negotiations leading toward a confirmable plan of reorganization.

## VI.  SUMMARY AND ADDITIONAL AUTHORITIES

89.     The Debtors respectfully submit that they have properly managed and operated their estates, have made substantial progress in restructuring, and are positioned to maximize value of the estate with the goal of a plan of reorganization that allocates that value among the Debtors' constituencies in accordance with Chapter 11.

90.     Based on a review of the applicable factors, the size and complexity of the Debtors' Chapter 11 Cases, and the Debtors' progress with their multiple and divergent constituencies, ample "cause" exists under Code §1121(d) to extend the Exclusive Period until December 20, 2009 and extend the Acceptance Period until February 18, 2010.

91.     In addition, SC LBR 3016-1 gives the Court discretion to extend the Local Rule deadline for filing the disclosure statement and plan of reorganization.  Based on the reasons

set forth above, the Debtors submit that it is also appropriate and necessary to extend the deadline for filing the disclosure statement and plan of reorganization until December 20, 2009.

92.     Further, the Debtors submit that no party in interest will be prejudiced by the requested extensions, and all constituents could be harmed if these deadlines are not extended.

93.     This Court has granted similar relief in other cases in this District. *See, e.g.*, *In re Georgetown Steel Company, LLC*, No. 03-13156 (Bankr. D.S.C. Feb. 11, 2004) (granting debtor's motion to extend exclusive periods and deadline to file plan and disclosure statement) (attached as **Exhibit B**); *In re Whitaker's Inc. of Sumter*, No. 06-03636 (Bankr. D.S.C. Dec. 21, 2006 (granting debtor's motion to extend Exclusive period) (attached as **Exhibit C**); *In re Joe Gibson's Auto World, Inc.*, No. 08-04215 (Bankr. D.S.C. Jan. 29, 2009 (granting debtor's request for extension of deadline to file plan and disclosure statement) (attached as **Exhibit D**).

94.     Consequently, the Debtors respectfully request an order extending the Exclusive Period through and including December 20, 2009, extending the Acceptance Period through and including February 18, 2010, and extending the deadline set forth in SC LBR 3016-1 for the Debtors to file a plan and disclosure statement through and including December 20, 2009. The Debtors have previewed this request to the Committee.

**WHEREFORE,** the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto as **Exhibit A**, (a) extending the Exclusive Period through December 20, 2009 and the Acceptance Period through and including February 18, 2010; (b) extending the 180-day deadline set forth in SCLBR 3016-1 for filing a Plan and Disclosure

Statement through and including December 20, 2009; and (c) granting such other and further

relief to which the Debtors may be justly entitled.

Dated June 17, 2009
Columbia, South Carolina

Respectfully submitted,

By:      /s/ Jody A. Bedenbaugh
George B. Cauthen, Federal Bar No. 81
Frank B. B. Knowlton, Federal Bar No. 2379
Linda K. Barr, Federal Bar No. 6284
Betsy Johnson Burn, Federal Bar No. 7574
Jody A. Bedenbaugh, Federal Bar No. 9210
**NELSON MULLINS RILEY &
SCARBOROUGH, LLP**
1320 Main Street, 17th Floor
Post Office Box 11070 (29211)
Columbia, SC 29201
Tel: 803-799-2000   Fax: 803-256-7500
Email:  george.cauthen@nelsonmullins.com
Email:  frank.knowlton@nelsonmullins.com
Email:  linda.barr@nelsonmullins.com
Email:  betsy.burn@nelsonmullins.com
Email:  jody.bedenbaugh@nelsonmullins.com

Josiah M. Daniel, III, SBTX #05358500
Michael L. Raiff, SBTX #00784803
**VINSON & ELKINS L.L.P.**
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201-2975
Tel: 214-220-7700   Fax: 214-220-7718
E-mail: jdaniel@velaw.com
E-mail: mraiff@velaw.com

Dov Kleiner, SBNY# DK4600
Alexandra S. Kelly, SBNY # AK2021; SBNJ
# 001302005; SBCA # 228141
**VINSON & ELKINS L.L.P.**
666 Fifth Avenue, 26th Floor
New York, New York 10103-0040
Tel: 212-237-0110   Fax: 917-849-5361
E-mail: dkleiner@velaw.com
E-mail: akelly@velaw.com

**ATTORNEYS FOR THE DEBTORS**

## CERTIFICATE OF SERVICE

This is to certify that on June 17, 2009, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the District of South Carolina; and the Debtors' notice agent, KCC, was requested to serve the document by U.S. Mail to those parties on the core service list who do not receive notice by CM/ECF.

/s/ Jody A. Bedenbaugh

1565502v5                                              One of Counsel

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) EXTENDING THE TIME PERIOD DURING WHICH THE DEBTORS HAVE THE EXCLUSIVE RIGHT TO FILE A PLAN [ETC] - page 34**

**<u>EXHIBIT A</u>**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

Case No. 09-02140 (HB) (Joint Administration)

## ORDER GRANTING
## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) EXTENDING THE TIME PERIOD DURING WHICH THE DEBTORS HAVE THE EXCLUSIVE RIGHT TO FILE A PLAN AND DISCLOSURE STATEMENT AND TO SOLICIT ACCEPTANCES AND (B) EXTENDING THE DEADLINE UNDER SC LBR 3016-1 FOR DEBTORS TO FILE A PLAN AND DISCLOSURE STATEMENT

The relief set forth on the following pages, for a total of _____ pages including this page, is hereby **ORDERED**.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

|                        | § |                          |
|------------------------|---|--------------------------|
| In re:                 | § | Case No. 09-02140 (HB)   |
|                        | § |                          |
| BI-LO, LLC *et al.*,   | § | Chapter 11               |
|                        | § |                          |
| Debtors.[2]            | § | (Joint Administration)   |
|                        | § |                          |

**ORDER GRANTING**
**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) EXTENDING THE**
**TIME PERIOD DURING WHICH THE DEBTORS HAVE THE EXCLUSIVE**
**RIGHT TO FILE A PLAN AND DISCLOSURE STATEMENT AND TO**
**SOLICIT ACCEPTANCES AND (B) EXTENDING THE DEADLINE**
**UNDER SC LBR 3016-1 FOR DEBTORS TO FILE A**
**PLAN AND DISCLOSURE STATEMENT**

_____

Upon the MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A)
EXTENDING THE TIME PERIOD DURING WHICH THE DEBTORS HAVE THE
EXCLUSIVE RIGHT TO FILE A PLAN AND DISCLOSURE STATEMENT AND TO
SOLICIT ACCEPTANCES AND (B) EXTENDING THE DEADLINE UNDER SC LBR 3016-
1 FOR DEBTORS TO FILE A  PLAN AND DISCLOSURE STATEMENT (the "Motion")[3] of
BI-LO, LLC and its affiliates, the above-captioned debtors in possession; it appearing that the
relief requested herein is in the best interests of the Debtors' estates, their creditors and other

---

[2]    The Debtors and the last four digits of their respective tax identification numbers are: BI-LO, LLC (0130); BI-LO Holding, LLC (5011); BG Cards, LLC (4159); ARP Ballentine LLC (6936); ARP James Island LLC (9163); ARP Moonville LLC (0930); ARP Chickamauga LLC (9515); ARP Morganton LLC (4010); ARP Hartsville LLC (7906); and ARP Winston Salem LLC (2540).

[3]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion.

parties in interest; and it appearing that the Court has jurisdiction over this matter pursuant to 28

U.S.C. § 1334; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. §

157(b)(2); and it appearing that venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and it appearing that notice of the Motion and opportunity for a hearing on the Motion

was appropriate under the circumstances and that no other or further notice with respect to the

Motion need be given; and after due deliberation and sufficient cause appearing therefore, it is

HEREBY ORDERED:

1.       The Motion is granted as herein set forth.

2.       The Exclusive Period and the Debtor's deadline to file a plan and disclosure

statement under SC LBR 3016-1 are extended through December 20, 2009 and the Acceptance

Period is extended through February 18, 2010.

3.       The Court retains jurisdiction with respect to all matters arising from or related

to the implementation of this Order.

AND IT IS SO ORDERED.

Dallas 1565502v.6

**ORDER GRANTING MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) EXTENDING THE
TIME PERIOD DURING WHICH THE DEBTORS HAVE THE EXCLUSIVE RIGHT TO FILE A PLAN
[ETC] -                                        page 3**

**<u>EXHIBIT B</u>**

## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number: __03-13156__

*Order Approving Extension of Exclusivity Periods*

The relief set forth on the following pages, for a total of __3__ pages including this page, is hereby **ORDERED**.

FILED BY THE COURT ON

__2/11/04__



*John E Waites*

John E. Waites
US Bankruptcy Court Judge
District of South Carolina

**ENTERED**

FEB 1 1 2004

**K.R.W.**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Georgetown Steel Company, LLC | ) | Case No. 03-13156-W |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |

## ORDER APPROVING MOTION OF DEBTOR TO EXTEND EXCLUSIVITY PERIODS

Upon the motion (the "Motion") of the above-captioned debtor and debtor-in-possession

(the "Debtor"), for an Order Approving Motion of Debtor to Extend Exclusivity Periods; the Court

having reviewed the Motion and having heard the statements of counsel in support of the relief

requested therein at a hearing before the Court (the "Hearing"); it appearing to the Court that it has

core jurisdiction over this matter pursuant to 28 U.S.C. § 1334; the Court finding that notice of the

Motion and the Hearing was sufficient under the circumstances; and the Court being fully advised

in the premises and having determined that the legal and factual basis set forth in the Motion and at

the Hearing establish just cause for the relief granted herein; and it appearing that the relief

requested is in the best interest of the Debtor, its estate, creditors and other parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Motion shall be, and hereby is, GRANTED.

2.    The Exclusivity Periods during which the Debtor shall have the exclusive right to

file a plan of reorganization is hereby extended for approximately 90 days through and including

May 14, 2004 and, provided a plan of reorganization is filed on or before that date, the Debtor's

Exclusivity Period to solicit acceptances shall be extended until August 20, 2004.

3.    The deadline for the Debtor to file its plan and disclosure statement pursuant to

SCLBR 2081-1(c) is hereby extended through May 14, 2004.

**<u>EXHIBIT C</u>**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Whitaker's Inc. of Sumter, | ) | Case No. 06-03636-hb |
| | ) | |
| Debtor. | ) | |

## ORDER GRANTING EXTENSION OF EXCLUSIVITY PERIOD TO FILE DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

The relief set forth on the following pages, for a total of 2 pages including this page, is hereby **ORDERED**.

---

**FILED BY THE COURT**
**12/21/2006**



US Bankruptcy Court Judge
District of South Carolina

Entered: 12/22/2006

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:                                    )              CHAPTER 11
                                          )
Whitaker's Inc. of Sumter,                )          Case No. 06-03636-hb
                                          )
_____ Debtor.   )

## ORDER GRANTING EXTENSION OF EXCLUSIVITY PERIOD TO FILE DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

**THIS MATTER** came before the Court upon the motion of Whitaker's Inc. of Sumter ("Debtor")

for an order granting an extension of the exclusive period for filing the Disclosure Statement and Plan until

180 days after the filing of the Petition.  All creditors and parties in interest received adequate notice of the

Motion and no objections were served or filed.   It appearing that the 60 day extension is justified, it is

hereby

      **ORDERED** that the Motion is granted.  The exclusivity period is hereby extended until February

18, 2007.

**EXHIBIT D**

## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number: _08-4215_

_Order_

The relief set forth on the following pages, for a total of __2__ pages including this page, is hereby **ORDERED**.

---

FILED BY THE COURT ON

_Jan 29 2009_



_[signature]_

Helen E. Burris
US Bankruptcy Court Judge
District of South Carolina

## ENTERED

JAN 30 2009

## SRP

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

|  |  |
|---|---|
| In re: | Chapter 11 |
| Joe Gibson's Auto World, Inc., d/b/a Joe Gibson Suzuki | Case No. 08-04215-hb |
| Debtor. | |

## ORDER EXTENDING TIME TO FILE PLAN AND DISCLOSURE STATEMENT

**THIS MATTER** came before the Court upon the motion of Joe Gibson's Auto World, Inc. ("Debtor"), for an extension of time to file its Plan and Disclosure Statement. Having shown that "cause" exists, and is in the best interest of the Debtor, its estate, and the creditors of the estate, it is hereby:

**ORDERED, ADJUDGED AND DECREED** that the deadline for filing the Plan and Disclosure Statement shall be extended until February 12, 2009.