**UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| In re: | § § | Case No. 09-02140 (HB) |
| **BI-LO, LLC** *et al.*, | § § | Chapter 11 |
| Debtors.[1] | § § | (Joint Administration) |
| | § | |

---

**DEBTORS' THIRD AMENDED PLAN OF REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**VINSON & ELKINS L.L.P.**
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201-2975
Telephone:  (214) 220-7700
Facsimile: (214) 220-7718
Josiah M. Daniel, III, (admitted *pro hac vice*)
Michael L. Raiff, (admitted *pro hac vice*)
Katherine D. Grissel, (admitted *pro hac vice*)


666 Fifth Avenue, 26th Floor
New York, New York  10103-0040
Telephone:  (212) 237-0110
Facsimile:  (917) 849-5361
Dov Kleiner, (admitted *pro hac vice*)
Alexandra S. Kelly, (admitted *pro hac vice*)


Dated:  March 15, 2010

**NELSON MULLINS RILEY &
SCARBOROUGH, L.L.P.**
1320 Main Street, 17th Floor
Post Office Box 11070 (29211)
Columbia, SC 29201
Telephone: (803) 799-2000
Facsimile:  (803) 256-7500
George B. Cauthen, Federal Bar No. 81
Frank B.B. Knowlton, Federal Bar No. 2379
Betsy Johnson Burn, Federal Bar No. 7574
Jody A. Bedenbaugh, Federal Bar No. 9210


*Co-Counsel for the Debtors*

---

[1]    The Debtors and the last four digits of their respective tax identification numbers are: BI-LO, LLC (0130); BI-LO Holding, LLC (5011); BG Cards, LLC (4159); ARP Ballentine LLC (6936); ARP James Island LLC (9163); ARP Moonville LLC (0930); ARP Chickamauga LLC (9515); ARP Morganton LLC (4010); ARP Hartsville LLC (7906); and ARP Winston Salem LLC (2540).

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

ARTICLE I      RULES OF INTERPRETATION AND RELATED MATTERS............................1

    1.1    Definitions; Interpretation...............................................................................1

    1.2    Interpretation...................................................................................................18

    1.3    Computation of Time.......................................................................................18

    1.4    Reference to the Debtors or Reorganized Debtors ..........................................18

    1.5    Disclosure Statement and Plan Documents .....................................................18

ARTICLE II     CLASSIFICATION, TREATMENT AND VOTING RIGHTS  OF CLAIMS
                AND EQUITY INTERESTS .............................................................................18

    2.1    Substantive Consolidation ..............................................................................19

    2.2    Administrative Claims .....................................................................................19

    2.3    Professional Claims .........................................................................................20

    2.6    Classification, Treatment and Voting Rights of Classified Claims and Equity
          Interests ...........................................................................................................22

    2.7    Classification Rules .........................................................................................24

    2.8    Impairment Controversies................................................................................25

    2.9    Record Date .....................................................................................................25

    2.10   Confirmation Without Acceptance By All Impaired Classes ...................................25

ARTICLE III    PROVISIONS FOR IMPLEMENTATION OF THE PLAN....................................25

    3.1    Existence..........................................................................................................25

    3.2    Compliance With § 1123(a)(6) of the Bankruptcy Code.................................25

    3.3    Sources of Consideration for the Plan .............................................................25

    3.4    Action To Facilitate Consummation of the Plan..............................................26

    3.5    Effectuating Documents, Further Transactions ...............................................27

    3.6    Corporate Governance and Management of the Reorganized Debtors ....................27

    3.7    Securities Exemptions......................................................................................28

    3.8    Issuance and Distribution of the New Common Units and the New Term Notes .....28

    3.9    Preservation of Causes of Action by the Debtors, the Reorganized Debtors and the
          Trustee.............................................................................................................28

i

3.9     Preservation of Causes of Action by the Debtors, the Reorganized Debtors and the Trustee ................................................................................................................28

3.10    Cancellation of Debt and Equity Securities and Related Obligations ......................29

3.11    Post-Confirmation Property Sales ............................................................................29

3.12    Exemption from Certain Transfer Taxes and Recording Fees .................................29

3.13    C&S Settlement .......................................................................................................30

3.14    Ahold/SFM Claims Settlement ...............................................................................30

ARTICLE IV    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................31

4.1     Assumption of Executory Contracts and Unexpired Leases ....................................31

4.2     Rejection of Executory Contracts and Unexpired Leases ........................................33

4.4     Modification of Executory Contracts and Unexpired Leases Containing Equity Ownership Restrictions .............................................................................................35

4.5     Reservation of Rights ...............................................................................................35

4.6     Nonoccurrence of Effective Date .............................................................................35

4.7     Employment, Compensation and Benefit Matters ...................................................35

ARTICLE V    CREDITORS' TRUST .......................................................................................36

5.1     Appointment of Trustee. ..........................................................................................36

5.3     Creditors' Trust. .......................................................................................................37

5.4     The Trust Advisory Board ........................................................................................39

5.5     Distributions of Trust Recoveries ............................................................................40

ARTICLE VI    PROCEDURES FOR RESOLUTION OF DISPUTED CLAIMS ...........................41

6.1     Objections to and Settlement of Claims ...................................................................41

6.2     Estimation of Claims ................................................................................................41

6.3     Adjustment to Claims Without Objection ................................................................42

6.4     Time to file Objections to Claims ............................................................................42

6.5     Litigation Claims .....................................................................................................42

6.6     Disallowance of Certain Employee Claims .............................................................42

6.7     Offer of Judgment ....................................................................................................42

6.8     Amendments to Claims ............................................................................................43

6.9     Nonpayment of Claims of Parties Holding Recoverable Property; Setoff ..............43

ARTICLE VII        PROVISIONS GOVERNING DISTRIBUTIONS ...........................................43

US 303315v.7

7.1    Disbursing Agents....................................................................................43

7.2    Distributions to Holders of Allowed Claims ...........................................43

7.3    Distributions for Claims Allowed as of the Effective Date ......................44

7.4    Distributions on Account of Claims Allowed After the Effective Date. ...................45

7.5    Claim Amounts ......................................................................................45

7.6    Disbursing Agent Exculpation.................................................................45

7.7    Surrender of Certificates, etc .................................................................46

7.8    Tax and Compliance Matters ..................................................................46

7.9    Distributions .........................................................................................46

ARTICLE VIII      CONFIRMATION OF THE PLAN ...........................................49

8.1    Conditions Precedent to Confirmation and Consummation ....................49

ARTICLE IX  EFFECT OF CONFIRMATION OF THE PLAN ................................51

9.1    Discharge of Claims and Termination of Interests .................................51

9.2    Subordinated Claims ..............................................................................51

9.3    Compromise and Settlement of Claims and Controversies .....................51

9.4    Debtors' Authority .................................................................................52

9.5    Vesting of Reorganized Assets and Causes of Action.............................52

9.6    Injunction .............................................................................................52

9.7    Exculpation ...........................................................................................53

9.8    Releases by the Debtors .........................................................................54

9.9    Protection Against Discriminatory Treatment ........................................55

9.10   Setoffs ..................................................................................................55

9.11   Recoupment ..........................................................................................55

9.12   Release of Liens ....................................................................................55

9.13   Document Retention ..............................................................................55

9.14   Reimbursement or Contribution ............................................................56

9.15   Abandonment ........................................................................................56

ARTICLE X    MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN............56

10.1   Modification and Amendments................................................................56

10.2   Effect of Confirmation on Modifications ................................................56

10.3   Revocation or Withdrawal of Plan..........................................................56

US 303315v.7

ARTICLE XI  RETENTION OF JURISDICTION .......................................................................57

    11.1    Scope of Jurisdiction......................................................................................57

ARTICLE XII          MISCELLANEOUS PROVISIONS ................................................59

    12.1    Immediate Binding Effect...............................................................................59

    12.2    Payment of Statutory Fees .............................................................................59

    12.3    Dissolution of Creditors' Committee .............................................................59

    12.4    Nonseverability of Plan Provisions................................................................59

    12.5    Reservation of Rights.....................................................................................60

    12.6    Successors and Assigns...................................................................................60

    12.7    Notices ...........................................................................................................60

    12.8    Waiver or Estoppel ........................................................................................61

    12.9    Conflicts.........................................................................................................61

    12.10   Exhibits ..........................................................................................................61

    12.11   Terms of Injunctions or Stays ........................................................................62

    12.12   Entire Agreement ...........................................................................................62

    12.13   Closing of Chapter 11 Cases..........................................................................62

    12.14   Governing Law ..............................................................................................62

iv

**ALL EXHIBITS ARE TO THE PLAN**

Exhibit A  Contract Assumption Schedule ................................................................................ A-1

Exhibit A1  Preliminary Contract Assumption Schedule ........................................................ A1-1

Exhibit B  Equity Purchase Agreement .................................................................................. B-1

Exhibit C  New C&S Agreement .............................................................................................. C-1

Exhibit D  Plan Documents....................................................................................................... D-1

Exhibit E  Consolidated Financial Information………………………………………………….E-1

Exhibit F   Best Interests Analysis………………………………………………………………F-1

Exhibit G   Financial Projections………………………………………………………...............G-1

v

**THIRD AMENDED PLAN OF REORGANIZATION
FOR BI-LO, LLC AND AFFILIATED DEBTORS**

**INTRODUCTION**

BI-LO, LLC and the other Debtors in the above-captioned Chapter 11 Cases propose the following third amended plan of reorganization for the resolution of outstanding creditor claims against, and equity interests in, the Debtors. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article I. The Debtors are the proponents of the Plan within the meaning of § 1129 of the Bankruptcy Code. This Plan is supported by and incorporates settlements by and among the Debtors, the Creditors' Committee, the Ahold Entities, C&S and the Lone Star Entities.

Under § 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from a holder of a Claim or Equity Interest until the Disclosure Statement has been approved by the Bankruptcy Court and distributed to holders of Claims and Equity Interests. The Disclosure Statement relating to the Plan was approved by the Bankruptcy Court on [•], 2010, and has been distributed with the Plan to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, a discussion of the Debtors' history, businesses, properties and operations, as well as a summary and description of the Plan, risk factors associated with the Debtors and the Plan, and certain related matters. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN PROVIDES FOR SUBSTANTIVE CONSOLIDATION OF THE ESTATES FOR ALL PURPOSES ASSOCIATED WITH CONFIRMATION AND CONSUMMATION.

**ARTICLE I**

RULES OF INTERPRETATION AND RELATED MATTERS

1.1     Definitions; Interpretation

(a)     Definitions. As used in the Plan, the Disclosure Statement and any Plan Documents, unless the context otherwise requires, capitalized terms shall have the following meanings. Any term used in capitalized form that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(1)     "ABL Agent" means GE Business Services, Inc. (f/k/a Merrill Lynch Capital, a division of Merrill Lynch Business Financial Services, Inc.), as administrative and collateral agent under the ABL Credit Agreement.

(2)     "ABL Credit Agreement" means that certain *Credit Agreement* dated March 26, 2007, by and among the ABL Agent, BI-LO Holding, BI-LO, and the ABL Lenders providing revolving credit and letter of credit facilities with up to $100 million of commitments, as the same may have been amended, modified or supplemented from time to time through the Petition Date.

1

(3)      "ABL Lenders" means those entities party to the ABL Credit Agreement in their capacities as lenders thereunder.

(4)      "Adequate Protection Consent Order" means that *Consent Order Approving Adequate Protection Cash Payments and Related Matters* entered by the Bankruptcy Court in the Chapter 11 Cases on May 1, 2009 [Docket No. 577].

(5)      "Administrative Claim" means a Claim, other than a Professional Claim, against any Debtor or its Estate (a) arising on or after the Petition Date and prior to the Effective Date for a cost or expense of administration of the Chapter 11 Cases that is entitled to priority or superpriority pursuant to §§ 364(c)(1), 503(b), 503(c) or 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including DIP Facility Claims and actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises) or (b) entitled to priority under § 503(b)(9) of the Bankruptcy Code.

(6)      "Affiliate" of any particular Person means any other Person controlling, controlled by or under common control with such particular Person, where "control" means the possession, directly or indirectly, of the power to direct the management and policies of a Person whether by contract, through the ownership of voting securities or otherwise.

(7)      "Ahold/SFM Lease Claims" means any Claims asserted by any Ahold Entity relating to leases of non-residential real property divested by BI-LO and assigned to SFM.

(8)      "Ahold Entities" means Ahold U.S.A., Inc. and its Affiliates.

(9)      "Allowed" means with reference to a Claim, any Claim, to the extent it has not been withdrawn, paid, deemed satisfied or otherwise extinguished, (a) that has been listed by the Debtors in their Schedules as liquidated in amount and not disputed or contingent, for which no contrary Proof of Claim has been filed and for which no objection to the allowance thereof has been interposed on or before the Claims Objection Deadline, (b) for which a Proof of Claim (or, with respect to an Administrative Claim, a request for payment) has been filed on or before the Bar Date, and for which no objection to the allowance thereof has been interposed on or before the Claims Objection Deadline, (c) that is allowed pursuant to the terms or procedures set forth in the Plan, (d) that is compromised, settled or otherwise resolved pursuant to a Final Order or the authority granted to the Reorganized Debtors, the Trustee or the Investor (or the Investor's designee), as appropriate, pursuant to  the terms of the Plan or (e) for which an objection to the allowance thereof has been interposed on or before the Claims Objection Deadline but for which a Final Order has been entered allowing such Claim; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder. Except as otherwise provided in the Plan or a Final Order, the amount of an Allowed Claim (including a Disputed Claim that subsequently becomes an Allowed Claim) shall not include (y) any interest, penalty or late charge arising or accruing after the Petition

Date or (z) any award or reimbursement of attorneys' fees or related expenses or disbursements.

(10)    "Assumed Obligations" has the meaning set forth in the Equity Purchase Agreement.

(11)    "Ballot" means the form distributed to each holder of an impaired Claim entitled to vote on the Plan on which such holder is to indicate acceptance or rejection of the Plan, and in addition, with respect to each holder of a General Unsecured Claim in excess of $5,000, to make an irrevocable election to be treated as a holder of a Convenience Claim by reducing its Claim to $5,000 and accepting treatment in Class 6.

(12)    "Bankruptcy Code" means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

(13)    "Bankruptcy Court" means the United States District Court for the District of South Carolina having jurisdiction over the Chapter 11 Cases and, by virtue of the reference made pursuant to § 157 of title 28 of the United States Code, the Bankruptcy Court unit of such District Court, or any court having competent jurisdiction to hear appeals or certiorari petitions therefrom, or any successor thereto that may be established by an act of Congress or otherwise and that has competent jurisdiction over the Chapter 11 Cases.

(14)    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under § 2075 of title 28 of the United States Code, as applicable to the Chapter 11 Cases, and the Local Bankruptcy Rules.

(15)    "Bar Date" means (a) the date set by the Local Bankruptcy Rules or any other date set by an order of the Bankruptcy Court as the applicable deadline for the filing of Proofs of Claim or requests for payment of Administrative Claims, or (b) with reference to the assumption of an executory contract or unexpired lease by the Debtors, the date set by an order of the Bankruptcy Court as the applicable deadline for objecting to such assumption or Cure Amount proposed by the Debtors.

(16)    "BI-LO" means BI-LO, LLC, as debtor and debtor in possession.

(17)    "BI-LO Holding" means BI-LO Holding, LLC, as debtor and debtor in possession.

(18)    "Business Day" means any day except Saturday, Sunday or a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

(19)    "C&S" means C&S Wholesale Grocers, Inc.

(20)    "C&S Agreement" means that certain *Amended and Restated BI-LO, LLC Supply Agreement*, dated as of March 23, 2007, between C&S and BI-LO, as the same has been amended, modified, or supplemented from time to time through the Effective Date.

3

(21)   "Cash" means legal tender of the United States of America and equivalents thereof.

(22)   "Causes of Action" means all rights, Claims, actions, suits, proceedings, causes of action, defenses, debts, demands, damages, obligations and liabilities of any kind or nature whether under contract or tort, at law or in equity or otherwise, known or unknown, contingent or matured, liquidated or unliquidated and all rights and remedies with respect thereto, including (a) causes of action under Chapter 5 or any provision of the Bankruptcy Code or similar state statutes and (b) causes of action that are property of an Estate under § 541 of the Bankruptcy Code or otherwise.

(23)   "Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code voluntarily commenced by the Debtors being jointly administered under Case No. 09-02140 (hb).

(24)   "Claim" means a claim (as defined in § 101(5) of the Bankruptcy Code) against a Debtor.

(25)   "Claims and Solicitation Agent" means Kurtzman Carson Consultants LLC.

(26)   "Claims Register" means the official register of Claims and Equity Interests maintained by the Claims and Solicitation Agent.

(27)   "Claims Objection Deadline" means the last day for filing objections to Claims, which (with respect to any Claim) shall be the latest of:  (a) 180 days after the Effective Date; (b) 90 days after the filing of a Proof of Claim, amended Proof of Claim or request for payment of an Administrative Claim; or (c) such other date as may be approved by order of the Bankruptcy Court.

(28)   "Class" means a category of holders of Claims or Equity Interests as set forth in the classifications under the Plan.

(29)   "Class 5 Claims" means the Claims asserted or those that could have been asserted by or on behalf of (a) the bankruptcy estate of Bruno's Supermarkets, LLC or its successor, including those Claims as evidenced by the Proofs of Claim filed against the Debtors' Estates (Claim Nos. 991, 1020-24 and 1109-1112) and (b) the United Food and Commercial Workers Union and Employers Pension Fund, including those Claims as evidenced by the Proofs of Claim filed against the Debtors' Estates (Claim Nos. 1026-29, 1036-39 and 1042-43).

(30)   "Class 5 Payment" means the Cash paid by the Investor, if any, to be made to (a) BFW Liquidation, LLC f/k/a the estate of Bruno's Supermarkets LLC or (b) the United Food and Commercial Workers Union and Employers Pension Fund, on account of their respective Allowed Class 5 Claims, if any.

(31)   "Class 6 Convenience Claim" means a General Unsecured Claim (a) (i) in an amount not greater than $5,000 and (ii) for which the holder thereof has not made an election on such holder's Ballot to have such claim treated as a General Unsecured Claim

4

in Class 4 or (b) in an amount greater than $5,000 but which has been voluntarily reduced to $5,000 by the holder thereof pursuant to an election made on such holder's Ballot, in each case, that is liquidated in amount and Allowed as of the Distribution Date.

(32)     "Collateral" means any property or interest in property of the Estates that is subject to a Lien to secure the payment or performance of a Claim, which Lien is valid, perfected and enforceable under non-bankruptcy law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law.

(33)     "Conditionally Assumed Lease" means an unexpired lease of non-residential real property that has been conditionally assumed by the Debtors pursuant to the *Order Authorizing the Debtors to Enter into Second Stipulations and to Pay Cure Costs and Conditionally Assume Leases in Connection Therewith*, entered by the Bankruptcy Court on January 21, 2010 [Docket No. 2464] and for which a "Second Stipulation" has been filed as listed on the *Third Supplement to the Motion of the Debtors for Entry of an Order Authorizing the Debtors to Enter into Second Stipulations with Landlords Extending the Time to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. §365(d)(4) and to Pay Cure Costs and Conditionally Assume Leases in Connection Therewith*, filed by the Debtors on February 19, 2010 [Docket No. 2641].

(34)     "Confirmation" means the entry of the Confirmation Order, after all conditions specified in Section 8.1(a) hereof have been satisfied or waived.

(35)     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

(36)     "Confirmation Hearing" means the hearing before the Bankruptcy Court to consider Confirmation, as such hearing may be adjourned or continued from time to time.

(37)     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan under § 1129 of the Bankruptcy Code.

(38)     "Consummation" means the occurrence of the Effective Date.

(39)     "Contingent Obligation" shall mean, as to any Person, any obligation, agreement, understanding or arrangement of such Person guaranteeing or intended to guarantee any Indebtedness, leases, dividends or other obligations ("Primary Obligations") of any other Person (the "Primary Obligor") in any manner, whether directly or indirectly, including any obligation, agreement, understanding or arrangement of such Person, whether or not contingent, (a) to purchase any such Primary Obligation or any property constituting direct or indirect security therefore, (b) to advance or supply funds (i) for the purchase or payment of any such Primary Obligation or (ii) to maintain working capital or equity capital of the Primary Obligor or otherwise to maintain the net worth, net equity, liquidity, level of income, cash flow or solvency of the Primary Obligor, (c) to purchase or lease property, securities or services primarily for the purpose of assuring the Primary Obligor of any such Primary Obligation of the ability of the Primary Obligor to make payment of such Primary Obligation, (d) with respect to bankers' acceptances, letters of credit and

5

similar credit arrangements, until a reimbursement or equivalent obligation arises (which reimbursement obligation shall constitute a Primary Obligation) or (e) otherwise to assure or hold harmless the Primary Obligor of any such Primary Obligation against loss (in whole or in part) in respect thereof; provided, however, the term "Contingent Obligation" shall not include endorsements of instruments for deposit or collection in the ordinary course of business or any product warranties given in the ordinary course of business. The amount of any Contingent Obligation shall be deemed to be an amount equal to the stated or determinable amount of the Primary Obligation, or portion thereof, in respect of which such Contingent Obligation is made (or, if less, the maximum amount of such Primary Obligation for which such Person may be liable, whether singly or jointly, pursuant to the terms of the instrument, agreements or other documents or, if applicable, unwritten agreement, evidencing such Contingent Obligation) or, if not stated or determinable, the maximum reasonably anticipated Liability in respect thereof (assuming such Person is required to perform thereunder).

(40)     "Contract Assumption Schedule" means *Exhibit A* hereof listing the executory contracts and unexpired leases to be assumed under the Plan, as may be amended or supplemented by the Debtors on or before the date that is 10 days before the Voting Deadline and as agreed to by the Debtors and the Investor; provided, however, that the Contract Assumption Schedule shall include or be deemed to include each Conditionally Assumed Lease unless such Conditionally Assumed Lease is explicitly excluded prior to the date that is 10 days before the Voting Deadline.  A preliminary form of Contract Assumption Schedule, which includes three sub-schedules of the (i) commercial non-real estate executory contracts, (ii) real estate/unexpired leases and (iii) employee/employee benefit/indemnification obligations, each of which item on the sub-schedule is to be assumed, honored, reaffirmed, or otherwise become an obligation of the Reorganized Debtors under the Plan, is attached as *Exhibit A-1*.

(41)     "Convenience Claim" means a Class 6 Convenience Claim.

(42)     "Creditors' Committee" means the official committee of unsecured creditors, appointed pursuant to § 1102(a) of the Bankruptcy Code in the Chapter 11 Cases on March 30, 2009, as reconstituted from time to time.

(43)     "Creditors' Committee Professional Fee Account" has the meaning set forth in Article II.

(44)     "Creditors' Committee Professional Fee Reserve Amount" has the meaning set forth in Article II.

(45)     "Creditors' Trust" means a trust established as of the Effective Date to which all of the Trust Assets shall be contributed, in accordance with the terms of the Plan, for distribution to holders of Allowed Claims in Class 4 and Class 6.

(46)     "Cure Amount" means the dollar amount required to be paid under § 365 of the Bankruptcy Code at the time an executory contract or unexpired lease is assumed by that Debtor to cure a Debtor's defaults under such contract or lease, and if applicable, to

6

compensate the non-debtor party or parties to such contract or lease for any actual pecuniary loss to such party resulting from such default.

(47)    "Cure Bar Date" means 10 days prior to the Confirmation Hearing.

(48)    "Debtors" means, in their capacity as debtors and debtors in possession:  (a) BI-LO, LLC, (b) BI-LO Holding, LLC, (c) BG Cards, LLC, (d) ARP Ballentine, LLC, (e) ARP Chickamauga LLC, (f) ARP Hartsville LLC, (g) ARP James Island, LLC, (h) ARP Moonville LLC, (i) ARP Morganton LLC and (j) ARP Winston Salem LLC.

(49)    "DIP Agent" means General Electric Capital Corporation, as administrative agent and collateral agent for the DIP Lenders pursuant to the DIP Credit Agreement.

(50)    "DIP Credit Agreement" means the $125 million *Senior Secured Superpriority Debtor in Possession Credit Agreement,* dated as of April 16, 2009, among BI-LO Holding, BI-LO, as borrower, the DIP Lenders, the DIP Agent, Wachovia Bank, National Association, as issuing lender, and GE Capital Markets, Inc., as sole lead arranger and sole bookrunner, as amended, supplemented, modified or restated from time to time.

(51)    "DIP Facility Claim" means a Claim against the Debtors or their Estates arising under the DIP Financing Order or the DIP Credit Agreement, including all "Obligations," as such term is defined in the DIP Credit Agreement.

(52)    "DIP Financing Order" means the *Final Order (A) Approving Senior Secured Superpriority Postpetition Financing, (B) Authorizing Use of Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection and (E) Modifying Automatic Stay,* entered by the Bankruptcy Court on April 16, 2009 [Docket No. 0406].

(53)    "DIP Lenders" means, collectively:  (a) those entities identified as "Lenders" in the DIP Credit Agreement and their respective permitted successors and assigns (solely in their capacity as "Lenders" under the DIP Credit Agreement) and (b) any agent bank named therein (solely in its capacity as agent bank under the DIP Credit Agreement).

(54)    "Disbursing Agents" means (a) for Claims and Equity Interests other than Class 4 and Class 6 Claims, the Reorganized Debtors or their designee, acting in the capacity of disbursing agent or (b) the Trustee or its designee, for Class 4 and Class 6 Claims.

(55)    "Disclosure Statement" means the written disclosure statement with respect to the Plan, together with all exhibits and annexes thereto and any amendments, modifications or supplements thereof, as approved by the Bankruptcy Court as containing adequate information in accordance with § 1125 of the Bankruptcy Code.

(56)    "Disputed" means, with respect to a Claim, any Claim to the extent it has not been withdrawn, paid in full, deemed satisfied in full or otherwise extinguished that, either in whole or in part, has not become an Allowed Claim.

7

(57)    "<u>Distribution Date</u>" means (a) with reference to a Class 1, 2 or 3 Claim or an Administrative Claim Allowed as of the Effective Date, the Effective Date and (b) with reference to a particular Class 1 or Class 2 Claim, an Administrative Claim or Class 5 Claim or subject to Section 5.5 hereof, a Class 4 or 6 Claim which is Disputed as of the Effective Date, but thereafter Allowed, the Quarterly Distribution Date following the calendar month in which the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order or in which, by agreement, any Disputed Claim becomes an Allowed Claim.

(58)    "<u>Effective Date</u>" means a day, as determined by the Debtors, that is a Business Day no earlier than the date on which all conditions set forth in Section hereof have been either satisfied or waived.

(59)    "<u>Equipment Proceeds</u>" means the net sale proceeds paid to the Term Lender Agent resulting from the sale of certain equipment assets by Grafe Auction Company, which sale was approved by the Bankruptcy Court by order entered on May 1, 2009 [Docket No. 0539].

(60)    "<u>Equity Interest</u>" means, when used with reference to a particular Debtor, the membership interests or other ownership interests in such Debtor, and any options, warrants or other rights with respect thereto.

(61)    "<u>Equity Investment</u>" means $150 million, which shall be payable by the Investor, in the Investor's sole discretion, in a combination of Cash and cancelled Term Loans.

(62)    "<u>Equity Purchase Agreement</u>" means that certain *Equity Purchase Agreement* dated as of February 22, 2010, as amended, by and among the Debtors and the Investor, a copy of which is attached as ***Exhibit B***, together with all ancillary documents and schedules referenced therein.

(63)    "<u>Estate</u>" means, as to a particular Debtor, the estate created for such Debtor pursuant to § 541 of the Bankruptcy Code.

(64)    "<u>Excluded Assets</u>" has the meaning set forth in the Equity Purchase Agreement.

(65)    "<u>Excluded Liabilities</u>" has the meaning set forth in the Equity Purchase Agreement.

(66)    "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended, and: (a) as to which the time to seek an appeal, petition for certiorari or other proceedings for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; or (b) as to which any right to appeal, petition for certiorari, reargument or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or, on and after the Effective Date, the Reorganized Debtors; or (c) in the event that an appeal, certiorari, reargument or rehearing has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order

8

was appealed or from which reargument or rehearing was sought or certiorari has been denied, and the time to take any further appeal, petition for certiorari or other proceedings for reargument or rehearing shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, Rule 9024 of the Bankruptcy Rules or any analogous procedural rules under applicable state law can be filed with respect to such order.

(67)    "General Unsecured Claim" means any Claim other than a Secured Claim, Administrative Claim, Priority Tax Claim, Non-Tax Priority Claim, Term Lender Claim, Intercompany Claim or any Claim for a Cure Amount.

(68)    "Governmental Unit" has the meaning ascribed to it in § 101(27) of the Bankruptcy Code.

(69)    "Indebtedness" of any Person means, without duplication, (a) all obligations of such Person for borrowed money or advances; (b) all obligations or liabilities of such Person evidenced by bonds, debentures, notes, loan agreements or similar instruments; (c) all obligations of such Person under conditional sale or other title retention agreements relating to property purchased by such Person (even though the rights and remedies of the seller or lenders under such agreement in the event of default are limited to repossession or sale of such property); (d) all obligations of such Person issued or assumed as part of the deferred purchase price of property or services (excluding trade accounts payable and accrued obligations incurred in the ordinary course of business on normal trade terms and not overdue by more than 90 days); (e) all indebtedness secured by any Lien on property owned or acquired by such Person (including indebtedness arising under conditional sales or other title retention agreements), whether or not the obligations secured thereby have been assumed, but limited to the lower of (i) the fair market value of such property and (ii) the amount of the Indebtedness secured; (f) all capital lease obligations of such Person; (g) any commitment by which such Person assures a creditor against loss (including all obligations of such Person for the reimbursement of any obligor in respect of letters of credit, letters of guaranty, bankers' acceptances and similar credit transactions) or other indebtedness guaranteed in any manner by such Person; (h) all uncashed checks issued by such Person that are outstanding as of the Effective Date; and (i) all Contingent Obligations of such Person in respect of Indebtedness or obligations of others of the kinds referred to in clauses (a) through (i) above.  The Indebtedness of any Person shall include the Indebtedness of any other entity (including any partnership in which such Person is a general partner) to the extent such Person is liable therefor as a result of such Person's ownership interest in or other relationship with such entity, except (other than in the case of general partner Liability) to the extent that terms of such Indebtedness expressly provide that such Person is not liable therefor.

(70)    "Indemnification Obligation" means a Debtor's obligation under an executory contract or organizational document to indemnify directors, officers or employees of the Debtors who served in such capacity at any time, with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, pursuant to and to the maximum extent provided by the Debtors' respective articles of

9

incorporation, certificates of formation, bylaws, similar corporate documents and applicable law, as in effect as of the Effective Date.

(71)    "Insider" has the meaning ascribed to it in § 101(31) of the Bankruptcy Code.

(72)    "Interim Compensation Order" means the corrected order establishing procedures for the interim compensation and reimbursement of expenses for retained professionals in the Chapter 11 Cases entered by the Bankruptcy Court on March 27, 2009 [Docket No. 119].

(73)    "Investor" means LSF5 Grocery Holdings, LLC.

(74)    "Intercompany Claim" means any Claim by any Debtor against another Debtor.

(75)    "Liability" means any liability (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued. whether liquidated or unliquidated, and whether due or to become due and regardless of when asserted).

(76)    "Lien" means any lien (statutory or otherwise), Claim, Indebtedness, hypothecation, encumbrance, obligation, security interest, interest, mortgage, pledge, restriction, charge, instrument, preference, priority, security agreement, easement, covenant, encroachment, option, lease, license, right of recovery, right of setoff, right of pre-emption, right of first refusal or other third party right, Tax (including federal, state and local Tax), order of any Governmental Unit or other governmental authority, of any kind or nature (including (a) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (b) any assignment or deposit arrangement in the nature of a security device and (c) any Claim based on any theory that Investor or any Reorganized Debtor is a successor or continuation of Debtors or their business), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown.

(77)    "Litigation Claim" means:  (a) any Claim sounding in tort or otherwise relating to personal injury, property damage, products liability, unlawful discrimination or employment practices; or (b) any other Claim that is the subject of pending litigation.

(78)    "Local Bankruptcy Rules" means the Local Rules for the United States Bankruptcy Court for the District of South Carolina and any standing orders of such Bankruptcy Court.

(79)    "Lone Star Entities" means (a) Lone Star Fund V (U.S.), L.P.; (b) LSF5 BI-LO Investments, LLC, (c) LSF V International Finance, L.P., (d) LSF5 BI-LO Holding, LLC, (e) Lone Star U.S. Acquisitions, LLC, (f) LSF5 Grocery Holdings, LLC, (g) Hudson Advisors, LLC and (h) any Affiliates (other than the Debtors) of one or more of the foregoing Persons.  For clarity, the Lone Star Entities do not include BFW Liquidation, LLC (f/k/a Bruno's Supermarkets, LLC), or any of its successors or predecessors in interest.

10

(80)   "Management Agreements" means those certain *Management Incentive Compensation Agreements* by and between the Debtors and certain of their officers, approved in the Chapter 11 Cases by entry of an order by the Bankruptcy Court dated November 6, 2009 [Docket No. 1746].

(81)   "Maximum Allowable Amount" means, with respect to Claims in Classes 4, 5 and 6:  (a) with respect to any Disputed Claim having a liquidated amount, the lesser of (i) the amount set forth in the Proof(s) of Claim or requests for payment filed by the holder thereof, (ii) the amount determined by the Bankruptcy Court or any other court of competent jurisdiction as the maximum fixed amount of such Claim or as the estimated amount for such Claim for allowance, distribution and reserve purposes or (iii) the amount agreed upon, in writing, by the holder and the Debtors prior to the Effective Date or the Reorganized Debtors or the Creditors' Trust, as applicable, after the Effective Date and (b) with respect to a Disputed Claim filed in an unliquidated, undetermined or contingent amount, the lesser of (i) the estimated amount of such Claim as determined by the Bankruptcy Court or (ii) the amount agreed upon, in writing, by the holder and the Debtors prior to the Effective Date or the Reorganized Debtors or the Creditors' Trust, as applicable, after the Effective Date.

(82)   "New ABL Agent" means General Electric Capital Corporation, as administrative and collateral agent under the New ABL Credit Agreement.

(83)   "New ABL Credit Agreement" means that certain credit agreement, dated on or about the Effective Date, by and among the New ABL Agent, the Reorganized Debtors and the New ABL Lenders providing revolving credit and letter of credit facilities with up to $150 million of commitments available to the Reorganized Debtors.

(84)   "New ABL Facility" means the financing contemplated under the New ABL Credit Agreement.

(85)   "New ABL Lenders" means those entities party to the New ABL Credit Agreement in their capacities as lenders thereunder.

(86)   "New C&S Agreement" means the C&S Agreement, as the same may be modified, amended, or restated in accordance with the term sheet attached as *Exhibit C*, subject to final agreement among the parties.  The side letter referred to in the term sheet is subject to confidentiality and will be filed under seal pursuant to the order of the Bankruptcy Court dated as of January 8, 2010 [Docket No. 2262].

(87)   "New Common Units" means the common units of Reorganized BI-LO Holding to be authorized under the Reorganized BI-LO Holding LLC Agreement.

(88)   "New Term Credit Agent" means the Person designated pursuant to the New Term Credit Agreement as agent for the lenders thereunder.

(89)   "New Term Credit Agreement" means that certain credit agreement, dated on or about the Effective Date, by and among the parties thereto (and all collateral security and loan documents related thereto).

11

(90)    "New Term Credit Facility" means the financing contemplated under the New Term Credit Agreement.

(91)    "New Term Notes" means the secured promissory notes to be issued on the Effective Date in the aggregate principal amount of $200 million evidencing term loan obligations of the Reorganized Debtors pursuant to the New Term Credit Agreement.

(92)    "Old Equity Interests" means (a) any Equity Interest in a Debtor and (b) any dividend with respect to any of the foregoing, in each case, other than a Subsidiary Equity Interest.

(93)    "Pending Payments" means identified amounts of Cash and Pro Rata Shares of other Trust Assets (excluding undeliverable Cash) held by the Creditors' Trust for distribution or collection and distribution to holders of Allowed Claims in specific amounts as of the date the Creditors' Trust receives the applicable Trust Assets.

(94)    "Permitted Reorganized Asset Lien" has the meaning set forth in the Equity Purchase Agreement.

(95)    "Person" has the meaning ascribed to it in § 101(41) of the Bankruptcy Code.

(96)    "Petition Date" means March 23, 2009, the date on which each of the Debtors commenced its Chapter 11 Case.

(97)    "Plan" means, collectively, this *Third Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* of the Debtors and all exhibits, supplements, appendices and schedules thereto, as the same may be altered, amended or modified from time to time by the Debtors with the prior approval of the Investor.

(98)    "Plan Documents" means all of the agreements and other documents that aid in effectuating the Plan listed on ***Exhibit D***, all of which shall be filed with the Bankruptcy Court on or before 10 days prior to the Voting Deadline.

(99)    "Prepetition Agents" means the ABL Agent and the Term Loan Agent.

(100)    "Prepetition Lenders" means the ABL Lenders and the Term Lenders.

(101)    "Priority Non-Tax Claim" means a claim against a Debtor or its Estate accorded priority in right of payment pursuant to § 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

(102)    "Priority Tax Claim" means a claim of a Governmental Unit against a Debtor or its Estate accorded priority in right of payment pursuant to § 507(a)(8) of the Bankruptcy Code.

(103)    "Professional" means a professional employed under §§ 327, 328 or 330 of the Bankruptcy Code.

12

(104)    "Professional Claim" means a Claim under §§ 330(a), 331, 503 or 1103 of the Bankruptcy Code, and under § 328 of the Bankruptcy Code to the extent any order of the Bankruptcy Court reserved for the United States Trustee or the Bankruptcy Court the right to review such claims, for compensation for services rendered or expenses incurred on or after the Petition Date in connection with the Chapter 11 Cases.

(105)    "Proof of Claim" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

(106)    "Pro Rata Share" means as of any date of determination, a proportionate share, so that the ratio of (a) (i) the consideration distributed on account of an Allowed Claim in a Class to (ii) the amount of such Allowed Claim, is the same as the ratio of (b) (i) the amount of the consideration distributed on account of all Allowed Claims in such Class to (ii) the aggregate amount of all Allowed Claims in such Class without taking into account any other Class or Claim in another Class; provided, however, that for the purpose of calculating a Pro Rata Share, a Disputed Claim in a Class shall be treated as an Allowed Claim in the Maximum Allowable Amount in such Class.

(107)    "Qualifying Transaction" means any transaction involving the majority of the Reorganized Assets that closes within 180 days following the Effective Date in which the Investor receives in Cash, or other consideration, a net return of at least $175 million, after deducting and satisfying all indebtedness, taxes, charges, costs, fees (excluding any charges, costs and fees paid to the Investor or its Affiliates) and contingent and reserved liabilities (on a net present value basis).

(108)    "Quarterly Distribution Date" means the last Business Day of each of April, July, October and January; provided that the first Quarterly Distribution Date after the Effective Date shall be at least 45 days after the Effective Date.

(109)    "Quarterly Test Date" means, with respect to any Quarterly Distribution Date, the date that is the last day of the month preceding such Quarterly Distribution Date.

(110)    "Record Date" has the meaning set forth in Article II.

(111)    "Released Parties" means the DIP Agent, the DIP Lenders, the New ABL Agent, the New ABL Lenders, the New Term Credit Agent, the Creditors' Committee, any Person that sold Term Loans to any of the Ahold Entities after the Petition Date but prior to Confirmation, the Ahold Entities, the Lone Star Entities, and each of their respective officers, managers, directors, principals, members, partners, stockholders, employees, agents, advisors and attorneys, acting in such capacities, and all of the successors and assigns of the foregoing and each of the Debtors' Effective Date and prior officers, managers, directors, principals, members, partners, employees, agents, advisors and attorneys, acting in such capacities, and all of the successors and assigns of the foregoing.

(112)    "Reorganized Assets" has the meaning set forth in the Equity Purchase Agreement.

(113)    "Reorganized BI-LO" means BI-LO on and after the Effective Date.

13

(114)    "<u>Reorganized BI-LO Holding</u>" means BI-LO Holding on and after the Effective Date.

(115)    "<u>Reorganized BI-LO Holding LLC Agreement</u>" means the Reorganized Debtor LLC Agreement for BI-LO Holding, substantially in the form filed as a Plan Document.

(116)    "<u>Reorganized Debtor Certificate of Formation</u>" means, with respect to a particular Reorganized Debtor, the certificates of formation of such Reorganized Debtor.

(117)    "<u>Reorganized Debtor LLC Agreement</u>" means, with respect to a particular Reorganized Debtor, the amended limited liability company agreement for such Reorganized Debtors.

(118)    "<u>Reorganized Debtors</u>" means Reorganized BI-LO Holding and each of the Reorganized Subsidiaries.

(119)    "<u>Reorganized Interests</u>" means one hundred percent (100%) of the new equity interests of Reorganized BI-LO Holding issued pursuant to the terms of the Plan and the Equity Purchase Agreement.

(120)    "<u>Reorganized Subsidiaries</u>" means the Subsidiaries on and after the Effective Date.

(121)    "<u>Restructuring Transactions</u>" means such actions that the Debtors determine to be necessary or appropriate to merge, dissolve or otherwise alter or terminate the existence or form of a Debtor as of the Effective Date, including:

> (a)    the execution and delivery of appropriate agreements or other documents of transfer, merger, consolidation, restructuring, disposition, liquidation or dissolution, containing (i) terms that are consistent with the terms of the Plan and the requirements of applicable law and (ii) such other terms as the applicable entities may agree;

> (b)    the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation, containing (i) terms consistent with the terms of the Plan and the requirements of applicable law and (ii) such other terms as the applicable entities may agree;

> (c)    the filing of appropriate certificates or articles of merger, consolidation, continuance or dissolution or similar instruments, with the applicable governmental authorities pursuant to applicable law;

> (d)    the taking of any action, including the execution and delivery of any agreement or instrument, called for or otherwise required by the Equity Purchase Agreement; and

(e)    the taking of all other actions that the applicable entities determine to be necessary or appropriate, including the making of filings, recordings or payments to any governmental authority that may be required by applicable law in connection with the foregoing.

(122)    "Retained Causes of Action" means any Cause of Action other than a Trust Cause of Action.

(123)    "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors on May 1, 2009, pursuant to § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such may be amended or supplemented from time to time.

(124)    "Secured Claim" means any Claim (other than a DIP Facility Claim or a Term Lender Claim) that is (a) secured by a Lien on Collateral, but only to the extent of the value of such Collateral as determined in accordance with § 506(a) of the Bankruptcy Code or (b) subject to a permissible setoff under § 553 of the Bankruptcy Code, but only to the extent of such permissible setoff.

(125)    "Settlement Agreement" means that certain *Settlement and Term Loan Acquisition Agreement*, dated as of December 18, 2009, by and among Ahold Acquisition Management LLC, Ahold U.S.A., Inc. (f/k/a Ahold U.S.A. Holdings, Inc.) (solely with respect to a portion thereof), Lone Star Fund V (U.S.), L.P. Lone Star Fund V (Bermuda), L.P., LSF V International, L.P., LSF V International Finance, L.P., Lone Star U.S. Acquisitions, LLC (solely with respect to a portion thereof) and LSF5 BI-LO Investments, LLC (solely with respect to a portion thereof), which will be filed, under seal, with the Bankruptcy Court pursuant to a motion to be filed on or before the hearing to approve the Disclosure Statement.

(126)    "SFM" means Southern Family Market Acquisition LLC, or its Affiliates.

(127)    "SFM Landlord Claims" has the meaning set forth in Section 3.14.

(128)    "Solicitation Procedures Order" means the order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information and approving procedures with respect to the solicitation of votes on this Plan.

(129)    "Subsidiaries" means any or all of the Debtors other than BI-LO Holding.

(130)    "Subsidiary Equity Interest" means any Equity Interest in a Subsidiary owned by a Debtor and to be owned immediately after the Effective Date by a Reorganized Debtor.

(131)    "Tax" means a tax on (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment, or charge of any kind whatsoever (together, in each instance, with any interest, penalty, addition to tax or additional amount) imposed by any federal, state or local taxing authority directly onto the Debtors or (b) any liability for payment of any amounts of the foregoing types as a

15

result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other entity.

(132)   "Term Lender Claim" means a Claim against any of the Debtors under or pursuant to (a) the Term Loan Agreement or any agreements entered into in connection therewith, or (b) the DIP Financing Order to the extent applicable in connection with claims arising under the Term Loan Agreement (including adequate protection claims).

(133)   "Term Lenders" means (a) the entities now or hereafter party to the Term Loan Agreement in their capacities as lenders thereunder and/or (b) any party that is a holder or assignee of any of the Term Loans irrespective of whether such party is a party to the Term Loan Agreement.

(134)   "Term Loan Agent" means Bank of New York Mellon, as successor to the Term Loan Predecessor Agent in its capacities as administrative and collateral agent under the Term Loan Agreement or its successors and assigns.

(135)   "Term Loan Agreement" means that certain Credit Agreement dated March 26, 2007 among BI-LO Holding, BI-LO, the Term Loan Predecessor Agent (and the Term Loan Agent, as successor), and the Term Lenders providing $260 million in term loans, as the same may have been amended, modified or supplemented from time to time through the Petition Date.

(136)   "Term Loans" means the loans outstanding under the Term Loan Agreement immediately prior to the Effective Date.

(137)   "Term Loan Predecessor Agent" means Merrill Lynch Capital Corporation, in its capacity as administrative and collateral agent under the Term Loan Agreement.

(138)   "Trust Advisory Board" means the board to be created pursuant to Article V of the Plan for the purpose of advising the Trustee with respect to the Creditors' Trust.

(139)   "Trust Agreement" means the agreement to be drafted by the Creditors' Committee establishing the Creditors' Trust, consistent with the Plan, substantially in the form filed as a Plan Document, which agreement shall be approved by the Bankruptcy Court at the Confirmation Hearing.

(140)   "Trust Assets" means the Unsecured Creditors' Fund for Class 4 and Class 6 and the Trust Causes of Action.  The Trust Assets shall not constitute property of the Debtors or the Reorganized Debtors.

(141)   "Trust Causes of Action" means only those Claims, Causes of Action, rights of set-off, or other rights or defenses of the Debtors relating to any Class 4 or Class 6 Claim (except as provided in this Section 1.1(a)(141) or otherwise in the Plan) including, without limitation, Claims and Causes of Action constituting Excluded Assets (unless the Creditors' Committee notifies the Debtors that it waives transfer or assignment of any Excluded Asset to the Creditors' Trust in which event such Excluded Asset shall be

16

abandoned by all Estates and such abandonment will be as of the Effective Date), including any and all rights, demands, Claims, Causes of Action, known or unknown, pending or threatened (a) relating to avoidance Claims or Causes of Action of the Debtors arising under the Bankruptcy Code or applicable state law, including all avoidance Claims or Causes of Action of the Debtors arising under Chapter 5 of the Bankruptcy Code or under any other similar law that may be applicable or (b) arising out of or relating in any way to only the Excluded Assets; provided, however, except as set forth in the last sentence of Section 3.14 of the Plan, the Trust Causes of Action shall not include any of the following Claims or Causes of Action held by the Debtors or their Estates: (i) commercial and/or employment related contract Claims and defenses against the Debtors' current or former employees, officers, directors, or vendors or service providers conducting business with the Debtors as of the Effective Date (hereinafter in this Section 1.1(a)(141) "current vendors or current service providers", as applicable), except that the Creditors' Trust can assert any prepetition commercial and/or employment related contract defense to a Class 4 or Class 6 Claim so long as such prepetition commercial and/or employment related contract defense is directly related to any dispute of, objection to or reconciliation of a Class 4 or Class 6 Claim and is not used for seeking any affirmative recovery, (ii) Commercial Tort Claims (as defined in S.C. Code Ann. § 36-9-102(a)(13)) and other tort Claims and defenses against the Debtors' current or former employees, officers, directors, or current vendors or current service providers, (iii) Intercompany Claims by and between the Debtors, (iv) Claims or Causes of Action against the Debtors' current or former employees, officers, directors, or current vendors or current service providers arising under §§ 502(d), 544-550 of the Bankruptcy Code or under any other similar law that may be applicable, (v) Claims, Causes of Action or defenses arising from or related to executory contracts or leases assumed pursuant to the Plan, (vi) Causes of Action previously released by Court order or (vii) Causes of Action released under Section 9.8 hereof (including Causes of Action against Released Parties). Notwithstanding anything to the contrary in the Plan or the Equity Purchase Agreement, the Reorganized Assets shall not include any Trust Causes of Action.

(142)   "Trust Recoveries" means the Trust Assets, but only to the extent of Cash proceeds, net of (a) Taxes, (b) fees, costs and expenses of the Creditors' Trust, and (c) the amount necessary to provide for the recoveries to holders of Allowed Class 6 Claims (including the Maximum Allowable Amount of Disputed Class 6 Claims as of the applicable Distribution Date).

(143)   "Trustee" means the trustee appointed in accordance with Article V and as contemplated by the Trust Agreement, as approved by the Bankruptcy Court at the Confirmation Hearing.

(144)   "Trustee Professionals" has the meaning set forth in Article V.

(145)   "Unsecured Creditors' Fund" means the fund created on the Effective Date with respect to Classes 4 and 6 that will hold Cash in the amount of (a) $40 million and (b) thereafter, if a Qualifying Transaction occurs, an additional $4 million; provided, however, that, in any case, subject to reduction for amounts paid to satisfy Class 6 Claims.

US 303315v.7

(146)  "Voting Deadline" means the date that is established by the Bankruptcy Court by which all Ballots indicating acceptance or rejection of the Plan must be received by the Claims and solicitation Agent in order to be counted.

1.2    Interpretation.  For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) unless otherwise specified, any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference in the Plan to an existing document, schedule or exhibit, whether or not filed, shall mean such document, schedule or exhibit, as it may have been or may be amended, modified or supplemented; (d) any reference to an entity as a holder of a Claim or Equity Interest includes that entity's successors and assigns; (e) unless otherwise specified, all references in the Plan to Articles are references to Articles of the Plan or to the Plan; (f) unless otherwise specified, all references in the Plan to exhibits are references to Plan Documents; (g) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (h) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (j) unless otherwise set forth in the Plan, the rules of construction set forth in § 102 of the Bankruptcy Code shall apply; (k) all references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (l) all references to statutes, regulations, orders, rules of courts and the like shall mean, as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (m) any effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan, all without further Bankruptcy Court order.

1.3    Computation of Time.  In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

1.4    Reference to the Debtors or Reorganized Debtors.  Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors shall mean the Debtors and Reorganized Debtors, as applicable, to the extent the context requires.

1.5    Disclosure Statement and Plan Documents.  All Plan Documents are incorporated into the Plan by this reference as if set forth in full herein.  In the event of a conflict between the Plan (including a Plan Document) and a Plan Document or the Disclosure Statement, the Plan shall control.  In the event of any inconsistency between the Plan (including a Plan Document) and the Confirmation Order, the Confirmation Order shall control.  The Debtors shall file the Plan Documents no later than the date that is 10 days before of the Voting Deadline.

ARTICLE II

CLASSIFICATION, TREATMENT AND VOTING RIGHTS
OF CLAIMS AND EQUITY INTERESTS

18

2.1     <u>Substantive Consolidation</u>.  The Plan shall serve as a motion by the Debtors seeking entry of a Bankruptcy Court order substantively consolidating all of the Estates into a single consolidated Estate for all purposes associated with Confirmation and Consummation.  Entry of the Confirmation Order shall constitute the approval, pursuant to § 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Chapter 11 Cases solely for the purposes of voting on, Confirmation of and distributions under the Plan and for no other purpose.  In furtherance thereof, on and after the Effective Date:  (a) all guarantees of the Debtors of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors; and (b) each and every Claim (other than an Intercompany Claim) in the Chapter 11 Case of any of the Debtors shall be deemed one Claim against and obligation of the consolidated Debtors.  The Plan does not contemplate the merger or dissolution of any of the Debtors (other than pursuant to a Restructuring Transaction) or the transfer or commingling of any assets of any of the Debtors, except to accomplish the distributions under the Plan.  Substantive consolidation shall not affect the legal and organizational structure of the Reorganized Debtors or their separate corporate existences or any prepetition or postpetition guarantees, Liens or security interests that are required to be maintained under the Bankruptcy Code, under the Plan, or, in connection with contracts or leases that were assumed or entered into during the Chapter 11 Cases.  Any alleged defaults under any applicable agreement with the Debtors or the Reorganized Debtors arising from substantive consolidation under the Plan shall be deemed cured as of the Effective Date.

Notwithstanding the deemed substantive consolidation of the Chapter 11 Cases for purposes indicated above, each Reorganized Debtor shall pay all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business, until the entry of a final decree closing the Chapter 11 Cases as contemplated by Bankruptcy Rule 3022, dismissal of the Chapter 11 Cases or conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

2.2     <u>Administrative Claims</u>.

(a)     <u>General</u>.  Except to the extent that a holder has been paid by the Debtors, in whole or in part, prior to the Effective Date or agrees to a less favorable treatment, or unless an order of the Bankruptcy Court provides otherwise, each holder of an Allowed Administrative Claim shall, in full and complete settlement, satisfaction and discharge of such Claim, receive Cash in an amount equal to such Allowed Administrative Claim on the latest to occur of (1) the Effective Date; (2) the date such Administrative Claim become Allowed; and (3) the date on which such Administrative Claim becomes due in accordance with its terms; <u>provided</u>, <u>however</u>, that (1) an Administrative Claim representing an undisputed liability incurred in the ordinary course of business of a Debtor shall be paid in full in the ordinary course of business by the Debtors or the Reorganized Debtors, in accordance with the terms and subject to the conditions of any agreements governing such ordinary course liability without the need for Bankruptcy Court approval, and (2) an Administrative Claim representing a liability incurred outside of the ordinary course of business of a Debtor, and pursuant to an agreement, shall be paid in full by the Debtors or the Reorganized Debtors, in accordance with the terms and subject to the conditions of such agreement, subject to Bankruptcy Court approval.  The Reorganized Debtors shall have the sole right to reconcile and object to the Administrative Claims.

(b)     <u>Bar Date for Administrative Claims</u>.  Except as otherwise provided herein related to a liability incurred in the ordinary course of the Debtors' business, requests for payment of Administrative

19

Claims must be filed and served on the Reorganized Debtors and the Claims and Solicitation Agent and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court no later than 45 days after the Effective Date. Any holder of an Administrative Claim that was required to, but did not, file a Proof of Claim or request for payment of Administrative Claims on or before any previously applicable Bar Date, and any other holder of an Administrative Claim that is required to, but does not, file and serve a request for payment of such Administrative Claim in accordance with this Article II shall be forever barred from asserting such Administrative Claim against the Debtors, the Reorganized Debtors, their respective property or any assets of the Debtors' Estates, and such Administrative Claims shall be deemed waived and released as of the Effective Date. The Reorganized Debtors may settle and pay any Administrative Claim incurred in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court. In the event that any party with standing objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Objections to any Administrative Claim must be filed by the Claims Objection Deadline. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed by Final Order.

(c)    <u>Reimbursement of Financing and Other Costs and Expenses</u>. On or about the Effective Date, the Reorganized Debtors shall reimburse the Investor and its Affiliates for all commitment and other fees and expenses (including legal fees and expenses) incurred or paid by the Investor or its Affiliates in connection with, relating to, or arising under the New ABL Facility or the New Term Credit Facility.

2.3    <u>Professional Claims</u>.

(a)    <u>Final Fee Applications</u>. All final requests for payment of Professional Claims shall be filed no later than 45 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court and, with respect to the Claims of any Creditors' Committee Professional, immediately paid from the Creditors' Committee Professional Fee Account and with respect to all other Professional Claims, paid by the Reorganized Debtors when Allowed.

(b)    <u>Payment of Interim Amounts</u>. Subject to the Bankruptcy Court's Final Orders on the final requests as provided in Section 2.3(a) hereof, Professional Claims shall continue to be paid pursuant to the Interim Compensation Order for amounts incurred prior to the Effective Date.

(c)    <u>Creditors' Committee Professional Fee Account</u>. On the Effective Date, the Reorganized Debtors shall create a segregated bank account (the "<u>Creditors' Committee Professional Fee Account</u>") and fund such account with Cash equal to the aggregate Creditors' Committee Professional Fee Reserve Amount (defined below) for all Creditors' Committee Professionals. The Creditors' Committee Professional Fee Account shall be maintained in trust for the Creditors' Committee Professionals with respect to whom fees and expenses have been held back pursuant to the Interim Compensation Order. Such funds shall not be considered property of the Reorganized Debtors. The remaining amount of Professional Claims owing to Creditors' Committee Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Creditors' Committee Professional Fee Account, without interest or other earnings therefrom, when such Claims are Allowed by a Bankruptcy Court order. When all Creditors' Committee Professional Claims have been paid in full, any

amounts remaining in the Creditors' Committee Professional Fee Account, shall be paid or transferred to the Reorganized Debtors. In the event of any shortfall of the reserve, the Reorganized Debtors shall pay any and all Allowed amounts remaining as approved by the Bankruptcy Court.

(d)    <u>Creditors' Committee Professional Fee Reserve Amount</u>.    To receive payment for unbilled fees and expenses incurred through the Effective Date, the Creditors' Committee Professionals shall estimate their Professional Claim prior to and as of the Effective Date and shall deliver such estimate to the Debtors on or before the Effective Date. If a Creditors' Committee Professional does not provide such estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Professional; provided, however, that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional. The total amount so estimated as of the Effective Date shall comprise the "<u>Creditors' Committee Professional Fee Reserve Amount</u>."

(e)    <u>Post-Effective Date Fees and Expenses</u>.    Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional or other fees and expenses related to implementation and Consummation incurred by the Reorganized Debtors and the Creditors' Committee in connection with those matters for which it remains in existence after the Effective Date pursuant to the Plan. Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Creditors' Trust shall, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional or other fees and expenses related to implementation and Consummation incurred by the Creditors' Committee in connection with those matters for which it remains in existence after the Effective Date pursuant to the Plan. Upon the Effective Date, any requirement that Professionals comply with §§ 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors and the Creditors' Trust may employ and pay any Professional in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

(f)    <u>Substantial Contribution Compensation and Expenses</u>.    Except as otherwise specifically provided in the Plan, any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to §§ 503(b)(3), (4) and (5) of the Bankruptcy Code must file an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, and as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before 45 days after the Effective Date, or be forever barred from seeking such compensation or expense reimbursement.

2.4    <u>DIP Facility Claims</u>.    On the Distribution Date, (a) the DIP Agent shall receive (for the benefit of and distribution to each of the DIP Lenders in accordance with the DIP Credit Agreement), in full and complete settlement, satisfaction and discharge of all DIP Facility Claims, Cash in the amount of the Allowed DIP Facility Claims, and (b) all letters of credit issued and outstanding under the DIP Credit Agreement shall either be (1) returned to the issuer undrawn and marked cancelled or (2) collateralized either in Cash or a back-to-back letter of credit, in an amount equal to 100% of the face amount. The Reorganized Debtors shall have the sole right to reconcile and object to the DIP Facility Claims.

2.5    <u>Priority Tax Claims</u>.    Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors, in whole or in part, prior to the Effective Date, or agrees to a less favorable treatment,

21

each holder of an Allowed Priority Tax Claim shall, in full and final satisfaction, release and discharge of its Claim: (a) be paid by the Reorganized Debtor, in Cash the full amount of its Allowed Priority Tax Claim on the Distribution Date, (b) receive such other terms determined by the Bankruptcy Court to provide the holder deferred cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim, or (c) receive such other treatment as may be agreed upon in writing by such holder and the Debtors or Reorganized Debtors. The Reorganized Debtors shall have the sole right to reconcile and object to the Priority Tax Claims.

Notwithstanding the foregoing, the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim. Any such Claim or demand for any such penalty shall be discharged under the Plan and the holder of an Allowed Priority Tax Claim shall be barred from collecting or attempting to collect such penalty from the Reorganized Debtors or their property.

2.6    Classification, Treatment and Voting Rights of Classified Claims and Equity Interests.

(a)    Class 1 — Priority Non-Tax Claims.

(1)    Classification.  Class 1 consists of all Priority Non-Tax Claims against the Debtors.

(2)    Treatment.  On the Distribution Date, each holder of an Allowed Priority Non-Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of such Claim, either:  (A) Cash in the amount of such holder's Allowed Priority Non-Tax Claim; or (B) such other treatment as may be agreed upon in writing by such holder and the Debtors or, after the Effective Date, the Reorganized Debtors.

(3)    Impairment and Voting.  Class 1 is unimpaired under the Plan. Each holder of an Allowed Priority Non-Tax Claim is conclusively presumed to have accepted the Plan and is not entitled to vote on the Plan.

(b)    Class 2 — Secured Claims.

(1)    Classification.  Class 2 consists of all Secured Claims against the Debtors.

(2)    Treatment.  On the Distribution Date, each holder of an Allowed Secured Claim, if any, shall, in full and complete settlement and satisfaction of such Claim, at the sole option of the Reorganized Debtors:  (A) have such Claim reinstated and rendered unimpaired in accordance with § 1124 of the Bankruptcy Code; or (B) receive such other treatment as may be agreed upon in writing by such holder and the Debtors or, after the Effective Date, the Reorganized Debtors.

(3)    Impairment and Voting.  Class 2 is unimpaired under the Plan. Each holder of an Allowed Secured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote on the Plan.

(c)    Class 3 — Term Lender Claims.

(1)    Classification.  Class 3 consists of all Term Lender Claims against the Debtors.

22

(2)     <u>Allowance</u>.  Subject to the occurrence of the Effective Date, and solely for purposes of this Plan, the Term Lender Claims are Allowed.

(3)     <u>Treatment</u>.  On the Effective Date, each of the Term Lenders shall receive, in full and complete settlement, satisfaction and discharge of such Allowed Class 3 Claim, a Pro Rata Share of:  (A) $260,000,000.00 in Cash minus (i) the aggregate principal amount of the Term Loans, if any, contributed by the Investor (and cancelled) and (ii) the net proceeds from the sale of any collateral that secures the Term Lender Claims received by the Class 3 claimants (or the Term Loan Agent) during the Bankruptcy Cases; and (B) the retention of (i) all "adequate protection" payments made by the Debtors in accordance with the Adequate Protection Consent Order with respect to the Term Loans prior to the Effective Date, and (ii) the Equipment Proceeds.  The Plan will serve as a motion seeking approval under Bankruptcy Rule 9019(a) of a compromise with respect to the priority, secured status and treatment of the Class 3 Term Lender Claims in accordance with the Plan.

(4)     <u>Impairment and Voting</u>.  Class 3 is impaired under the Plan.  Each holder of an Allowed Term Lender Claim is entitled to vote to accept or reject the Plan.

(d)     Class 4 — General Unsecured Claims (Other Than Class 5 Claims and Class 6 Claims).

(1)     <u>Classification</u>.  Class 4 consists of all General Unsecured Claims, other than Class 5 Claims and Class 6 Claims, against the Debtors.

(2)     <u>Treatment</u>.  On the Effective Date, in full and complete settlement, satisfaction and discharge of such Claim, each holder of an Allowed Class 4 Claim shall receive, its Pro Rata Share of the Trust Assets, less any amounts necessary to satisfy or reserve for Class 6 Claims, in accordance with the terms of the Plan.  The Trustee shall make the initial distribution to holders of Allowed Class 4 Claims from the Trust Recoveries as soon as practicable after the Effective Date as authorized by the Trust Advisory Board after a sufficient reserve has been established for Disputed Class 4 Claims, in accordance with Section 5.5 of the Plan.

(3)     <u>Impairment and Voting</u>.  Class 4 is impaired under the Plan.  Each holder of an Allowed Class 4 Claim (not otherwise treated as a Class 6 Claim) is entitled to vote to accept or reject the Plan.

(e)     Class 5 — General Unsecured Claims of the Class 5 Claimants.

(1)     <u>Classification</u>.  Class 5 consists of the holders of Class 5 Claims, against the Debtors.

(2)     <u>Treatment</u>.  On the Effective Date, in full and complete settlement, satisfaction and discharge of such Claim, each holder of an Allowed Class 5 Claim shall be entitled to receive from the Investor (or its designee) on the Distribution Dates, its Class 5 Payment calculated at the same percentage as paid to holders of Allowed Class 4 Claims (for clarity, if the Pro Rata Share ultimately paid to Class 4 Claims is 50%, then Class 5

Claims will likewise ultimately receive 50% of their Allowed Claim).  Lone Star Fund V (U.S.) LP shall guarantee the Class 5 Payment to be made pursuant to the Plan.

(3)     Impairment and Voting.  Class 5 is impaired under the Plan.  Each holder of an Allowed Class 5 Claim is entitled to vote to accept or reject the Plan.

(f)     Class 6 —Convenience Claims

(1)     Classification.  Class 6 consists of all Convenience Claims against the Debtors.

(2)     Treatment.  On the Effective Date, in full and complete settlement, satisfaction, and discharge of such Claim, each holder of an Allowed Convenience Claim shall be entitled to receive on the applicable Distribution Date, from the Creditors' Trust a one-time Cash payment in an amount equal to the product of .60 multiplied by such holder's Allowed Convenience Claim (as reduced, if applicable, pursuant to an election made by the holder on its Ballot to reduce its Optional Convenience Claim to $5,000 and to accept treatment in Class 6).  Other than the cash payment set forth above, Class 6 claimants (including those electing Class 6 treatment on their ballot) shall receive no other distribution from the Trust Assets and shall receive no other distribution on account of their Allowed Class 6 Claim.  The Trustee shall make the initial distribution to holders of Allowed Convenience Claims as soon as practicable after the Effective Date as authorized by the Trust Advisory Board after a sufficient reserve has been established for Disputed Convenience Claims in accordance with Section 5.5 of the Plan.

(3)     Impairment and Voting.  Class 6 is impaired under the Plan.  Each holder of an Allowed Convenience Claim is entitled to vote to accept or reject the Plan.

(g)     Class 7 — Old Equity Interests.

(1)     Classification.  Class 7 consists of all Old Equity Interests in BI-LO Holding.

(2)     Treatment.  On the Effective Date, each and every Old Equity Interest shall be cancelled and discharged and the holder thereof shall receive or retain no property or distribution under the Plan on account of such interest.

(3)     Impairment and Voting.  Class 7 is impaired under the Plan.  Each holder of an Old Equity Interest is deemed to have rejected the Plan and is not entitled to vote on the Plan.

(4)     Old Equity of Subsidiaries.     On the Effective Date, the Old Equity Interests of the Subsidiaries shall revest in the same entity that held such interest on the Petition Date.

2.7     Classification Rules.  The inclusion of an entity by name or status in any Class is for purposes of general description only and includes all entities claiming as beneficial interest holders, assignees, heirs, devisees, transferees or successors in interest of any kind of the entity so named or described.  A Claim is in a particular Class only to the extent that the Claim qualifies within the description of Claims of that Class, and such Claim is in a different Class to the extent that the remainder of the Claim qualifies within the description of a different

24

Class.  Pursuant to § 1123(a)(4) of the Bankruptcy Code, all Allowed Claims of a particular Class shall receive the same treatment unless the holder of a particular Allowed Claim agrees to a less favorable treatment for such Allowed Claim.

2.8    Impairment Controversies.  If a controversy arises as to whether any Class or any Claim or Equity Interest is impaired under the Plan, such matter shall be determined by the Bankruptcy Court.

2.9    Record Date.  Unless otherwise ordered by the Bankruptcy Court, the record date for determining entitlement to distributions under the Plan shall be the Confirmation Date.

2.10    Confirmation Without Acceptance By All Impaired Classes.  Notwithstanding the rejection (or deemed rejection) by one or more impaired Classes entitled to vote to accept or reject the Plan, the Debtors request Confirmation in accordance with § 1129(b) of the Bankruptcy Code.

ARTICLE III

PROVISIONS FOR IMPLEMENTATION OF THE PLAN

3.1    Existence.

(a)    On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor shall continue to exist as a separate legal entity, with all limited liability company powers in accordance with applicable laws, and shall exist and operate pursuant to the applicable law in the jurisdiction in which each applicable Reorganized Debtor is incorporated or formed and pursuant to the respective limited liability company agreement (or other formation documents) in effect prior to the Effective Date, except to the extent such limited liability company agreement (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval.

(b)    On or after Confirmation, the Debtors may enter into the Restructuring Transactions, the effectiveness of which are subject to the occurrence of the Effective Date.

3.2    Compliance With § 1123(a)(6) of the Bankruptcy Code.  The Reorganized Debtor Certificate of Formation and the Reorganized Debtor LLC Agreement of each of the Reorganized Debtors shall contain provisions necessary to prohibit the issuance of nonvoting equity securities as required by § 1123(a)(6) of the Bankruptcy Code, subject to subsequent amendment thereof as permitted by applicable law.

3.3    Sources of Consideration for the Plan.  Except as set forth in the Plan with respect to the Class 5 Payment, the Reorganized Debtors shall fund distributions under the Plan with Cash on hand, the Reorganized Assets, the post-Confirmation borrowings described below and the Equity Investment.

(a)    New Term Notes.  On the Effective Date, the Reorganized Debtors shall issue the New Term Notes.  Confirmation shall be deemed approval of the New Term Credit Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities and expenses provided for therein) and authorization for the Reorganized Debtors to enter into and execute the New Term Credit Agreement and such other documents as may be necessary, desirable or appropriate to effectuate the transactions contemplated by the New Term Credit Facility

25

(including, without limitation, approval and authorization for the granting of liens, mortgages and security interests in the real property leases for the stores to the extent the granting of such liens, mortgages and security interests is not expressly prohibited by the terms of such leases), subject to such modifications as the Reorganized Debtors deem to be reasonably necessary to consummate such New Term Credit Facility.  The Reorganized Debtors may use the New Term Credit Facility for any purpose permitted thereunder, including the funding of obligations under the Plan, such as the payment of Administrative Claims, and satisfaction of ongoing working capital needs.

(b)    New ABL Facility.  On the Effective Date, the Reorganized Debtors shall enter into the New ABL Facility.  Confirmation shall be deemed approval of the New ABL Facility (including the transactions contemplated thereby, such as any supplementation or additional syndication of the New ABL Facility, and all actions to be taken, undertakings to be made and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities and expenses provided for therein) and authorization for the Reorganized Debtors to enter into and execute the New ABL Credit Agreement and such other documents as may be necessary, desirable or appropriate to effectuate the New ABL Facility (including, without limitation, approval and authorization for the granting of liens, mortgages and security interests in the real property leases for the stores to the extent the granting of such liens, mortgages and security interests is not expressly prohibited by the terms of such leases), subject to such modifications as the Reorganized Debtors deem to be reasonably necessary to consummate such New ABL Facility.  The Reorganized Debtors may use the New ABL Facility for any purpose permitted thereunder, including the funding of obligations under the Plan, such as the payment of Administrative Claims, and satisfaction of ongoing working capital needs.

(c)    Investor's Funding of the Equity Investment.  Pursuant to and in accordance with the Equity Purchase Agreement, on the Effective Date, the Investor shall pay to Reorganized BI-LO Holding the Equity Investment and, in consideration of the payment thereof, Reorganized BI-LO Holding shall issue to the Investor or its designated affiliate assignees the appropriate number of New Common Units representing 100.0% of the New Common Units issued and outstanding immediately following the Effective Date.  The Equity Investment shall be payable by the Investor, in the Investor's sole discretion, in a combination of Cash and Term Loans (it being understood that the sum of (i) the Cash, and (ii) the aggregate principal amount of any Term Loans constituting part of the Equity Investment, shall equal $150,000,000).  Any Term Loans delivered or contributed to Reorganized BI-LO Holding as part of the Equity Investment shall be cancelled and extinguished without the payment of any consideration, including any distributions under this Plan.  The Reorganized Debtors may use the Cash portion of the Equity Investment for any purpose not prohibited by the New Term Credit Facility or the New ABL Facility, including the funding of obligations under the Plan, such as the payment of Administrative Claims, and satisfaction of ongoing working capital needs.

3.4    Action To Facilitate Consummation of the Plan.  The following events shall occur and be effective as of the Effective Date or such other date specified in the documents effectuating the same and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by holders of Claims or Equity Interests, directors of the Debtors, the Reorganized Debtors or any other entity:

(a)    the Restructuring Transactions;

(b)     execution, delivery, adoption and filing of the Reorganized Debtor LLC Agreements, including the Reorganized BI-LO Holding LLC Agreement and the Reorganized Debtor Certificates of Formation;

(c)     execution, consummation and delivery of the New Term Credit Agreement governing the New Term Notes and issuance of the New Term Notes pursuant thereto as contemplated by the Plan;

(d)     issuance of New Common Units as contemplated by the Plan and the Equity Purchase Agreement;

(e)     execution, consummation and delivery of the New ABL Credit Agreement;

(f)     election or appointment of the initial managers, directors and officers of the Reorganized Debtors, execution of any indemnification agreements and the procurement of manager, director or officer insurance coverage, in each case, in connection therewith;

(h)     execution and delivery of the New C&S Agreement; and

(i)     creation of the Creditors' Trust, execution and delivery of the Trust Agreement and transfer of the Trust Assets to the Creditors' Trust; and

(j)     the satisfaction or waiver of all conditions to closing set forth in Article VII of the Equity Purchase Agreement.

3.5     Effectuating Documents, Further Transactions.  On and after the Effective Date, the Reorganized Debtors, and the officers and members of the board of managers thereof, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations or consents except for those expressly required pursuant to the Plan.

3.6     Corporate Governance and Management of the Reorganized Debtors.

(a)     Board of Managers.  On the Effective Date, the management, control and operation of each of the Reorganized Debtors shall become the general responsibility of its board of managers.  On the Effective Date, the initial board of managers of Reorganized BI-LO Holding shall consist of Randall Onstead and John Kinzer. Thereafter, the terms, classification, composition and manner of selection of managers of Reorganized BI-LO Holding shall be as provided in the Reorganized BI-LO Holding LLC Agreement, as the same may be amended from time to time, and applicable law.  In accordance with § 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of any Person proposed to serve as an officer or director of Reorganized BI-LO Holding shall have been disclosed at or before the Confirmation Hearing.  To the extent any Person proposed to serve as a board member or an officer of Reorganized BI-LO Holding is an Insider, the nature of any compensation for such Person shall have been disclosed at or before the Confirmation Hearing.  Each director or officer of Reorganized BI-LO Holding shall serve from and after the Effective Date pursuant to the terms of the

27

Reorganized BI-LO Holding LLC Agreement, as the same may be amended from time to time, and applicable law.

(b)     Officers.  Each individual serving as an officer of BI-LO Holding immediately prior to the Effective Date shall hold the same office of Reorganized BI-LO Holding on and after the Effective Date unless and until changed by the board of managers of Reorganized BI-LO Holding on or after the Effective Date.

3.7     Securities Exemptions.  The offering, issuance and distribution under the Plan of the New Common Units and any beneficial interests in the Creditors' Trust, to the extent they are securities, shall be exempt from the registration requirements of § 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of such securities, pursuant to §1145 of the Bankruptcy Code to the extent that such securities are issued under the Plan in exchange for a claim against or interest in the Debtors or principally in such exchange and partly for cash or property.  The Debtors believe that the offering, issuance and distribution under the Plan of the New Term Notes and the New Common Units (to the extent the New Common Units are not issued under the Plan in exchange for a claim against or interest in the Debtors or principally in such exchange and partly for cash or property) shall be exempt from the registration requirements of §5 of the Securities Act and other applicable law requiring registration pursuant to the exemptions provided for under such laws, provided however that the Securities and Exchange Commission makes no determination regarding the availability of any such exemptions.

3.8     Issuance and Distribution of the New Common Units and the New Term Notes.  The New Common Units and the New Term Notes, when issued or distributed as provided in the Plan, will be duly authorized, validly issued, and, with respect to the New Common Units, fully paid and nonassessable. Each distribution and issuance referred to in the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each entity receiving such distribution or issuance.

3.9     Preservation of Causes of Action by the Debtors, the Reorganized Debtors and the Trustee.  In accordance with § 1123(b)(3) of the Bankruptcy Code, (i) the Debtors and the Reorganized Debtors shall retain and may (but are not required to) enforce all Retained Causes of Action other than Causes of Action released pursuant to the Plan whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date; and (ii) the Trustee of the Creditors' Trust shall retain and may (but is not required to) enforce all Trust Causes of Action (other than Causes of Action released pursuant to the Plan) whether arising before or after the Petition Date, and the Trustee's's rights to commence, prosecute or settle such Trust Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Debtors and the Reorganized Debtors shall have the sole right and authority to pursue, prosecute, litigate to judgment and settle the Retained Causes of Action.  Subject to the terms of the Plan, the Trustee of the Creditors' Trust shall have the sole right and authority to pursue, prosecute, litigate to judgment and settle the Trust Causes of Action.  **No entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Retained Causes of Action or Trust Causes of Action against them as any indication that the Debtors, Reorganized Debtors or the Trustee of the Creditors' Trust, as applicable, will not pursue any and all available Retained Causes of Action or Trust Causes of Action against them.  The Debtors, the Reorganized Debtors and the Trustee of the Creditors' Trust expressly reserve all rights to prosecute any and all Causes of Action against any entity, except as otherwise expressly provided in the Plan.**  Unless any Retained Causes of Action or Trust Causes of Action against an entity are expressly waived, relinquished, exculpated, released, compromised or

28

settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors and the Trustee, as applicable expressly reserve all Retained Causes of Action and Trust Causes of Action, as applicable for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Retained Causes of Action or Trust Causes of Action after, or as a consequence of, Confirmation or Consummation.

The Debtors and the Reorganized Debtors reserve and shall retain the foregoing Retained Causes of Action notwithstanding the rejection or repudiation of any executory contract or unexpired lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with § 1123(b)(3) of the Bankruptcy Code, any and all Retained Causes of Action shall vest in the Reorganized Debtors. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.

In accordance with § 1123(b)(3) of the Bankruptcy Code, any and all Trust Causes of Action shall vest in the Creditors' Trust. Subject to the terms of the Plan, the Trustee of the Creditors' Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, assert as a set-off or other defenses as to a Class 4 or Class 6 Claim, abandon, settle, compromise, release, withdraw or litigate to judgment any Trust Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court as set forth in the Trust Agreement.

3.10    <u>Cancellation of Debt and Equity Securities and Related Obligations</u>. On the Effective Date, except as otherwise specifically provided for in the Plan: (a) the Old Equity Interests and any other certificate, note, bond, indenture, purchase right, option, warrant or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes, other instruments or documents evidencing indebtedness or obligations of the Debtors that are reinstated pursuant to the Plan, if any), shall be cancelled solely as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder, and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the Old Equity Interests and any other certificates, notes, bonds, indentures, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements or certificates, notes or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to the Plan) shall be released and discharged; provided, however, that notwithstanding Confirmation, any such indenture or agreement that governs the rights of the holder of a Claim or Equity Interest shall continue in effect solely for purposes of: (x) allowing holders to receive distributions under the Plan; and (y) governing the rights and obligations of non-Debtor parties to such agreements vis-à-vis each other, if applicable.

3.11    <u>Post-Confirmation Property Sales</u>. To the extent the Debtors have filed with the Bankruptcy Court a motion to sell any Reorganized Assets not necessary to the ongoing business operations of the Debtors that is pending as of the Confirmation Hearing, the Debtors or Reorganized Debtors, as applicable, may elect to sell such Reorganized Assets pursuant to §§ 363, 1123 and 1146(a) of the Bankruptcy Code after Confirmation.

3.12    <u>Exemption from Certain Transfer Taxes and Recording Fees</u>. Pursuant to § 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, distribution, transfer or

exchange of any debt, equity security or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment or recording of any lease or sublease or amendment thereto; or (d) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to the Plan, shall not be subject to any document recording Tax, stamp Tax, conveyance fee, intangibles or similar Tax, mortgage Tax, real estate transfer Tax, mortgage recording Tax, Uniform Commercial Code filing or recording fee or other similar Tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such Tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such Tax or governmental assessment.

3.13    <u>C&S Settlement</u>.  On the Effective Date, pursuant to the Plan, a settlement with C&S shall be implemented.  Under the settlement, the Reorganized Debtors will assume the New C&S Agreement and make a cash payment of $15 million to C&S, and the Debtors shall grant C&S a full release of any and all claims they may have against C&S.  C&S, on the other hand, will agree to the assumption of the New C&S Agreement by the Reorganized Debtors and will relinquish any and all Claims of C&S against the Debtors, the Estates, the Reorganized Debtors or the Lone Star Entities, and C&S shall have no further Claims or Causes of Action against the Debtors, the Estates, the Reorganized Debtors or the Lone Star Entities, except as provided for in the New C&S Agreement.  The settlement with C&S also includes a release by C&S of its general unsecured claim pending in the bankruptcy case of BFW Liquidating LLC, f/k/a Bruno's Supermarkets, LLC; provided, however, that such release will not waive, impair or affect the administrative claim submitted by C&S in that case which administrative claim is now held by and belongs to the Debtors.  The various forms of value and consideration being provided by C&S, the Reorganized Debtors and the Debtors in connection with the settlement are mutually dependent upon one another and therefore are not severable from one another.  Absent any portion of the consideration described herein, one or more of the parties to the settlement would not have consented to the settlement.  To the extent necessary, the Plan will serve as a motion seeking approval under Bankruptcy Rule 9019(a) of a compromise with respect to any claims by and among the Debtors and C&S as set forth above.

3.14    <u>Ahold/SFM Claims Settlement</u>.  As part of the overall compromise and settlement by and between the Debtors, the Creditors' Committee, the Ahold Entities and the Lone Star Entities that is contained in the Plan, the applicable Ahold Entities (in the aggregate) shall have an Allowed Class 4 Claim relating to the Ahold/SFM Lease Claims in the amount of $7 million.  Confirmation of the Plan by the Bankruptcy Court constitutes approval and allowance of the Ahold/SFM Lease Claims in this amount; provided, however, that to the extent any Proofs of Claim filed by a landlord against the Debtors' Estates in respect of non-residential real property leases covered by the Ahold/SFM Lease Claims which are subject to a guaranty entered into by an Ahold Entity, including Proofs of Claim Nos. 1454, 1659 and 1660 for SFM store numbers 434, 518, 528 and 733 (the "SFM Landlord Claims"), becomes an Allowed Claim (subject to the Ahold Entities' right to take assignment of any SFM Landlord Claims and be heard in connection with any objection to or resolution of any SFM Landlord Claims by the Trustee of the Creditors' Trust), the Ahold/SFM Lease Claims related to such Allowed SFM Landlord Claim shall either (i), upon payment by an Ahold Entity of an Allowed SFM Landlord Claim, be subrogated to such Allowed SFM Landlord Claim (only to the extent of such Allowed SFM Landlord Claim), with such Allowed SFM Landlord Claim to be (a) deemed subsumed and included entirely within the Ahold/SFM Lease Claims, and (b) then expunged; <u>provided</u>, <u>however</u>, that such inclusion shall not increase or impact, in any manner whatsoever, the Allowed amount of the Ahold/SFM Lease Claims or (ii) be reduced in an amount equal to such Allowed SFM Landlord Claim if a distribution under the Plan is made to the holder of such Allowed SFM Landlord Claim; <u>provided further</u>, <u>however</u>, such approval does not affect or operate as a limit or

30

a cap on any other General Unsecured Claim submitted by any Ahold Entity (which does not include any Class 3 Claims) which shall be treated as Class 4 Claims. Notwithstanding anything in this Plan or the Equity Purchase Agreement to the contrary, the Trustee of the Creditors' Trust shall have the right to assert any Claims, Causes of Action, rights of set-off or other rights or defenses relating to any Class 4 Claim of an Ahold Entity (other than Claims, Causes of Action or rights of set-off arising under §§ 502(d) or 544-550 of the Bankruptcy Code) with respect to any dispute, objection, or other matters exclusively related to reconciliation of any Ahold Entities' Class 4 Claim.

3.15    <u>Notice of Restructuring Transactions</u>. The Reorganized Debtors shall provide notice to parties in interest of the result of any Reorganization Transactions that, as of the Effective Date, result in the merger, dissolution or other alteration of a Debtor, which notice may be included in the notice of the Effective Date.

ARTICLE IV

EXECUTORY CONTRACTS AND UNEXPIRED LEASES

4.1    <u>Assumption of Executory Contracts and Unexpired Leases</u>.

(a)    <u>Contracts and Leases to Be Assumed</u>. Upon the occurrence of the Effective Date, each and every executory contract and unexpired lease to which a Debtor is a party that is listed on the Contract Assumption Schedule shall be assumed pursuant to § 365 of the Bankruptcy Code. The Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of such assumptions pursuant to §§ 365 and 1123 of the Bankruptcy Code and findings by the Bankruptcy Court that the requirements of § 365 of the Bankruptcy Code have been satisfied with respect to each assumed executory contract or unexpired lease.

Unless otherwise indicated, all assumptions or rejections of such executory contracts and unexpired leases in the Plan are effective as of the Effective Date. Each such executory contract and unexpired lease assumed pursuant to the Plan but not assigned to a third party prior to the Effective Date shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by such order. Notwithstanding anything to the contrary in the Plan, the Debtors or Reorganized Debtors, as applicable, reserve the right to alter, amend, modify or supplement the schedules of executory contracts or unexpired leases identified on the Contract Assumption Schedule (other than a Conditionally Assumed Lease, provided that such Conditionally Assumed Lease has not been explicitly excluded from the Contract Assumption Schedule prior to the date that is 10 days before the Voting Deadline) at any time through and including 15 days after the Effective Date subject to agreement of the counter-party or notice and a hearing. Any non-Debtor party may object to being removed from the Contract Assumption Schedule by filing an objection with the Bankruptcy Court and serving such objection on the Creditor's Committee, the Debtors, and, after the Effective Date, the Reorganized Debtors and the Trustee, 10 days after service of notice of removal from the Contract Assumption Schedule.

(b)    <u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases</u>. With respect to each of the Debtors' executory contracts or unexpired leases to be assumed in accordance with the Plan, the Debtors shall have designated a proposed Cure Amount in the Contract Assumption Schedule, and the assumption of such executory contract or unexpired lease (other than a Conditionally Assumed Lease, provided that such Conditionally Assumed Lease has not been explicitly excluded from the Contract Assumption Schedule prior to the date that is 10 days before the Voting Deadline) may be

31

conditioned upon the disposition of all issues with respect to the Cure Amount.  Any provisions or terms of the Debtors' executory contracts or unexpired leases to be assumed pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by the Cure Amount, or by an agreed-upon waiver of the Cure Amount.  Except with respect to executory contracts and unexpired leases for which the Debtors and the applicable counterparties and guarantors have stipulated in writing to payment of the Cure Amount, all requests for payment of Cure Amounts that differ from the amounts proposed by the Debtors must be filed with the Claims and Solicitation Agent on or before the Cure Bar Date.  Any request for payment of a Cure Amount that is not timely filed shall be disallowed automatically and forever barred from assertion and shall not be enforceable against any Reorganized Debtor or guarantor, without the need for any objection by the Reorganized Debtors or further notice or action, order or approval of the Bankruptcy Court, and any Claim for a Cure Amount under an executory contract or executory lease and any related guaranty shall be deemed fully satisfied, released and discharged upon payment by the Debtors of the amounts listed on the Contract Assumption Schedule, notwithstanding anything included in the Schedules or in any Proof of Claim to the contrary; provided, however, that nothing shall prevent the Reorganized Debtors from paying any Cure Amount despite the failure of the relevant counterparty to file such request for payment of such Cure Amount.  The Reorganized Debtors also may settle any Cure Amount (with the consent of any applicable guarantor) without further notice to or action, order or approval of the Bankruptcy Court.  If the Debtors or Reorganized Debtors, as applicable, object to any Cure Amount or any other matter related to assumption, the Bankruptcy Court shall determine the Allowed amount of such Cure Amount and any related issues.  If there is a dispute regarding a Cure Amount, the ability of the Reorganized Debtors or any assignee to provide adequate assurance of future performance within the meaning of § 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then the Cure Amount shall be paid as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or Reorganized Debtors, as applicable, with the consent of the Investor and the counterparty to the executory contract or unexpired lease.  Any counterparty or guarantor to an executory contract and unexpired lease that fails to object timely to the proposed assumption of any executory contract or unexpired lease will be deemed to have consented to such assumption.

The Debtors or Reorganized Debtors, as applicable, reserve the right either to reject or nullify the assumption of any executory contract or unexpired lease (other than a Conditionally Assumed Lease, provided that such Conditionally Assumed Lease has not been explicitly excluded from the Contract Assumption Schedule prior to the date that is 10 days before the Voting Deadline) no later than 30 days after a Final Order determining the Cure Amount or any request for adequate assurance of future performance required to assume such executory contract or unexpired lease.  Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption.  Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice or action, order or approval of the Bankruptcy Court, with such Claims being treated as Cure Amounts as set forth herein.

(c)      Assumption of Contracts if Modified.  Unless otherwise provided in the Plan, each executory contract or unexpired lease listed or to be listed on the Contract Assumption Schedule shall include:  (1) any modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other documents that in any manner affects such

32

contract or lease, irrespective of whether such agreement, instrument or other document is listed on the Contract Assumption Schedule; and (2) with respect to such executory contracts and unexpired leases that relate to the use or occupancy of real property, all executory contracts or unexpired leases appurtenant to the premises listed on the Contract Assumption Schedule, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises and any other interests in real estate or rights in rem relating to such premises to the extent any of the foregoing are executory contracts or unexpired leases that have not been previously rejected by a Debtor.  Modifications, amendments, supplements and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease or the validity, priority or amount of any Claims that may arise in connection therewith.

(d)    Indemnification Obligations.  Notwithstanding any other provision of the Plan, the Reorganized Debtors shall not be responsible or liable for any Indemnification Obligations except any Indemnification Obligation that is (1) set forth in any executory contract listed on the Contract Assumption Schedule or otherwise identified on the Contract Assumption Schedule as an Indemnification Obligation to be assumed, honored or reaffirmed or (2) only with respect to any Person who is serving as an officer, director or employee of a Reorganized Debtor as of the Effective Date, set forth in any of the Reorganized Debtors' organizational documents (as such documents are in effect as of the Effective Date), including the Reorganized BI-LO Holding LLC Agreement, any Reorganized Debtor Certificate of Formation or any Reorganized Debtor LLC Agreement; provided, however, notwithstanding the nature and scope of any Indemnification Obligation set forth in any executory contract listed on the Contract Assumption schedule or set forth in any of the Reorganized Debtors' organizational documents, the Reorganized Debtors shall not be responsible or liable for and shall not otherwise be required to indemnify any director, officer or employee for any Indemnification Obligation that requires any Reorganized Debtor to indemnify such director, officer or employee for (1) any act committed in bad faith, (2) any act that such person did not reasonably believe to be in or not opposed to the best interests of the Debtors, or Reorganized Debtors, as applicable, (3) any criminal act, but only if such person had no reasonable cause to believe such act was unlawful and (4) any other act for which a corporation is prohibited from providing an indemnification pursuant to § 145 of the Delaware General Corporation Law; provided, further, the Reorganized Debtors shall not be responsible or liable for any Indemnification Obligations that were previously rejected by the Debtors pursuant to a Bankruptcy Court Order or that are the subject of a motion to reject that is pending on the Effective Date.  Notwithstanding the foregoing, the Reorganized Debtors reserve the right to honor or reaffirm any Indemnification Obligations, in their sole and absolute discretion, other than those terminated by a prior or subsequent order of the Bankruptcy Court, whether or not executory, in which case such honoring or reaffirmation shall be in complete satisfaction, discharge and release of any Claim on account of such Indemnification Obligation.  Each Indemnification Obligation that is assumed, deemed assumed, honored or reaffirmed shall remain in full force and effect, shall not be modified, reduced, discharged, impaired or otherwise affected in any way, and shall survive unimpaired and unaffected, irrespective of when such obligation arose.  Nothing contained herein, nor the occurrence of the Effective Date, shall have any effect or impact on the coverage provided or rights and claims of any applicable party under the terms of any of the Debtors' directors and officers' insurance policies.

4.2    Rejection of Executory Contracts and Unexpired Leases.

(a)    Rejection; Amendments.  Upon the occurrence of the Effective Date, each and every executory contract and unexpired lease to which a Debtor is a party that is not listed on the Contract Assumption Schedule and that has not been previously assumed or rejected pursuant to an order of the Bankruptcy Court shall be rejected pursuant to § 365 of the Bankruptcy Code.  Each executory contract or unexpired lease that is rejected shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts and unexpired leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.  Each unexpired lease that is rejected shall remain subject to that certain *Cost Sharing Agreement*, dated April 15, 2009, between Koninklijke Ahold N.V. and the Debtors, as modified by order of the Bankruptcy Court on April 16, 2009 [Docket No. 401].

(b)    Bar Date for Rejection Claims.  If the rejection of an executory contract or unexpired lease pursuant to the Plan gives rise to a Claim against a Debtor or its Estate, then any Claim related to the foregoing shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, their respective successors or their respective properties unless a Proof of Claim is filed pursuant to the procedures set forth in the Confirmation Order by no later than the latest of (1) 30 days after the Effective Date, (2) the date that is 30 days after service of a notice that an executory contract or unexpired lease has been removed from the Contract Assumption Schedule, (3) if any objection to removal of an executory contract or unexpired lease from the Contract Assumption Schedule is timely filed, the date that is 30 days after the withdrawal of, or overruling of, such objection, (4) such later date as may be agreed by the Debtors, with the consent of the Creditors' Committee, prior to the Effective Date or the Trustee after the Effective Date, or (5) such other date as may be fixed by the Bankruptcy Court.

(c)    Pre-existing Obligations to the Debtors Under Executory Contracts and Unexpired Leases.  Rejection or repudiation of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any nonbankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or Reorganized Debtors, as applicable, from counterparties to rejected or repudiated executory contracts.

(d)    Effect of Certain Provisions.  To the extent that any rejected executory contract or unexpired lease by its terms provides any entity other than the Debtors or Reorganized Debtors with any options upon "termination," such options shall not be enforceable as a result of the rejection of such executory contract or unexpired lease.  In addition, rejection of any executory contract or unexpired lease shall not affect any rights of the Debtors or Reorganized Debtors that arise upon termination pursuant to the terms of such executory contract or unexpired lease.  Neither Consummation nor any such transaction contemplated hereby shall give rise to any rights of termination or result in a default under any such executory contract or unexpired lease.

4.3    Contracts and Leases Entered Into or Assumed After the Petition Date.    None of the Reorganized Debtors shall be a party to or shall be obligated to perform under (a) any contracts or leases entered into after the Petition Date by any Debtor, including any Management Agreements, or (b) any executory contracts or unexpired leases assumed by any Debtor prior to Confirmation, unless, in each case, such contract or

lease constitutes a Reorganized  Asset or is set forth on the Contract Assumption Schedule.  Any contract or lease entered into or assumed by any Debtor after the Petition Date that does not constitute a Reorganized Asset or is not set forth on the Contract Assumption Schedule shall be deemed an Excluded Asset, subject to the Reorganized Debtors' rights under this Plan to revise the Contract Assumption Schedule to add such contract or lease within 15 days of the Effective Date, in which case, such contract or lease shall be deemed a Reorganized Asset.

4.4    Modification of Executory Contracts and Unexpired Leases Containing Equity Ownership Restrictions.  All executory contracts and unexpired leases to be assumed under the Plan pursuant to §§ 365 and 1123 of the Bankruptcy Code shall be deemed so assumed without giving effect to any provisions contained in such executory contracts or unexpired leases restricting the change in control or ownership interest composition of any or all of the Debtors, and upon the Effective Date (a) any such restrictions shall be deemed of no further force and effect and (b) any breaches that may arise thereunder as a result of Confirmation or Consummation shall be deemed waived by the applicable non-Debtor counterparty.

4.5    Reservation of Rights.  Neither the exclusion nor inclusion of any contract or lease on the Contract Assumption Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

4.6    Nonoccurrence of Effective Date.  In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request or agreement to extend the deadline for assuming or rejecting unexpired leases pursuant to § 365(d)(4) of the Bankruptcy Code.

4.7    Employment, Compensation and Benefit Matters.

(a)    In General.  On the Effective Date, the Reorganized Debtors shall only assume (and otherwise be liable or responsible for) those certain prepetition compensation and benefit plans, policies, and programs of the Debtors applicable to their officers and employees that constitute Reorganized Assets and/or Assumed Obligations under the Equity Purchase Agreement or that are listed on the Contract Assumption Schedule including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, life, accidental death and dismemberment and workers' compensation insurance plans and contracts which have not been previously rejected, terminated or modified.  Any such prepetition plan, policy or program that is not included in the Reorganized Assets, that is not listed on the Contract Assumption Schedule or that is not otherwise assumed by the Reorganized Debtors pursuant to this Article IV, shall be deemed rejected as of the Effective Date.

(b)    Settlement with Two Former Executives.  The Plan will serve as a motion seeking approval under Bankruptcy Rule 9019(a) of a compromise with respect to the executory severance agreements of two former executives of the Debtors, Tye Anthony and John Symons, such that the terms of their non-disclosure and non-solicitation obligations shall be extended for the period of 18 months after the Effective Date and their entitlements to severance and any other payments from the Debtors and the Reorganized Debtors shall be reduced in amount and paid, satisfied and discharged in full by two installments: the first in the amount of $75,000 to Mr. Anthony and $75,000 to Mr. Symons on the

Effective Date, and the second in the amount of $125,418 to Mr. Anthony and $94,443 to Mr. Symons on the 120th day after the Effective Date.

ARTICLE V

CREDITORS' TRUST

5.1    Appointment of Trustee.  The proposed Trustee for the Creditors' Trust shall be selected by Ahold and the Creditors' Committee.  The proposed Trustee, on or before 10 days prior to the Voting Deadline, shall file an affidavit (a) demonstrating that such person or entity is "disinterested" as defined by § 101(14) of the Bankruptcy Code and (b) setting forth the terms and conditions of the Trustee's proposed compensation.  The Trustee shall be independent of the Debtors and the Reorganized Debtors.  If approved by the Bankruptcy Court at the Confirmation Hearing, the person or entity so designated shall become the Trustee on the Effective Date without further Bankruptcy Court order.  The Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Trust Agreement and the Plan.

5.2    Purpose; Transfer of Trust Assets to the Creditors' Trust.

(a)    On or prior to the Effective Date, the Creditors' Trust shall be established pursuant to the Trust Agreement for the purpose of administering the Trust Assets including without limitation (1) resolving Disputed Claims in Class 4 and Class 6, (2) objecting to Disputed Claims in Class 4 and Class 6 and prosecuting, settling, compromising, withdrawing or resolving such objections, (3) making distributions from the Trust Assets, and (4) establishing and administering any necessary reserves for Disputed Claims in Class 4 and Class 6 that may be required, all in accordance with the Plan and Trust Agreement, and take other actions as may be necessary to effectuate the foregoing and administering of the Trust Assets.  Any other provision of this Plan or the Trust Agreement notwithstanding, the Trustee and the Debtors or the Reorganized Debtors shall cooperate in good faith on the reconciliation and settlement of any Claims asserted by a claimant asserting Claims in both Class 4 and pursuant to § 546(c) of the Bankruptcy Code and, in the event they cannot reach agreement, shall bring any disputes relating to the foregoing before the Court.

(b)    On the Effective Date, the Debtors' Estates shall transfer and shall be deemed to have irrevocably transferred to the Trustee of the Creditors' Trust, for and on behalf of the beneficiaries of the Trust, with no reversionary interest in the Debtors or the Reorganized Debtors, the Trust Assets; provided, however, that nothing herein is intended to transfer all or any portion of any Retained Causes of Action to the Trust.  In addition, the Debtors shall transfer to the Trustee of the Creditors' Trust all rights and remedies of the Debtors that are included in the Trust Causes of Action.  The Debtors shall share with the Trustee and the Trust Advisory Board of the Creditors' Trust all evidentiary privileges (including the attorney-client privilege) solely as they relate to Trust Causes of Action.  All attorney-client privileged information relating to the Trust Causes of Action that the Debtors share with the Trustee and the Trust Advisory Board of the Creditors' Trust will remain confidential and privileged pursuant to a common-interest privilege.

(c)    Upon such transfer(s), the Debtors, the Debtors' Estates, the Reorganized Debtors and the Investor, as applicable, shall have no other or further rights or obligations with respect thereto.  Notwithstanding the foregoing, the Reorganized Debtors shall provide to the Trustee reasonable access during normal business hours, upon reasonable notice, to books and records of the Debtors and the Reorganized Debtors to enable the Trustee to perform the Trustee's tasks under the Trust Agreement and

36

the Plan, and the Debtors and the Reorganized Debtors shall permit the Trustee and the Trust Advisory Board reasonable access to information (including reasonable access to information subject to an evidentiary privilege) and personnel reasonably necessary to the reconciliation of Class 4 and Class 6 Claims and distribution of Trust Recoveries that is reasonably requested by the Trustee, as more specifically set forth in the Trust Agreement; provided, however, that (x) the Reorganized Debtors shall not be required to make out-of-pocket expenditures in response to such requests and (y) such requests will not require the participation or involvement of any Reorganized Debtor personnel that might reasonably interfere with the performance of such person's duties to the Reorganized Debtors or with any Reorganized Debtor's operations or business.  The Reorganized Debtors shall provide Trustee with office space, telephone and photocopy facilities at the Reorganized Debtors headquarters during regular business hours without charge.  The Reorganized Debtors shall not be entitled to compensation or reimbursement (including reimbursement for professional fees) with respect to fulfilling their obligations as set forth in this Article; provided, however, except as otherwise set forth in this paragraph, in the event the Trustee seeks to retain or use the services or assistance of any Debtors' Professional or any employee or personnel of any Reorganized Debtor, the Trustee shall pay any and all costs and fees as agreed upon between the Trustee and such Professional or Reorganized Debtor.  The Bankruptcy Court shall retain jurisdiction to determine the reasonableness of a request for assistance.  Any requests for assistance that interferes with the Reorganized Debtors' business operations shall be considered unreasonable.

5.3     Creditors' Trust.

(a)     Without any further action of the managers, directors, or members of the Debtors, on the Effective Date, the Trust Agreement shall become effective.  The Trustee shall accept the Creditors' Trust and sign the Trust Agreement on the Effective Date and the Creditors' Trust shall then be deemed created and effective.

(b)     Interests in the Creditors' Trust shall be uncertificated and shall be non-transferable except upon death of the interest holder or by operation of law.  Holders of interests in the Creditors' Trust shall have no voting rights with respect to such interests.  The Creditors' Trust shall have a term of five years from the Effective Date, subject to the rights of the Trust Advisory Board to extend such term with Bankruptcy Court approval in accordance with the provisions of the Trust Agreement.

(c)     The Trust Agreement shall be deemed to be a joint interest agreement between and among the Trustee and the members of the Trust Advisory Board, and accordingly, privileged communications may be shared among the Trustee and the Trust Advisory Board without compromising the privileged nature of such communications, in accordance with the "common interest" doctrine and any other doctrine or privilege that may be effective for such purposes.

(d)     The Trustee shall have all the rights and powers set forth in the Trust Agreement, including without limitation the right to (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Trust Agreement, (2) liquidate Trust Assets; (3) resolve Disputed Claims in Class 4 and Class 6, (4) file objections to Disputed Claims in Class 4 and Class 6 and to prosecute, settle, compromise, withdraw, or resolve such objections, (5) make distributions from the Trust Assets in accordance with the provisions of the Plan and the Trust Agreement and (6) establish and administer any necessary reserves for Disputed Claims in Class 4 and Class 6 that may be required.

37

(e)    All costs and expenses associated with the administration of the Creditors' Trust, including costs and expenses associated with objecting to, settling, estimating, or otherwise resolving Class 4 and Class 6 Claims that are Disputed, adjudicating the Trust Causes of Action and acting as the Disbursing Agent with respect to Class 4 and Class 6 Claims shall be the responsibility of and solely paid by the Creditors' Trust. Neither the Debtors, the Reorganized Debtors, nor the Reorganized Assets shall have any obligation to fund any costs or expenses of the Creditors' Trust.

(f)    The Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraisers, auctioneers, or other professionals as it may deem necessary (collectively, the "Trustee Professionals"), in its sole discretion, to aid in the performance of its responsibilities pursuant to the Plan, including the liquidation and distribution of Trust Assets.

(g)    The Creditors' Trust is intended to be treated for federal U.S. income tax purposes as a liquidating trust within the meaning of Treasury Regulations § 301.7701-4(d), provided that the Trustee will to the extent permitted by applicable law elect to treat any Trust Assets allocable to, or retained on account of, Disputed Claims (the "Disputed Claims Reserve") as a "disputed ownership fund" governed by Treasury Regulation § 1.468B-9. Accordingly, except as to any assets attributable to the Disputed Claims Reserve, for federal U.S. income tax purposes, the transfer of the Trust Assets to the Creditors' Trust will be treated as a transfer of the Trust Assets from the Debtors to the holders of Allowed Class 4 and Class 6 Claims, subject to any liabilities of the Debtors or the Creditors' Trust payable from the proceeds of such assets, followed by such holders' transfer of such assets (subject to such liabilities) to the Creditors' Trust. The holders of Allowed Class 4 and Class 6 Claims will thereafter be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the Creditors' Trust Assets (subject to such liabilities). Notwithstanding the foregoing, income and gain recognized with respect to the Trust Assets in the Disputed Claims Reserve will be subject to an entity-level Tax and distributions from the Disputed Claims Reserve will be made net of such entity-level Tax. For the avoidance of doubt, the holders of Allowed Class 4 and Class 6 Claims are not intended to be treated for federal income tax purposes as receiving the Trust Assets that are allocated to the Disputed Claims Reserve until such time as the Disputed Claims Reserve makes distributions, in which case (and at such time) the holders of Allowed Class 4 and Class 6 Claims are intended to be treated as receiving the distributions actually received from the Disputed Claims Reserve, if any. The Trust Agreement will: (i) require that the Trustee file income tax returns for the Creditors' Trust as a grantor trust (and file separate returns for the Disputed Claims Reserves pursuant to Treasury Regulation § 1.468B-9.); (ii) require that the Trustee pay all Taxes owed on any net income or gain of the Creditors' Trust, including net income or gain of the Disputed Claims Reserves, on a current basis from Trust Assets; (iii) provide for consistent valuations for all Trust Assets by the Trustee and holders of Allowed Class 4 and Class 6 Claims, and require that such valuations be used for all Tax reporting purposes; (iv) provide for the Creditors' Trust's termination no later than five years after the Effective Date unless the Bankruptcy Court approves a fixed extension based upon a finding that an extension is necessary for the Creditors' Trust to resolve all Claims, reduce all Trust Assets to Cash and liquidate; (v) limit the investment powers of the Trustee; and (vi) require that the Creditors' Trust distribute at least annually all net income and the net proceeds from the sale or other disposition of all Trust Assets in excess of amounts reasonably necessary to maintain the value of the remaining Trust Assets and pay claims and contingent liabilities, including Disputed Claims.

(h)    The Trustee shall be responsible for filing all necessary Tax returns and reports for the Creditors' Trust and paying Taxes or other obligations owed by the Creditors' Trust. In the event the Trustee requests that the Bankruptcy Case remain open upon the later to occur of (1) 9 months after the

date the Reorganized Debtors or the Investors (or its designee) have resolved all their respective matters and are otherwise ready to close the Bankruptcy Case, or (2) 18 months following the Effective Date, in such event the Trustee shall pay from the Trust Assets, any applicable fees owed pursuant to 28 U.S.C. §1930(a).

       (i)     The Trustee shall file periodic reports with the Bankruptcy Court in accordance with the Trust Agreement and, upon concluding all activities by the Trust, a final report listing all distributions, payments or disposition of Trust Assets.

       (j)     The Trustee shall perform the duties and obligations imposed on the Trustee by the Trust Agreement with reasonable diligence and care under the circumstances. The Trustee shall not be personally liable to the Trust, to any beneficiary thereof, or any other person (or any predecessor or successor thereto) for any reason whatsoever, except for such of its own acts as shall constitute willful misconduct, gross negligence, willful disregard of the Trustee's duties, or material breach of the Trust Agreement.

5.4     <u>The Trust Advisory Board</u>.

       (a)     The Trust Advisory Board shall be comprised of three voting members, as follows: (1) an Ahold  Entity representative, (2) a representative of Kraft Food, Inc., currently proposed to be Ms. Sandra Schirmang and (3) a representative of American Greetings Service Corp., currently proposed to be Mr. Arthur P. Tuttle. Confirmation of the Plan shall constitute the Bankruptcy Court's approval of such persons as members of the Trust Advisory Board without the necessity of any further order of the Bankruptcy Court. The Trustee shall consult regularly with the Trust Advisory Board when carrying out the purpose and intent of the Creditors' Trust and shall take direction from the Trust Advisory Board as set forth in the Trust Agreement. Members of the Trust Advisory Board shall be entitled to reimbursement of the reasonable and necessary expenses incurred by them in carrying out the purpose of the Trust Advisory Board in accordance with the Trust Agreement. Reimbursement of the reasonable and necessary expenses of the members of the Trust Advisory Board shall be payable by the Creditors' Trust solely from the Trust Assets.

       (b)     In the case of an inability or unwillingness of any voting member of the Trust Advisory Board to serve, such member shall be replaced by designation of the remaining voting members of the Trust Advisory Board. If any position on the Trust Advisory Board remains vacant for more than 60 days, such vacancy shall be filled within 15 days thereafter by the designation of the Trustee without the requirement of a vote by the other voting members of the Trust Advisory Board. The Trust Advisory Board shall continue to function until such vacancy is filled.

       (c)     The Trust Advisory Board may employ professionals, including attorneys and accountants as it deems necessary, in its sole discretion, to aid in the performance of the Trust Advisory Board's responsibilities pursuant to the Plan, such retention to be solely an obligation of and paid by the Creditors' Trust from the Trust Assets.

       (d)     Upon the certification by the Trustee that all Trust Recoveries have been distributed, abandoned, or otherwise disposed of, the members of the Trust Advisory Board shall resign their positions, whereupon they shall be discharged from further duties and responsibilities.

US 303315v.7

(e)      The Trust Advisory Board shall approve all settlements with respect to Trust Assets which the Trustee or any member of the Trust Advisory Board may propose; provided, however, that (1) no member of the Trust Advisory Board may cast a vote with respect to any matter to which it is a party; and (2) the Trustee may seek Bankruptcy Court approval of a settlement if the Trust Advisory Board fails to act on a proposed settlement within thirty (30) days of receiving notice of such proposed settlement.  If a proposed settlement involving a claim amount (1) less than $250,000 is approved by a majority of the Trust Advisory Board or (2) in excess of $250,000 is approved by a unanimous vote of the Trust Advisory Board, such settlement shall not require any further notice or Bankruptcy Court order. In the event of a proposed settlement in excess of $250,000, which is approved by a majority vote of the Trust Advisory Board, then such settlement shall not be consummated without Bankruptcy Court order. For purposes of this section, the motion to approve any settlement that requires Bankruptcy Court approval may be filed on "negative notice" involving 21 days notice so that in the absence of a timely objection, no court hearing is necessary and the Bankruptcy Court may approve such proposed settlement upon the filing of an affidavit of no objection.

(f)      The Trust Advisory Board may, by majority vote, authorize the Trustee to invest the corpus of the Trust in prudent investments other than those described in § 345 of the Bankruptcy Code.

(g)      The Trust Advisory Board may remove the Trustee in its discretion for any reason.  In addition, the Trustee may be removed by the Bankruptcy Court for cause shown.  In the event of the resignation or removal of the Trustee, the Trust Advisory Board shall, by majority vote, designate a person to serve as successor Trustee.  The successor Trustee shall file an affidavit demonstrating that such Person is disinterested as defined by § 101(14) of the Bankruptcy Code and disclosing the terms and conditions of such person or entity's compensation.

(h)      Notwithstanding any other provision of the Plan, neither the Trust Advisory Board nor any of its members, counsel, accountants, financial advisors, or other professionals, or any duly designated agent or representatives of any such party (collectively, the "TAB Parties"), shall be liable to any entity for anything other than such TAB Party's own gross negligence or willful misconduct.  The Trust Advisory Board may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its counsel, accountants, financial advisors, or other professionals, or any of its members or designees, and shall not be liable for anything done or omitted or suffered to be done in accordance with the advice or opinions obtained.  If the Trust Advisory Board determines not to consult with its counsel, accountants, financial advisors, or other professionals, the failure to so consult shall not itself impose any liability on the Trust Advisory Board or any of its members and/or designees.

(i)      The Trust Advisory Board shall govern its proceedings through the adoption of by-laws, which the Trust Advisory Board may adopt by majority vote.  No provision of such by-laws shall conflict with any express provision of the Plan or the Trust Agreement.

5.5      Distributions of Trust Recoveries.  Distributions of the Trust Recoveries shall be made in accordance with the provisions of the Plan and the Trust Agreement.  The Trustee shall make the initial distribution to holders of Allowed Class 4 and Class 6 Claims on a date determined by the Trustee, as authorized by the Trust Advisory Board, after a sufficient reserve has been established for disputed and unliquidated Claims, and sufficient funds have been segregated for, among other things, expenses of the Creditors' Trust consistent with the provisions of the Plan.  The Trustee shall make such other the distributions to holders of Allowed Class 4 and Class 6 Claims on such dates determined by the Trustee, as authorized by the Trust Advisory Board.

ARTICLE VI

PROCEDURES FOR RESOLUTION OF DISPUTED CLAIMS

6.1     <u>Objections to and Settlement of Claims</u>.

(a)     After the Effective Date, each Reorganized Debtor, the Creditors' Trust and the Investor, as applicable, shall have and retain any and all objections (whether or not filed), rights and defenses a Debtor or its Estate had with respect to any Claim or Equity Interest immediately prior to the Effective Date, subject to the provisions of the Plan.

(b)     On and after the Effective Date, the Reorganized Debtors or their designee (and/or the Investor with respect to Class 5 Claims) shall have the exclusive right and authority (1) to file, withdraw or litigate to judgment, objections to Claims or Equity Interests other than Class 4 and Class 6 Claims; (2) to settle, resolve or compromise any Disputed Claim (other than a Disputed Class 4 or Disputed Class 6 Claim) subject to the dollar thresholds and notice provisions set forth in Section 5.4(d); and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.

(c)     Subject to the provisions of Section 5.4(d), on and after the Effective Date, the Creditors' Trust shall have the exclusive right and authority (1) to file, withdraw or litigate to judgment, objections to Class 4 and Class 6 Claims and (2) to settle, resolve or compromise any Disputed Class 4 or Class 6 Claim.  The Creditors' Trust shall administer and adjust the Claims Register to reflect any such Claims withdrawals, determinations, settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.

(d)     Unless otherwise ordered by the Bankruptcy Court, all objections to Claims that are the subject of Proofs of Claim or requests for payment filed with the Bankruptcy Court (other than applications for allowance of Professional Claims) shall be filed and served upon the holder of the Claim as to which the objection is made on or prior to the applicable Claims Objection Deadline.

(e)     Not later than 10 days before the Confirmation Hearing, the Debtors, with the consent of the Creditors' Committee, may file additional alternative dispute resolution-based claim resolution procedures applicable to contingent, unliquidated or disputed tort claims that are Class 4 Claims as a Plan Document, which shall become a part of the Plan and effective on the Effective Date.

6.2     <u>Estimation of Claims</u>.  Before the Effective Date, the Debtors may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to § 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  From and after the Effective Date, the Reorganized Debtors (and with respect to Class 5 Claims, the Investor or its designee) may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim (other than Class 4 or Class 6 Claims) that is contingent or unliquidated pursuant to § 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. From and after the Effective Date, the Creditors' Trust may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Class 4 or Class 6 Claim that is contingent or unliquidated pursuant to § 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such

41

objection. With respect to any request for estimation, the Bankruptcy Court shall retain jurisdiction to estimate any such Claim at any time, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant party may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

6.3    <u>Adjustment to Claims Without Objection</u>.  Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors or the Creditors' Trust, as applicable, without a claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court. Beginning on the end of the first full calendar quarter that is at least 90 days after the Effective Date and every calendar quarter thereafter, the Reorganized Debtors and the Creditors' Trust, as applicable, shall each file a list of all Claims that have been allowed, settled, paid, satisfied, amended or superseded during such prior calendar quarter and distribute it to the Court and U.S. Trustee and others requesting service.

6.4    <u>Time to file Objections to Claims</u>.  Any objections to Claims shall be filed on or before the Claims Objection Deadline.

6.5    <u>Litigation Claims</u>.  Any Litigation Claim that has been determined and liquidated shall be deemed an Allowed Claim only to the extent that the holder of such Claim establishes that such Claim is not recoverable from third parties through the Debtor's insurance coverage (exclusive of the Debtor's self-insurance).

6.6    <u>Disallowance of Certain Employee Claims</u>.  All Claims filed on account of an Indemnification Obligation to a director, officer or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is listed on the Contract Assumption Schedule or is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order or approval of the Bankruptcy Court. All Claims on account of any employee benefit referenced in Article IV shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such employee benefit is listed on the Contract Assumption Schedule or the Reorganized Debtors elect to honor or reaffirm such employee benefit, without any further notice to or action, order or approval of the Bankruptcy Court.

**EXCEPT AS PROVIDED HEREIN OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

6.7    <u>Offer of Judgment</u>.  The Reorganized Debtors and the Creditors' Trust are authorized to serve upon a holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to

Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extent the holder of a Claim must pay the costs incurred by the Reorganized Debtors after the making of such offer, the Reorganized Debtors are entitled to setoff such amounts against the amount of any distribution to be paid to such holder without any further notice to or action, order or approval of the Bankruptcy Court.

6.8     Amendments to Claims.  Except as otherwise provided herein, on or after the Effective Date, a Claim may not be filed or amended without the prior authorization of (a) the Bankruptcy Court or (b) the Reorganized Debtors or the Creditors' Trust, as applicable, and any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

6.9     Nonpayment of Claims of Parties Holding Recoverable Property; Setoff.

(a)     Notwithstanding any other provision of the Plan, no payments or other distributions shall be made on account of any Claims of holders from which property is recoverable or alleged to be recoverable pursuant to §§ 542, 543, 550 or 553 of the Bankruptcy Code or that is or is alleged to be a transferee of a transfer avoidable under §§ 544, 545, 547, 548 or 549 of the Bankruptcy Code until (1) the holder has paid the amount, or turned over any such property, for which such entity or transferee is liable under §§ 542, 543, 550 or 553 of the Bankruptcy Code or (2) the Bankruptcy Court determines by Final Order that the holder need not pay such amount or turn over such property.

(b)     Subject to the provisions of § 553 of the Bankruptcy Code, in the event that a Reorganized Debtor or the Creditors' Trust has a Retained Cause of Action, or Trust Cause of Action, as applicable, respectively, of any nature whatsoever against the holder of a Claim, (1) such Reorganized Debtor or the Creditors' Trust, as applicable, may, but is not required to, setoff against the Claim such Retained Cause of Action or Trust Cause of Action such party has against the holder and (2) the applicable Reorganized Debtor or Creditors' Trust, as applicable, may, but is not required to, setoff against any payments or other distributions to be made in respect of such Claim hereunder such Cause of Action it has against the holder.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by a Debtor or Reorganized Debtor or Creditors' Trust of any Cause of Action that it has against the holder of a Claim.

ARTICLE VII

PROVISIONS GOVERNING DISTRIBUTIONS

7.1     Disbursing Agents.  The Disbursing Agents shall make all distributions required under this Plan. No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless (a) such Disbursing Agent is not a Reorganized Debtor or Trustee of the Creditors' Trust or (b) otherwise ordered by the Bankruptcy Court.  In the event that a Disbursing Agent is required to give a bond or surety or other security for the performance of its duties, all costs and expenses of procuring any such bond or surety or other security shall be borne by the Reorganized Debtors with respect to distributions on account of Claims in Class 5 or the Creditors' Trust with respect to distributions on account of Claims in Classes 4 and 6.

7.2     Distributions to Holders of Allowed Claims.  On each Quarterly Distribution Date, the applicable Disbursing Agent shall make all distributions that become deliverable to holders of Allowed Claims during the preceding calendar quarter; provided, however, that if the Trustee determines, with the consent of the Trust Advisory Board, that the amount of any quarterly distribution otherwise to be made by the Creditors' Trust

43

is too small to justify the administrative costs associated with such distribution, the Trustee may postpone such quarterly distribution until the next Quarterly Distribution Date.

(a)    On each Quarterly Distribution Date, each holder of an Allowed Class 4 Claim (other than a Class 6 Claim) that has been Allowed as of the applicable Quarterly Test Date shall receive, from the Creditors' Trust, its Pro Rata Share of the Trust Recoveries in the amount of the difference between (1) the amount such holder would have received on the Effective Date, if its Claim had been Allowed as of the Effective Date, if all other Claims that were Allowed or disallowed on or prior such to the Quarterly Test Date were Allowed or  disallowed as of the Effective Date, and if the Trust Recoveries that are available for distribution or that were previously distributed had been available for distribution of the Effective Date, minus (2) the aggregate amount of Trust Recoveries previously distributed on account of the Claim.  On each Quarterly Distribution Date, each holder of an Allowed Class 5 Claim that has been Allowed as of the Quarterly Test Date shall receive from the Investor or its designee, its applicable portion of its Class 5 Payment in the amount of the difference between (1) the aggregate amount such holder would have received on or before the Distribution Date, if its Claim had been Allowed as of the Effective Date, minus (2) the aggregate amount of Class 5 Payments previously distributed to such holder on account of such claims.

(b)    The Trust Agreement may include additional provisions to address Disputed Class 4 or 6 Claims and any distributions made out of the Creditors' Trust shall be made net of any applicable Taxes.

7.3    <u>Distributions for Claims Allowed as of the Effective Date</u>.  Except as otherwise provided, distributions to be made on the Effective Date to holders of Claims that are Allowed as of the Effective Date shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than (a) 30 days after the Effective Date or (b) such later date when the applicable conditions of this Article are satisfied.  Distributions on account of Claims Allowed after the Effective Date shall be made pursuant to this Article; <u>provided</u>, <u>however</u>, that Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business or industry practice.

7.4     <u>Distributions on Account of Claims Allowed After the Effective Date</u>.

(a)     <u>Payments and Distributions on Disputed Claims</u>.  Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, and subject to the establishment of the Creditors' Trust, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the Quarterly Distribution Date that is at least 30 days after the Disputed Claim becomes an Allowed Claim; <u>provided</u>, <u>however</u>, that (1) Disputed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business or industry practice and (2) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date, unless otherwise agreed, shall be paid in full in Cash on the Quarterly Distribution Date that is at least 30 days after the Disputed Claim becomes an Allowed Claim or over a five-year period as provided in § 1129(a)(9)(C) of the Bankruptcy Code with annual interest provided by applicable non-bankruptcy law.

(b)     <u>Special Rules for Distributions to Holders of Disputed Claims</u>.  Notwithstanding any other provision of the Plan and except as otherwise agreed by the relevant parties, the Reorganized Debtors (or, with respect to Class 4 and Class 6, the Creditors' Trust) shall not be required to (1) make any partial payments or partial distributions to a Person, estate or trust with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order or (2) make any distributions on account of an Allowed Claim of any Person, estate or trust that holds both an Allowed Claim and a Disputed Claim, unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and both Claims have been Allowed.  All distributions made pursuant to the Plan on account of an Allowed Claim shall be made together with any dividends, payments or other distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to holders of Allowed Claims included in the applicable Class.

(c)     <u>Limited Recourse for Disputed Class 4 and Class 6 Claims</u>.  Each Disputed Class 4 and Class 6 Claim that ultimately becomes an Allowed Claim shall have recourse only to the Trust Assets, and the holder may not otherwise look to the Debtors or Reorganized Debtors, their respective properties (including the Reorganized Assets) or any property previously distributed on account of any Allowed Claim.

7.5     <u>Claim Amounts</u>.  Notwithstanding anything in the applicable holder's Proof of Claim or otherwise to the contrary, the holder of a Claim shall not be entitled to receive or recover a distribution under the Plan on account of a Claim in excess of the lesser of the amount: (a) stated in the holder's Proof of Claim, if any, as of the Distribution Date, plus interest thereon (if any) to the extent provided for by the Plan; (b) if the Claim is denominated as contingent or unliquidated as of the Distribution Date, the amount that the Debtors, the Reorganized Debtors or the Trustee, elect to withhold on account of such Claim in the Creditors' Trust, or such other amount as may be estimated by the Bankruptcy Court prior to the Confirmation Hearing; (c) if a Claim has been estimated, the amount held back in the Creditors' Trust to satisfy such Claim after such estimation; or (d) as Allowed by Bankruptcy Court order.

7.6     <u>Disbursing Agent Exculpation</u>.  Subject to the provisions of this section, any Disbursing Agent, in its capacity as such, together with each of its officers, managers, directors, employees, agents and

45

representatives (acting in such capacity), is exculpated by all holders of Claims and all other parties in interest from any and all Causes of Action, and other assertions of liability (including breach of fiduciary duty), arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan, any Final Order entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of such Disbursing Agent's gross negligence or willful misconduct. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any Claim or Cause of Action (a) against any Disbursing Agent, in its capacity as such, or any of its officers, managers, directors, employees, agents or representatives (acting in such capacity) for making payments or other distributions in accordance with the Plan, or (b) against any holder of a Claim for receiving or retaining payments or other distributions provided for by the Plan. Nothing herein shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court against a Disbursing Agent to compel payments or other distributions contemplated by the Plan to be made on account of such Claim. The Debtors, the Reorganized Debtors and the Trustee, as applicable, shall not incur any liability whatsoever on account of any distributions made or to be made by them under the Plan except for gross negligence or willful misconduct.

7.7     <u>Surrender of Certificates, etc</u>.  A Disbursing Agent may require, as a condition to making any payment or other distribution under the Plan, that each holder of an Allowed Claim surrender the note, certificate or other document evidencing such Allowed Claim to the Reorganized Debtors or their designee or the Creditors' Trust with respect to distributions on account of Claims in Classes 4, 5 or 6. In that event, any holder of an Allowed Claim that fails to surrender such note, certificate or other document (or, in lieu thereof if requested by the applicable Disbursing Agent, furnish an indemnity or bond in the form, substance and amount reasonably satisfactory to the applicable Disbursing Agent) before the first anniversary of the Effective Date shall be deemed to have forfeited all rights and may not participate in any distribution under the Plan.

7.8     <u>Tax and Compliance Matters</u>.  In connection with the Plan, to the extent applicable, any Disbursing Agent shall comply with all applicable Tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to applicable withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, any Disbursing Agent shall be authorized to take any actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including (1) requiring recipients to fund the payment of such withholding as a condition to delivery, (2) entering into arrangements for the sale of a portion of property otherwise to be distributed under the Plan in order to generate sufficient funds to pay applicable withholding Taxes or (3) establishing any other mechanism the Disbursing Agent believes are reasonable and appropriate (such as requiring Claim holders to submit appropriate Tax and withholding certifications).

(a)     Notwithstanding any other provision of the Plan, each entity receiving a distribution of Cash or other consideration pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any Governmental Unit on account of the distribution, including income, withholding and other Tax obligations.

(b)     The Reorganized Debtors or the Creditors' Trust, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and encumbrances.

7.9     <u>Distributions</u>.  Delivery. Subject to Bankruptcy Rule 9010 and except as otherwise set forth in the Plan, all distributions under the Plan shall be made: (1) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (2) to the signatory set forth on any of the Proofs of Claim filed by such holder or other representative identified therein (or at the last known addresses of such

46

holder if no Proof of Claim is filed or if the Debtors or Trustee, as applicable, have been notified in writing of a change of address), (3) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors, the Claims and Solicitation Agent or the Creditors' Trust after the date of any related Proof of Claim, (4) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Claims and Solicitation Agent has not received a written notice of a change of address or (5) on any counsel that has appeared in the Chapter 11 Cases on the holder's behalf.  All distributions to any holder of a DIP Facility Claim shall be made to or as directed by the DIP Agent.  Subject to the provisions herein specifically governing unclaimed distributions, in the event that any distribution to any holder is returned as undeliverable, the applicable Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until such Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest.

(a)      No Levy.  Except as otherwise provided herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.

(b)      Record Date.  As of the close of business on the Record Date for distributions under the Plan, the Claims register shall be closed, and there shall be no further changes in the record holder of any Claim.  No Disbursing Agent shall have any obligation to recognize any transfer of any Claim occurring after the Record Date, and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims register as of the close of business on the Record Date; provided, however, the Disbursing Agent may choose, in its sole discretion, to recognize a transfer of any Claim upon presentation of appropriate and acceptable documentation.

(c)      Distributions of Cash.  Any distribution of Cash under the Plan shall, at the applicable Disbursing Agent's option, be made by check drawn on a domestic bank or wire transfer, except that (1) the payment of Cash to the holders of Allowed DIP Facility Claims shall be made by wire transfer of immediately available funds as directed by the DIP Agent and (2) the payment of Cash to holders of the Term Lender Claims shall be made by wire transfer of immediately available funds to the Term Loan Agent, or as otherwise directed by the applicable holders of such Term Lender Claims.  Checks issued by a Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within 120 days after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the applicable Disbursing Agent by the holder of the Allowed Claim to whom such check originally was issued.  Any Claim with respect to such a voided check shall be made on or before  180 days after the date of issuance of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

(d)      Timing of Distributions.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(e)      Minimum Distributions.  No payment of Cash less than $25 shall be made by the Disbursing Agent to any holder of a Claim unless: (1) a request therefor is made in writing to the Disbursing Agent no later than 30 days after the Effective Date; provided that the Creditors' Trust shall not be required to make any interim distributions to the holder of a Claim in an amount less than $25 provided, further, that any such payments shall be withheld until final distribution under the Plan, or (2) such payment, is on account of an Allowed Convenience Claim.  Moreover, as to a final distribution, in no event shall a payment of Cash less than an amount as determined by the Trustee in consultation with

47

the Trust Advisory Board be made.  In the event there are funds remaining after final distributions, the Trustee is authorized to donate any such remaining funds to the BI-LO Charities, Inc. (sponsor of the BI-LO Classic) or its successor charity, or if no such charity exists, or if the Trust Advisory Board determines otherwise, to a recognized tax-exempt charity, as determined by the Trust Advisory Board.

(f)  Undeliverable Distributions.  If any distribution to a holder of an Allowed Claim is returned to a Disbursing Agent as undeliverable, no further distributions shall be made to such holder unless such Disbursing Agent is notified in writing within six months after the undeliverable distribution of such holder's then-current address, at which time all currently due missed distributions shall be made to such holder on the next Quarterly Distribution Date, and shall not be supplemented with any interest, dividends or other accruals of any kind. If the Disbursing Agent does not receive notice of a holder's current address within six months after the distribution of an undeliverable check, then all undeliverable distributions shall be treated as unclaimed property in accordance with Section 7.9(g) below.

(g)  Unclaimed Distributions.  All distributions under the Plan that are unclaimed for a period of six months after distribution thereof shall be deemed unclaimed property under § 347(b) of the Bankruptcy Code and shall revest in the Reorganized Debtors or the Investor (or its designee) with respect to distributions on account of Claims in Class 5 or the Creditors' Trust with respect to distributions on account of Claims in Classes 4 and 6.  Upon such revesting, the Claim of any holder or its successors with respect to such property shall be cancelled, discharged and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary and the Trustee, Reorganized Debtors or Investor (or its designee), as applicable, shall not be required to make distributions on account of any such claims. The provisions of the Plan regarding undeliverable distributions and unclaimed distributions shall apply with equal force to distributions that are issued by the Debtors, or made pursuant to any indenture or certificate, notwithstanding any provision in such indenture or certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned or unclaimed property law.

(h)  Fractional Distributions.  Notwithstanding any other provision of the Plan to the contrary, where, pursuant to the Plan, any payment of Cash would otherwise be required in terms of a fraction of a dollar, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

(i)  Allocation Between Principal and Accrued Interest. To the extent applicable, all distributions to a holder of an Allowed Claim shall apply first to the principal amount of such Claim until such principal amount is paid in full and then to any interest accrued on such Claim as of the Petition Date and thereafter, to the extent the Debtors' Estates are sufficient to satisfy such principal and interest accrued as of the Petition Date, to any interest accrued on such Claim from the Petition Date through the Effective Date, until paid in full.

(j)  Cancellation of Existing Securities and Agreements.  On the Effective Date, the promissory notes, membership interests and other agreements, instruments or documents evidencing any Claim or Old Equity Interest, other than an Allowed Secured Claim or an Allowed Subsidiary Equity Interest that is reinstated and rendered unimpaired pursuant to the Plan, shall be deemed cancelled without further act or action and the obligations of the Debtors under the credit agreements, limited liability company or operating agreements and other agreements, instruments or documents governing such Claims and Old Equity Interests, as the case may be, shall be discharged.

48

ARTICLE VIII

CONFIRMATION OF THE PLAN

8.1     Conditions Precedent to Confirmation and Consummation.

(a)     Conditions to Confirmation.  The following are conditions to Confirmation:

(1)     The Bankruptcy Court shall have approved the Disclosure Statement, in a manner acceptable to the Debtors and the Investor and as reasonably acceptable to the Creditors' Committee, as containing adequate information with respect to the Plan within the meaning of § 1125 of the Bankruptcy Code.

(2)     The proposed Confirmation Order shall be in form and substance acceptable to the Debtors and the Investor and reasonably acceptable to the Creditors' Committee.

(3)     All exhibits, schedules and other attachments to the Plan, and all Plan Documents, shall be in form and substance reasonably acceptable to the Debtors and the Investor.

(4)     The Trust Agreement shall be in form and substance reasonably acceptable to the Creditors' Committee.

(5)     The Contract Assumption Schedule shall not exclude any (i) commercial non-real estate executory contract, (ii) real estate/unexpired lease or (iii) employee/employee benefit/indemnification obligations listed on the preliminary Contract Assumption Schedule (attached as Exhibit A-1) whose exclusion or exclusions will, in the good faith belief of the Debtors and Creditors' Committee, result in an aggregate net increase of more than $4 million to the aggregate amount of Allowed Claims in Class 4 and Class 6, unless the Creditors' Committee has otherwise consented.

(b)     Conditions to Consummation.  The following are conditions to the occurrence of Consummation:

(1)     The Contract Assumption Schedule shall not exclude any (i) commercial non-real estate executory contract, (ii) real estate/unexpired lease or (iii) employee/employee benefit/indemnification obligations listed on the preliminary Contract Assumption Schedule (attached as Exhibit A-1) whose exclusion or exclusions will, in the good faith belief of the Debtors and Creditors' Committee, result in an aggregate net increase of more than $4 million to the aggregate amount of Allowed Claims in Class 4 and Class 6, unless the Creditors' Committee has otherwise consented.

(2)     The Confirmation Order, in form and substance acceptable to the Debtors and the Investor and reasonably acceptable to the Creditors' Committee, shall have been entered by the Bankruptcy Court, shall have become a Final Order and shall not have been modified or vacated on appeal or otherwise, and no stay of the Confirmation Order shall be in effect.

49

(3)     All conditions to the Investor's funding of the Equity Investment, as set forth in the Equity Purchase Agreement, shall have been satisfied or waived in accordance with the terms thereof.

(4)     All conditions to the Debtors' closing under the Equity Purchase Agreement shall have been satisfied or waived in accordance with the terms thereof.

(5)     The Bankruptcy Court shall have authorized the assumption and rejection of executory contracts and unexpired leases by the Debtors as contemplated by Article IV.

(6)     The New Term Credit Facility and the New ABL Facility each shall have been executed and delivered by all of the entities that are parties thereto, and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof, and funding pursuant to the New Term Credit Facility and the New ABL Facility shall have occurred.

(7)     All other actions, documents and agreements determined by the Debtors and the Investor and reasonably acceptable to the Creditors' Committee to be necessary to effectuate the Plan shall have been effected or executed and all such documents and agreements shall be in form and substance acceptable to the Debtors and the Investor.

(8)     All authorizations, consents, regulatory approvals, rulings, letters, no action letters, opinions and documents that are determined by the Debtors, with prior approval of the Investor and reasonably acceptable to the Creditors' Committee, to be necessary to effectuate the Plan have been received.

(9)     The Plan shall not have been materially amended, altered or modified from the Plan confirmed by the Confirmation Order.

(10)     The Confirmation Date shall have occurred.

(c)     <u>Waiver of Conditions</u>.  The Debtors, subject to the required consents as set forth in subsections (a) and (b) above, may waive one or more of the conditions to Confirmation and Consummation.  However, if prior consent is not required from a particular party, the Debtors shall provide two Business Days notice of any waiver to such party.

(d)     <u>Failure of Conditions</u>.  If each of the conditions to Consummation is not satisfied or duly waived by May 31, 2010, then unless the Debtors agree otherwise and file notice with the Bankruptcy Court to such effect, the Confirmation Order shall automatically be vacated without further order of the Bankruptcy Court.  If the Confirmation Order is vacated pursuant to this Article VIII, then the Plan shall be null and void in all respects, and nothing in the Plan, the Disclosure Statement, any Plan Document or the Confirmation Order shall constitute or be deemed a waiver or release of any claims by or against any Debtor or any other entity, or to prejudice in any manner the rights of a Debtor or any other entity in any proceedings involving a Debtor.

US 303315v.7

# ARTICLE IX

## EFFECT OF CONFIRMATION OF THE PLAN

9.1    <u>Discharge of Claims and Termination of Interests</u>.  Pursuant to § 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights and treatment that are provided in the Plan shall be in complete satisfaction, discharge and release, effective as of the Effective Date, of any and all Claims and Old Equity Interests or causes of action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Equity Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities and causes of action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Equity Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt, right or Equity Interest is filed or deemed filed pursuant to § 501 of the Bankruptcy Code; (b) a Claim or Equity Interest based upon such debt, right or Equity Interest is Allowed pursuant to § 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Equity Interest has accepted the Plan.

The Confirmation Order, except as provided herein or therein, shall be, subject to the occurrence of the Effective Date, a judicial determination of discharge of all Claims and causes of action against a Debtor and the termination of all Old Equity Interests, such discharge shall void any judgment against a Debtor at any time obtained to the extent it relates to a discharged Claim or cause of action or the terminated Old Equity Interests, and all entities shall be precluded from asserting against a Debtor, a Reorganized Debtor or any of their respective property, any Claim or cause of action based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a Proof of Claim. Any default by the Debtors or their Affiliates with respect to any Claim or Equity Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  As provided in § 524 of the Bankruptcy Code, entry of the Confirmation Order shall operate as an injunction against the prosecution of any action against a Debtor, a Reorganized Debtor, the Creditors' Trust, the Trustee, the Trust Advisory Board or any of their property to the extent such prosecution relates to a discharged Claim or cause of action or the terminated Old Equity Interests.  Notwithstanding the foregoing paragraph, nothing herein shall be deemed to prevent any party in interest from pursuing an action to enforce the terms of the Plan or the Confirmation Order.

9.2    <u>Subordinated Claims</u>.  The allowance, classification and treatment of all Allowed Claims and Equity Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, § 510 of the Bankruptcy Code or otherwise. Pursuant to § 510 of the Bankruptcy Code, the Reorganized Debtors or the Creditors' Trust, as applicable reserve the right to re-classify any Allowed Claim or Equity Interest in accordance with any contractual, legal or equitable subordination relating thereto.

9.3    <u>Compromise and Settlement of Claims and Controversies</u>.  Pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant

51

to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such an Allowed Claim or Equity Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and holders of Claims and Equity Interests and is fair, equitable and reasonable.  In accordance with and subject to the applicable provisions of the Plan, pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors and the Trustee, as applicable, may compromise and settle Claims against them and, in the case of the Reorganized Debtors, Causes of Action against other entities.

9.4    <u>Debtors' Authority</u>.  On and after the Effective Date, each Reorganized Debtor shall be released from the custody and jurisdiction of the Bankruptcy Court and may operate its business and may use, acquire and dispose of property without supervision or approval by the Bankruptcy Court, except for those matters as to which the Bankruptcy Court specifically retains jurisdiction under the Plan or the Confirmation Order.

9.5    <u>Vesting of Reorganized Assets and Causes of Action</u>.  On the Effective Date, except as otherwise provided for in this Plan or the Confirmation Order, (1) the Reorganized Assets of each Debtor's Estate shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, encumbrances, interests, Old Equity Interests and Causes of Action against or in each Debtor or Reorganized Debtor or its property (except for Assumed Obligations and Permitted Reorganized Asset Liens), and (2) any and all Trust Assets, belonging to the Debtors or their Estates shall be preserved and shall vest in the Creditors' Trust. In no event shall any of the Excluded Assets vest in any of the Reorganized Debtors, whether on the Effective Date, or otherwise.

9.6    <u>Injunction</u>.  ***From and after the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order, all Persons and other entities who have been, are, or may be holders of Claims against or Old Equity Interests in a Debtor shall be permanently enjoined from taking any of the following actions against or affecting a Debtor, a Reorganized Debtor, the Creditors' Trust, the Trustee, the Trust Advisory Board or the property of any of the foregoing, with respect to such Claims or Old Equity Interest (other than actions brought to enforce any rights or obligations under the Plan and appeals, if any, from the Confirmation Order):***

(1)    ***commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against a Debtor, a Reorganized Debtor, the Creditors' Trust, the Trustee, the Trust Advisory Board or their property, or any direct or indirect successor in interest to a Debtor or any assets or property of such successor (including all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);***

(2)    ***enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against a Debtor, a Reorganized Debtor, the Creditors' Trust, the Trustee, the Trust Advisory Board or their property, or any direct or indirect successor in interest to a Debtor or any assets or property of such successor;***

52

(3)    *creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Lien against a Debtor, a Reorganized Debtor, the Creditors' Trust, the Trustee, the Trust Advisory Board or their property, or any direct or indirect successor in interest to a Debtor or any assets or property of such successor;*

(4)    *except as otherwise provided in the Plan, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due a Debtor, a Reorganized Debtor, the Creditors' Trust, the Trustee, the Trust Advisory Board or their property, or any direct or indirect successor in interest to a Debtor or any assets or property of such successor unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding an indication in a Proof of Claim or otherwise that such holder asserts, has or intends to preserve any right of setoff pursuant to § 553 of the Bankruptcy Code or otherwise;*

(5)    *commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released or settled pursuant to the Plan; and*

(6)    *proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.*

(b)    Nothing in the Plan or Confirmation Order shall preclude any Person or other entity from pursuing an action against one or more of the Debtors in a nominal capacity to recover insurance proceeds so long as the Debtors or Reorganized Debtors, as applicable, and any such entity agree in writing that such entity will: (a) waive all Claims against the Debtors, the Reorganized Debtors and the Estates related to such action, and (b) enforce any judgment on account of such Claim solely against applicable insurance proceeds, if any.

9.7    <u>Exculpation</u>.  From and after the Effective Date, none of the Debtors, the Reorganized Debtors, the DIP Lenders, the DIP Agent, the Creditors' Committee, the Creditors Trust, the Trustee, the Trust Advisory Board, Investor, the Term Lenders, the Prepetition Lenders and the Prepetition Agents, any Person that sold Term Loans to any of the Ahold Entities after the Petition Date but prior to Confirmation, the Ahold Entities and the Lone Star Entities and their respective members, officers, directors, employees, advisors, professionals, attorneys or agents, acting in such capacity, shall have or incur any liability to any entity for any act or omission in connection with, related to or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, implementation, Confirmation or Consummation of the Plan, the property to be distributed under the Plan or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; <u>provided</u>, <u>however</u>, that the foregoing provisions shall not affect the liability of any entity that results from any act or omission to the extent that such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct.  Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  The Debtors, the Creditors' Committee, the Lone Star Entities and the Ahold Entities (and each of their respective Affiliates, agents, directors, officers, employees, advisors and attorneys) have and upon Confirmation, but subject to the Effective Date, shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distribution of the securities pursuant to the Plan, and therefore are not, and on account of such distribution shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or

53

rejections of the Plan or such distributions made pursuant to the Plan. Nothing in this paragraph shall impair the police or regulatory powers of the United States of America or any Governmental Unit thereof. Nothing in this paragraph shall apply in any action brought by the Securities and Exchange Commission in exercise of its police and regulatory powers.

  9.8 <u>Releases by the Debtors</u>. Pursuant to § 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or a Plan Document, for good and valuable consideration, including services provided to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are released and discharged by the Debtors, the Reorganized Debtors, the Estates, the Creditors' Trust, and the Trustee from any and all Causes of Action whatsoever that constitute property of any Estate, including any derivative Causes of Action asserted or that could be asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors, the Reorganized Debtors, the Estates or their respective Affiliates, the Creditors' Trust and the Trustee would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other entity that constitutes property of any Estate, based on or relating to or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale or rescission of any security of the Debtors, the subject matter of or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, any purchase, sale or other transfer of the Term Loans, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan and Disclosure Statement or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes a failure to perform the duty to act in good faith, with the care of an ordinarily prudent person and in a manner the Released Party reasonably believed to be in the best interests of the Debtors (to the extent such duty is imposed by applicable non-bankruptcy law) where such failure to perform constitutes willful misconduct or gross negligence; <u>provided</u>, <u>however</u>, that such release and discharge shall not apply to (i) any obligations of the Released Parties under the Plan or any Plan Document, (ii) any executory contract or unexpired lease assumed by the Debtors or the Reorganized Debtors, (iii) any Claims, Causes of Action, rights of set-off or other rights or defenses relating to any Class 4 Claim as provided in the last sentence of Section 3.14 of the Plan, (iv) any defenses asserted by the Creditors' Trust to a commercial contract and/or employment-related Class 4 Claim or Class 6 Claim of any officer, director, or employee of the Debtors, but only to the extent that such defense is asserted in connection with any dispute of, objection to or reconciliation of any Class 4 Claim or Class 6 Claim or is directly related to the calculation, allowability, or enforceability of any Class 4 Claim or Class 6 Claim (but not for purposes of affirmative recovery) or (v) defenses to an indemnification Claim asserted by any of the Debtors' officers or directors not serving as an officer or director as of the Effective Date that directly relates to the calculation, allowability or enforceability of any such indemnification claims (other than Claims or Causes of Action arising under §§ 502(d), 544-550 of the Bankruptcy Code or under any other similar law that may be applicable). Such release shall be effective notwithstanding that the Debtors, the Reorganized Debtors, the Estates and their respective Affiliates, the Creditors' Committee, the Creditors' Trust and the Trustee or other entity may thereafter discover facts in addition to, or different from, those which that entity previously knew or believed to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and the Debtors, the Reorganized Debtors, the Estates and their respective Affiliates, the Creditors' Committee, the Creditors' Trust, the Trustee and any successors or assigns are hereby expressly deemed to have waived any and all rights that they may have under any statute or common law principle which would limit the effect of the foregoing release, waiver and discharge to those claims actually known or suspected to exist on the Effective Date. For the sake of clarity, this Section 9.8 applies only to Causes of Action that are property of the Estates or derivative of property of the

Estates and not to any direct or personal causes of action, if any, which might belong to individual creditors or interest holders against any of the Released Parties.

9.9     Protection Against Discriminatory Treatment.  Consistent with § 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors or another entity with whom such Reorganized Debtors have been associated, solely because one of the Debtors has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

9.10    Setoffs.  Except as otherwise expressly provided for in the Plan, each Reorganized Debtor and the Trustee, as applicable, pursuant to the Bankruptcy Code (including § 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights or Causes of Action of any nature that such Debtor, Reorganized Debtor or Trustee, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor or the Trustee, as applicable, of any such Claims, rights or Causes of Action that such Reorganized Debtor or Trustee may possess against such holder.  In no event shall any holder of Claims be entitled to setoff any Claim against any other Claim, right or Cause of Action of the Debtor, Reorganized Debtor, or Trustee, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has or intends to preserve any right of setoff pursuant to § 553 or otherwise.

9.11    Recoupment.  In no event shall any holder of Claims be entitled to recoup any Claim against any other Claim, right or Cause of Action of the Debtors, the Reorganized Debtors, the Creditors' Trust or the Trustee, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before Confirmation, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has or intends to preserve any right of recoupment.

9.12    Release of Liens.  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article VII and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released, and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns.

9.13    Document Retention.  On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their current document retention policy, as may be altered, amended, modified or supplemented by the Reorganized Debtors in the ordinary course of business.

US 303315v.7

9.14    <u>Reimbursement or Contribution</u>.  If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an entity pursuant to § 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed notwithstanding § 502(j) of the Bankruptcy Code, unless prior to the Effective Date: (a) such Claim has been adjudicated as noncontingent or (b) the relevant holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

9.15    <u>Abandonment</u>On the Effective Date, any and all Excluded Assets, other than those certain Excluded Assets constituting Trust Causes of Action, shall be abandoned by the Debtors and their Estates and shall not vest in the Reorganized Debtors or the Creditors' Trust.  In accordance with Article IV, any and all contracts and leases constituting Excluded Assets shall be rejected as of the Effective Date.

ARTICLE X

MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

10.1    <u>Modification and Amendments</u>.  Except as otherwise specifically provided in the Plan and subject to the rights of the Investor under the Equity Purchase Agreement with respect to material terms, the Debtors reserve the right to, in consultation with the Creditors' Committee, modify the Plan and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves their respective rights to revoke or withdraw or, subject to the rights of the Investor under the Equity Purchase Agreement with respect to material terms, to alter, amend or modify materially the Plan or any Plan Document with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan or any Plan Document, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, any Plan Document, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X.  Upon their filing, the Plan Documents may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours, and at the Debtors' private website at http://www.kccllc.net/bi-lo.  The Plan Documents are an integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

10.2    <u>Effect of Confirmation on Modifications</u>.  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to § 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

10.3    <u>Revocation or Withdrawal of Plan</u>.  Subject to the Equity Purchase Agreement, the Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization.  If a revocation or withdrawal occurs, the Debtors shall provide two (2) Business Days' written notice to the Creditors' Committee of any revocation or withdrawal of the Plan.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of executory contracts or unexpired leases effected by the Plan and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims or Equity Interests; (2) prejudice in any manner the rights of such Debtor or any other

56

entity; or (3) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor or any other entity.

ARTICLE XI

RETENTION OF JURISDICTION

11.1    <u>Scope of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over all matters arising out of or related to, the Chapter 11 Cases and the Plan pursuant to §§ 105(a) and 1142 of the Bankruptcy Code (except in the case of the New ABL Facility, the New Term Notes and the Reorganized BI-LO Holding LLC Agreement, which shall be subject, in each case, to the jurisdiction set forth in the definitive documentation thereof) to the fullest extent legally permissible, including but not limited to jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status or amount of any Claim or Equity Interest regardless of the source of payment or funding for such claim, including the resolution of any request for payment of any Administrative Claim;

(b)    Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for payment of Professional Claims authorized pursuant to the Bankruptcy Code or the Plan;

(c)    Determine requests for the payment of Claims and Equity Interests entitled to priority pursuant to § 507 of the Bankruptcy Code;

(d)    Resolve any matters related to: (1) the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable, and to hear, determine and, if necessary, liquidate, any Cure Amount or Claims arising therefrom, including Cure Amounts or Claims pursuant to § 365 of the Bankruptcy Code; (2) any potential contractual obligation under any executory contract or unexpired lease that is assumed; (3) the Reorganized Debtors amending, modifying or supplementing, after the Effective Date, the Contract Assumption Schedule; and (4) any dispute regarding whether a contract or lease is or was executory or expired;

(e)    Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(f)    Adjudicate any and all disputes arising from or relating to distributions under the Plan;

(g)    Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications whether pending on the Confirmation Date or commenced thereafter by any party;

(h)    Adjudicate, decide or resolve any and all matters relating to Causes of Action by or on behalf of the Debtors, the Reorganized Debtors, the Trustee or the Creditors' Trust;

(i)    Adjudicate, decide or resolve any and all matters related to § 1141 of the Bankruptcy Code;

57

(j)     Enter and enforce any order for the sale of property pursuant to §§ 363, 1123 or 1146(a) of the Bankruptcy Code;

(k)     Resolve any cases, controversies, suits, disputes, or causes of action that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

(l)     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with Consummation or enforcement of the Plan;

(m)     Adjudicate, decide or resolve any disputes arising in connection with the interpretation, implementation or enforcement of the Creditors' Trust, the Trust Agreement or actions involving the Trustee;

(n)     Resolve any cases, controversies, suits, disputes or causes of action with respect to the releases, injunctions and other provisions contained in Article IX and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

(o)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(p)     Consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(q)     Hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan (or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan, including the Trust Agreement) and Confirmation Order, including any and all disputes arising in connection with the interpretation, implementation or enforcement of the discharge, release and injunction provisions contained in the Plan, and issue such orders as are necessary to aid in the implementation of the Plan including enforcement of the Plan provisions regarding payment of Class 5 Claims;

(r)     Hear and determine matters concerning state, local and federal Taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(s)     Hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(t)     Enforce all orders previously entered by the Bankruptcy Court;

(u)     Recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(v)     Hear and determine any matters that may be pending in the Bankruptcy Court on the Effective Date;

(w)     Hear any other matter not inconsistent with the Bankruptcy Court's jurisdiction; and

US 303315v.7

(x)      Enter a final decree closing the Chapter 11 Cases as contemplated by Bankruptcy Rule 3022.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1    <u>Immediate Binding Effect</u>.  Notwithstanding Bankruptcy Rules 3020(e), 6004(g) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Documents shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Reorganized Debtors and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan or herein, each entity acquiring property under the Plan and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

12.2    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to § 1930(a) of title 28 of the United States Code, as determined by the Bankruptcy Court at a hearing pursuant to § 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Effective Date and thereafter such fee shall be paid in accordance with Section 5.3(h) hereof.

12.3    <u>Dissolution of Creditors' Committee</u>.  On the Effective Date, the Creditors' Committee shall cease operating and dissolve and other than with respect to its duty to maintain the confidentiality of protected, confidential or commercially sensitive information in accordance with any applicable agreements, orders of the Bankruptcy Court or the Creditors' Committee by-laws (which duty shall continue) the Creditors' Committee members shall  have no further  duties, responsibilities and obligations in connection with the Chapter 11 Cases; <u>provided</u>, <u>however</u>, that the Creditors' Committee shall exist and its Professionals shall be retained and their Professional Fees shall be paid with respect to (a) the preparation of their applications for Professional Claims, (b) responding to any objections to such applications, whether formal or informal, and attendance at any hearings with respect to such applications, (c) reviewing, and if required, preparing and prosecuting objections to Professional Claims of other Professionals, whether formal or informal and attendance at any hearings with respect to such objections;  (d) defending against or otherwise participating in any challenge to the provisions of the Plan or the Confirmation Order, including appeals and (e) reviewing post-Effective Date changes, if any, to the Contract Assumption Schedule, consistent with the limitations contained in Section 8.1(b)(1). Other than as set forth herein, on the Effective Date, the retention and employment of the Committee's Professionals shall terminate without further order of the Bankruptcy Court.

12.4    <u>Nonseverability of Plan Provisions</u>.  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, (a) the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation and (b) no re-solicitation of any acceptance or rejection of the Plan shall be required.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (x) valid and enforceable pursuant to its terms (y) integral to the

59

Plan and may not be deleted or modified without the Debtors' consent and (z) nonseverable and mutually dependent.

      12.5    <u>Reservation of Rights</u>.  Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Documents shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Equity Interests prior to the Effective Date.

      12.6    <u>Successors and Assigns</u>.  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries or guardian, if any, of each entity.

      12.7    <u>Notices</u>.  To be effective, all notices, requests and demands to or upon the following parties shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

      To the Debtors:

            BI-LO, LLC
            208 BI-LO Blvd.
            Greenville, South Carolina 29607
            Facsimile: (864) 234-6999
            Attn: Brian P. Carney

      To counsel for the Debtors:

            VINSON & ELKINS L.L.P.
            3700 Trammell Crow Center
            2001 Ross Avenue
            Dallas, Texas 75201-2975
            Facsimile: (214) 220-7718
            Attn:  Josiah M. Daniel, III

            -and-

            NELSON MULLINS RILEY & SCARBOROUGH, L.L.P.
            1320 Main Street, 17th Floor
            Post Office Box 11070 (29211)
            Columbia, SC 29201
            Facsimile:  (803) 256-7500
            Attn:  George B. Cauthen

      To counsel for the Creditors' Committee:

            OTTERBOURG STEINDLER HOUSTON & ROSEN, P.C.
            230 Park Avenue

New York, New York 10016
Facsimile: (212) 682-6104
Attn: Scott L. Hazan and Enid Nagler Stuart

-and-

McCARTHY LAW FIRM, LLC
1715 Pickens Street (29201)
Columbia, South Carolina 29211-1332
Facsimile: (803) 779-0267
Attn: G. William McCarthy, Jr. and Daniel J. Reynolds

To the Trustee of the Creditors' Trust

[to be provided]

To counsel for Lone Star:

KING AND SPALDING, PC
1100 Louisiana Street
Houston, Texas 77002
Facsimile: (713) 751-3290
Attn: Edward L. Ripley

-and-

LEVY LAW FIRM, PC
2300 Wayne Street
Columbia, South Carolina 29201
Facsimile: (803) 799-5245
Attn: R. Geoffrey Levy

12.8    Waiver or Estoppel.  Each holder of a Claim or an Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, the Creditors' Committee or its counsel or any other entity, if such agreement was not disclosed in the Plan, the Disclosure Statement or papers filed with the Bankruptcy Court prior to Confirmation.

12.9    Conflicts. Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Documents or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

12.10    Exhibits.  All exhibits and Plan Documents are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Except as otherwise provided in the Plan, such exhibits and Plan Documents shall be filed with the Bankruptcy Court on or before the date that is 10 days prior to the Voting Deadline.  After the

61

exhibits and Plan Documents are filed, copies of such exhibits and documents will be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and Plan Documents from the Debtors' private website at http://www.kccllc.net/bi-lo.

12.11   Terms of Injunctions or Stays.  Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to §§ 105 or 362 of the Bankruptcy Code or any Final Order, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

12.12   Entire Agreement.  Except as otherwise indicated, the Plan and the Plan Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

12.13   Closing of Chapter 11 Cases.  The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

12.14   Governing Law.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 Cases, including the Plan Documents, shall be governed by, and construed and enforced in accordance with, the laws of the State of South Carolina (without giving effect to the principles of conflicts of law of such jurisdiction), except as may be otherwise specifically provided in such agreements, documents and instruments.

US 303315v.7

Dated:  March 15, 2010                Respectfully submitted,
                                      DEBTORS

                                By:   */s/ Brian P. Carney*_____
                                      Executive Vice President and
                                      Chief Financial Officer
                                      BI-LO, LLC