**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **09-02140-hb**

# ORDER DENYING MOTION OF DONNIE T. SKELTON

The relief set forth on the following pages, for a total of 16 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/30/2010**



US Bankruptcy Judge
District of South Carolina

Entered: 07/30/2010

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | § | |
|---|---|---|
| In re: | § | Case No. 09-02140 (HB) |
| | § | |
| BI-LO, LLC *et al.*, | § | Chapter 11 |
| | § | |
| Debtors.[1] | § | (Joint Administration) |
| | § | |

**ORDER DENYING MOTION OF DONNIE T. SKELTON**

This matter came before the Court pursuant to Donnie T. Skelton's ("Skelton") Motion to Allow Late Filed Claim to be Deemed Timely Filed and Memorandum in Support [Docket Entry 3286], filed on May 21, 2010. Clingman & Hanger Management Associates, LLC, the Trustee for the Creditors' Trust ("Trustee") appointed under the confirmed plan of reorganization of BI-LO, LLC, et. al. ("BI-LO), objected to the Motion. At the hearing, William G. McCarthy, Jr., appeared on behalf of the Trustee; Julius W. Babb, IV, appeared on behalf of Skelton, who was not present at the hearing; and Frank B.B. Knowlton appeared on behalf of BI-LO. The Court finds as follows:

**FACTS**

1. BI-LO operates more than 200 grocery stores and employs approximately 15,000 people across the Southeast.

2. Skelton was employed by Bi-LO, and alleges that on or about February 7, 2009, he was wrongfully terminated from his employment.

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: BI-LO, LLC (0130); BI-LO Holding, LLC (5011); BG Cards, LLC (4159); ARP Ballentine LLC (6936); ARP James Island LLC (9163); ARP Moonville LLC (0930); ARP Chickamauga LLC (9515); ARP Morganton LLC (4010); ARP Hartsville LLC (7906); and ARP Winston Salem LLC (2540).

3. Bi-LO filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 23, 2009.

4. At some point during April 2009, Skelton hired the law firm of Cromer & Mabry.

5. On April 2, 2009, at the direction of the BI-LO's bankruptcy counsel and the Court, Skelton and others were mailed a copy of the "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines" ("Bar Date Notice") [Docket Entry 174], as evidenced by the Certificate of Mailing filed in this bankruptcy case [Docket Entry 221]. The Bar Date Notice was mailed by BI-LO's noticing and balloting agent, Kurtzman Carson Consultants LLC ("KCC").[2] The Bar Date Notice provided that the deadline for creditors to file a proof of claim was August 13, 2009. A copy was timely mailed to Skelton at "319 Olde Springs Road, Columbia, SC 29223," which was the last known address for Skelton of which BI-LO was aware.

6. Skelton filed charges of discrimination against BI-LO with the South Carolina Human Affairs Commission ("SCHAC") and the United States Equal Employment Opportunity Commission ("EEOC") dated June 3 and 4, 2009. Skelton provided these documents (included below) to the Court as Movant's Exhibit 2:

---

[2] The Court approved BI-LO's application to employ KCC as claims, noticing and balloting agent on March 25, 2009. *See* Order Authorizing the Debtors to Employ Kurtzman Carson Consultants LLC as Claims, Noticing and Balloting Agent, *In re BI-LO, LLC*, C/A No. 09-02140-hb (Bankr. D.S.C. March 25, 2009) [Docket Entry 57].

2

EEOC FORM 131-A (5/01)

**U.S. Equal Employment Opportunity Commission**

|  |  |
|---|---|
| Ms. Susan Howell<br>Fair Employment Manager<br>BI-LO, LLC<br>P.O. BOX 99<br>Mauldin, SC 29662 | **PERSON FILING CHARGE**<br><br>**Donnie R. Skelton**<br>THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s)<br>EEOC CHARGE NO.<br>**14C-2009-01120**<br>FEPA CHARGE NO.<br>**2-09-275R,RET** |

**NOTICE OF CHARGE OF DISCRIMINATION** IN JURISDICTION WHERE A FEP AGENCY WILL INITIALLY PROCESS
(See the enclosed for additional information)

THIS IS NOTICE THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[X] Title VII of the Civil Rights Act          [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act   [ ] The Equal Pay Act

HAS BEEN RECEIVED BY

[ ] The EEOC and sent for initial processing to _____ (FEP Agency)

[X] The   South Carolina Human Affairs Commission   and sent to EEOC for dual filing purposes.
         (FEP Agency)

While EEOC has jurisdiction (upon expiration of any deferral requirement if this is a Title VII or ADA charge) to investigate this charge, EEOC may suspend its investigation and await the issuance of the Agency's final findings and orders. These findings and orders will be given weight by EEOC in making its own determination as to whether reasonable cause exists to believe that discrimination has occurred.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency will be considered by EEOC when it reviews the Agency's final findings and orders. In many cases EEOC will take no further action, thereby avoiding the necessity of an investigation by both the Agency and EEOC. This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final findings and orders of the above-named Agency. For such a request to be honored, you must notify EEOC in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by EEOC. Regardless of whether the Agency or EEOC processes the charge, the Recordkeeping and Non-Retaliation provisions of the statutes as explained in the enclosed information sheet apply.

For further correspondence on this matter, please use the charge number(s) shown above.

Enclosure(s): Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN   [ ] AGE   [ ] DISABILITY   [X] RETALIATION   [ ] OTHER

See enclosed copy of charge of discrimination. This charge is also filed under the S.C. Human Affairs Law, as amended.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| June 4, 2009 | Reuben Daniels, JR,<br>District Director | |

3

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA [X] EEOC | 14C-2009-01120 |

| South Carolina Human Affairs Commission | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Donnie R. Skelton | (803) 736-9651 | 09-08-1964 |

| Street Address | City, State and ZIP Code |
|---|---|
| 319 Olde Springs Rd, Columbia, SC 29223 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| BI-LO STORE #521 | 500 or More | (803) 712-9776 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1126 Us Hwy 321 Business S, Winnsboro, SC 29180 | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| [X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN | Earliest: 06-01-2008   Latest: 02-07-2009 |
| [X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER (Specify below.) | [ ] CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. **PERSONAL HARM:** (A) I was harassed from June 2008 through February 7, 2009. (B) I was disciplined through February 7, 2009. (C) I was discharged on or about February 7, 2009.

II. **RESPONDENT'S REASON(S) FOR ADVERSE ACTION(S):** (A) No reason given. (B & C) I was told that I violated company policy due to a key code violation.

III. **COMPLAINANT'S CONTENTION(S):** (A) The district manager (w/f) constantly conducted walkthroughs with me and pointed out things that I needed to improve. I contend that I would always handle these issues immediately and make any changes that I saw needed to be made. The district manager was constantly beating me down in a condescending tone. The White store directors were not harassed in this manner. (B) I contend that there was no written policy regarding a key violation, and White store directors were not punished as I was. (C) I voiced my concerns to the regional human resource manager concerning my discriminatory treatment, but I am not aware of any actions being taken to correct the district manager's discriminatory actions toward me. Although I always received exceptional evaluations, I believe I was singled out because I was the only Black store director among 13 stores. I further believe I was fired in retaliation because I complained about my disparate treatment.

IV. **DISCRIMINATION STATEMENT:** I therefore believe that I was discriminated against because of my race (Black), and in retaliation for my opposition to employment practices declared unlawful by the South Carolina Human Affairs Law, as amended, and Title VII of the United States Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: 06/3/09

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

June 3, 2009

---

7.     The claims bar date in the bankruptcy case passed on August 13, 2009, and neither Skelton nor his counsel filed a timely claim. Skelton's counsel admitted that Skelton received the Bar Date Notice. However, counsel stated at the hearing that they

4

were not aware of the deadline to file a claim and of the ramifications for not filing a claim.

8. BI-LO's counsel stated that he had spoken with a member of the firm representing Skelton around December 2009, which was after the bar date, and advised that individual to file a motion to allow a late proof of claim, and even sent a number of documents to aid in filing such a motion.

9. On February 23, 2010, the EEOC mailed Skelton a "Dismissal and Notice of Rights" letter (included below) explaining that Skelton had ninety days to file a lawsuit:

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Donnie R. Skelton
319 Olde Springs Rd
Columbia, SC 29223

From: Charlotte District Office
129 W. Trade Street
Suite 400
Charlotte, NC 28202

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 14C-2009-01120 | Cassandra P. Atcherson, State & Local Coordinator | (704) 954-6438 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

Reuben Daniels, Jr.,
District Director

February 23, 2010
*(Date Mailed)*

Enclosures(s)

cc: Thomas Bright
Ogletree, Deakins, Nash, Smoak & Stewart, PC
P.O. Box 2757
Greenville, SC 29602

J. Lewis Cromer
Cromer & Mabry
P.O. Box 11675
Columbia, SC 29211

6

Enclosure with EEOC
Form 161-B (3/98)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge within 90 days of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than 2 years (3 years) before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before 7/1/02 -- not 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- Title VII and the ADA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request within 6 months of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

10.   Skelton's counsel explained that the firm of Ogletree, Deakins, Nash, Smoak & Stewart, PC represented the BI-LO in labor and employment matters, and that

7

as the above letter indicates attorney Thomas Bright of that firm received a copy of the letter.

11.     Skelton's counsel explained to the Court that his law firm believed that no further action or filing of a proof of claim was required while the matter was under investigation by the EEOC.  Counsel argued that he assumed that filing the matter with the EEOC and SCHAC put BI-LO on notice of the potential claim by Skelton.  Skelton's counsel explained that EEOC and SCHAC are the gatekeepers to discrimination lawsuits, which resulted in counsel's inference/conclusion that nothing would affect Skelton's claim in a bankruptcy proceeding without the approval of EEOC and SCHAC.

12.     On April 30, 2010, the Court entered an order confirming the BI-LO's Fourth Amended Plan of Reorganization.  The plan created a Creditors' Trust for timely filed claims and required BI-LO to deposit funds with the Trustee for distribution to those creditors.  Skelton's late claim, if allowed, would be submitted to the Trustee for payment from that fund as a beneficiary.  Based on the record available to the Court in this case, it is anticipated that a significant distribution will be made to the numerous beneficiaries/creditors with timely filed claims, but that claims will not be paid in full.  Available funds will be distributed pro rata after expenses are paid.

13. Skelton's claim and Motion were filed on May 21, 2010, within the ninety days set forth in the right to sue letter.  The amount of the claim is unknown and therefore must be liquidated.  The Creditors' Trust argues that contesting and/or liquidating the claim and the costs thereof will unfairly dilute the distribution to creditors that filed proofs of claim prior to the bar date.

14. Skelton could have filed a claim in the bankruptcy case at any time to preserve his rights pending any determination or final action by the EEOC and/or SCHAC.

15. Skelton's counsel requested that Skelton be permitted to seek compensation from BI-LO's insurance coverage for his claims as well. BI-LO's counsel explained to the Court that the BI-LO is self-insured and that liability on this claim would have to exceed one-million dollars before the insurance coverage would be available.

16. At the hearing, the Court asked Skelton's counsel when his firm received notice of the bar date from Skelton. Skelton's counsel stated that he did not know. There is no further evidence before the Court regarding Skelton's actions or inaction in failing to file a timely proof of claim.

## DISCUSSION AND CONCLUSIONS OF LAW

### Excusable Neglect

Skelton, through his counsel, asserts that his failure to file a proof of claim prior to the deadline resulted from excusable neglect and, therefore, he should be permitted to file his late claim and have it deemed timely filed. Rule 9006(b)(1) provides the basis for the relief sought by Skelton:

> When an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect*.

(emphasis added). The Supreme Court has addressed excusable neglect, stating the following:

9

> Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors. In overseeing this latter process, the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization. This context suggests that Rule 9006's allowance for late filings due to 'excusable neglect' entails a correspondingly equitable inquiry.

*Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 389 (U.S. 1993) (citations omitted). The *Pioneer* Court further discussed Rule 9006(b)(1), providing that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388.[3] Finally, the *Pioneer* Court explained that the following factors were relevant in determining whether excusable neglect was present: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. Other courts have found that an excusable neglect inquiry involves weighing the *Pioneer* factors, but "that not all factors need to favor the moving party." *In re XO Communications, Inc.*, 301 B.R. 782, 796 (Bankr. S.D.N.Y. 2003) (finding that the majority of the *Pioneer* factors weighed in favor of the debtor despite the fact that there was little prejudice to the debtor due to the small size of the movant's claim). "Instead, courts are to look for a synergy of several factors that conspire to push the analysis one way or the other." *In re 50-Off Stores, Inc.*, 220

---

[3] This Court notes that a review of the decisions of other bankruptcy courts since *Pioneer* suggests that allowing late filed claims as a result of excusable neglect appears to be the exception, not the rule. *See In re Gardenhire*, 209 F.3d 1145 (9th Cir. 2000) (holding that "a bankruptcy court lacks equitable discretion to enlarge the time to file proofs of claim; rather, it may only enlarge the filing time pursuant to the exceptions set forth in the Bankruptcy Code and Rules."); *see also Jones v. Chemetron Corp.*, 212 F.3d 199 (3rd Cir. 2000); *see also In re American Classic Voyages Co.*, 405 F.3d 127 (3rd Cir. 2005); *see also In re Enron Corp.*, 419 F.3d 115 (2nd Cir. 2005); *see also In re Kmart Corp.*, 381 F.3d 709 (7th Cir. 2004).

10

B.R. 897, 901 (Bankr. W.D. Tex. 1998) (finding that excusable neglect was not present where creditors received notice of the bar date from the court and supplemental notice from the debtors; that allowing the claims would not create significant problems in delaying or complicating the judicial proceedings, nor were the claims large enough to interfere with the case's administration; that allowance of one claim could result in the filing of many other claims, which would be prejudicial to the debtor; and that the notice given to claimants was not ambiguous).

### The danger of prejudice to the Debtors, the length of the delay and its potential impact on judicial proceedings

The bar date in Chapter 11 cases functions as a statute of limitations that excludes late claims "in order to provide the Debtor and its creditors with finality to the claims process and permit the Debtor to make swift distributions under the Plan." *XO Communications*, 301 B.R. at 797-98; *see also Berger v. TWA (In re TWA)*, 96 F.3d 687, 690 (3d Cir. Del. 1996); *see also Grand Union*, 204 B.R. 864 (finding that excusable neglect was not present to warrant allowing the late filed proofs of claims).

The record reflects that BI-LO likely had some notice of Skelton's complaints as a result of the June 3 and 4, 2009, charges of discrimination.[4] Further, a non-bankruptcy attorney for BI-LO was copied on the February 23, 2010, right to sue letter.[5] However, the record does not support a finding that BI-LO or creditors of the bankruptcy estate had knowledge of Skelton's intent to pursue a claim in this bankruptcy proceeding prior to the

---

[4] Note that the U.S. Equal Employment Opportunity Commission form provided by Skelton lists "Ms. Susan Howell, Fair Employment Manager, BI-LO, LLC, P.O. Box 99, Mauldin, SC 29662" and therefore it appears that through the administrative process she was likely provided with notice of the complaint. However, the form is unsigned and there is no direct proof of any such notice.

[5] The record in this case indicates that BI-LO employs a small army of attorneys across the Southeast for various specific matters not necessarily related to the bankruptcy case. *See* Docket #168, *Order Authorizing Debtors' Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business*.

11

phone call with Debtors' counsel, and definite notice that a claim would be asserted herein was not received until this Motion was filed. That notice was after the bar date passed and after the plan, which included payment for timely filed claims, was confirmed. The gathering of claims against a debtor in one forum through uniform procedures—providing a deadline for asserting those claims, notice to the debtor and other creditors of those claims, and thereafter allowing a debtor and creditors the right to rely on claims timely and properly asserted—is essential in bankruptcy. Skelton filed his proof of claim and Motion approximately nine months after the bar date and after the plan was confirmed. This delay is significant, especially given the progression of this case during that time. BI-LO proceeded towards evaluation of claims and confirmed a plan relying on claims timely filed in the bankruptcy case. Creditors reviewed and voted on the plan without notice of this claim.

Further, litigation to dispute the merits of the claim could delay distribution to other beneficiaries of the Creditors' Trust who timely filed claims. Finally, allowing any late claim on the facts presented could set a precedent encouraging or allowing others.

The estate will be prejudiced if the claim is allowed.

### The reason for the delay, including whether it was within the reasonable control of the movant

When deciding whether excusable neglect is present, numerous courts emphasize "the reason for the delay" factor. *In re PT-1 Communications, Inc.*, 403 B.R. 250, 260 (Bankr. E.D.N.Y. 2009); *In re Enron Corp.*, 419 F.3d. 115, 122 (2nd Cir. 2005) ("We noted, though, that 'we and other circuits have focused on the third factor: "the reason for the delay, including whether it was within the reasonable control of the movant."'"(quoting *Pioneer*, 507 U.S. at 395)); *Lowry v. McDonnell Douglas Corp.*, 211

12

F.3d 457, 463 (8th Cir. 2000) ("While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry."); *In re Musicland Holding Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006) ("Consequently, the Second Circuit, as well as other Circuits, focus on the third factor—the reason for the delay—as the predominant factor."). "Courts generally do not rule in favor of claimants . . . who have neglected to timely file proofs of claim as a result of their failure to communicate with counsel regarding a legal notice or their own or their counsel's disregard of the relevant substantive law governing their claim." *In re Agway*, Inc., 313 B.R. 31, 40 (Bankr. N.D.N.Y. 2004); *see also Brunswick*, 2007 WL 160749, at *5.

The Court cannot determine Skelton's reason for the delay nor whether the delay was in Skelton's reasonable control. Skelton's counsel admitted that Skelton timely and properly received the Bar Date Notice at Skelton's last known address. Skelton's counsel also stated that his firm did not believe they had to make any additional filings to preserve his claim in the bankruptcy after the matter was reported to the EEOC and SCHAC. In light of this, Skelton's counsel insists that Skelton should not be prejudiced by counsel's failure to file a claim. However, a repeated review of the record does not show if or when Skelton notified his counsel that he received notice of the bar date. The Court notes that Skelton did not attend the hearing or testify. In addition, there is no evidence showing that Skelton sought advice from counsel after receiving notice of the bar date or relied on the advice of his counsel in deciding not to file a proof of claim prior to the bar date. Although Skelton's counsel states that the client should not be prejudiced by counsel's failure to file a claim on his behalf, the Court does not have sufficient

13

evidence to conclude that the delay in filing the claim was not within the reasonable control of Skelton, that Skelton's counsel was notified by Skelton of the bar date, that Skelton's counsel led Skelton to believe that no proof of claim was necessary, or that the delay was reasonable.

### Whether the Movant Acted in Good Faith

In cases addressing motions to allow late filed claims based upon excusable neglect, it is rarely found that the movants acted without good faith; therefore, courts often give little weight to the good faith factor in an excusable neglect analysis. *BOUSA, Inc. v. United States (In re Bulk Oil (USA) Inc.)*, 2007 WL 1121739, n. 6 (S.D.N.Y. Apr. 11, 2007). However, courts have found that inaction during the time period allotted for the filing of claims is an example of a lack of good faith. *In re J.S. II, L.L.C.*, 397 B.R. 383, 389 (Bankr. N.D. Ill. 2008). In courts' examinations of the good faith factor in excusable neglect analyses, the inquiry as to whether good faith is present focuses on a subjective review of the specific facts of a given case. *See In re Garden Ridge Corp.*, 348 B.R. 642 (Bankr. D. Del. 2006); *see also In re Smidth & Co.*, 413 B.R. 161 (Bankr. D. Del. 2009); *see also In re J.S. II, L.L.C.*, 397 B.R. 383.

No actions by Skelton or his counsel suggest an absence of good faith and there is no evidence or testimony specifically addressing Skelton's good faith. Therefore, this factor is neutral.

**CONCLUSION**

After weighing the factors necessary to a finding of excusable neglect, the Court finds that they weigh in favor of the objecting party and therefore Skelton's Motion should be denied.

**IT IS THEREFORE, ORDERED**, that the Motion of Donnie T. Skelton to Allow Late Filed Claim to be Deemed Timely Filed is **DENIED.**