**UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA**

Case Number: 09-02140-HB

**ORDER REGARDING MOTION OF WILLIAM KAYE, LIQUIDATING TRUSTEE
FOR BFW LIQUIDATION, LLC F/K/A BRUNO'S SUPERMARKETS, LLC FOR
RELIEF FROM AUTOMATIC STAY TO LIQUIDATE CLAIMS**

The relief set forth on the following pages, for a total of <u>15</u> pages including this page, is hereby
**ORDERED**.

**FILED BY THE COURT
08/13/2010**



Entered: 08/13/2010

US Bankruptcy Judge
District of South Carolina

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | § | |
|---|---|---|
| In re: | § | Case No. 09-02140 (HB) |
| | § | |
| BI-LO, LLC *et al.*, | § | Chapter 11 |
| | § | |
| Debtors.[1] | § | (Joint Administration) |
| | § | |

**ORDER REGARDING MOTION OF WILLIAM KAYE, LIQUIDATING TRUSTEE FOR BFW LIQUIDATION, LLC F/K/A BRUNO'S SUPERMARKETS, LLC FOR RELIEF FROM AUTOMATIC STAY TO LIQUIDATE CLAIMS**

---

This contested matter comes before the Court upon the *Motion of William Kaye, Liquidating Trustee for BFW Liquidation, LLC f/k/a Bruno's Supermarkets, LLC for Relief from Automatic Stay to Liquidate Claims* [Docket Nos. 1675, 1722] (the "Lift Stay Motion")[2] of William Kaye, Liquidating Trustee for BFW Liquidation, LLC f/k/a Bruno's Supermarkets, LLC (the "Bruno's Trustee"), which was filed on October 27, 2009, to liquidate the claims of the Bruno's Trustee (the "Claims")[3] against BI-LO, LLC ("BI-LO") and its affiliates, the above-captioned Debtors (collectively, the "Debtors"), which consist largely of avoidance actions against the Debtors that arise under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and that relate to the bankruptcy case of BFW Liquidation, LLC f/k/a

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: BI-LO, LLC (0130); BI-LO Holding, LLC (5011); BG Cards, LLC (4159); ARP Ballentine LLC (6936); ARP James Island LLC (9163); ARP Moonville LLC (0930); ARP Chickamauga LLC (9515); ARP Morganton LLC (4010); ARP Hartsville LLC (7906); and ARP Winston Salem LLC (2540).

[2] The same motion appears at both docket numbers. Docket No. 1675 was filed on October 27, 2009, and Docket No. 1722 was filed on November 4, 2009. This Order resolves both docketed items, and the clerk shall so reflect on the official docket of this case.

[3] Bruno's Supermarkets, LLC ("Bruno's Supermarkets") filed Claim No. 947 against BI-LO, LLC. The Official Committee of Unsecured Creditors of BFW Liquidation, LLC f/k/a Bruno's Supermarkets, LLC (the "Bruno's Committee") filed Claim Nos. 991, 1020-24, and 1109-1112 against each of the Debtors. Each of these claims except for Claim No. 991 has been expunged because they were duplicates of the same claim. The Bruno's Trustee has filed Claim Nos. 1682 - 1691, represented as amending each of the aforementioned claims of Bruno's Supermarkets and the Bruno's Committee.

Bruno's Supermarkets, LLC ("Bruno's"), which case is pending in the United States Bankruptcy Court for the Northern District of Alabama, Southern Division, Case No. 09-00634-BCG (the "Bruno's Court" and the "Bruno's Case").

On November 12, 2009, the Debtors filed an objection to the Lift Stay Motion.[4] On June 25, 2010, the Bruno's Trustee filed a reply to the Objection.[5] On June 28, 2010, the Debtors filed a supplement to their Objection.[6]

The Bruno's Trustee and the Debtors presented a joint set of exhibits that were, by agreement, admitted into evidence. The Court has also taken judicial notice of the record in these Chapter 11 Cases. After conducting a hearing, and with careful consideration of the record and the arguments, the Court makes the following Findings of Fact and Conclusions of Law[7] pursuant to rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which is effective in this contested matter by virtue of Bankruptcy Rule 9014:

## FINDINGS OF FACT

1.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E) and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Appropriate notice of this matter was provided to all parties in interest, and no other or further notice is necessary.

---

[4]  *Debtors' Objection to Motion of William Kaye, Liquidating Trustee for BFW Liquidation, LLC f/k/a Bruno's Supermarkets, LLC for Relief from Automatic Stay to Liquidate Claims* [Docket No. 1769] (the "Objection").

[5]  *Reply of William Kaye, Liquidating Trustee for BFW Liquidation, LLC f/k/a Bruno's Supermarkets, LLC to Debtors' Objection to Motion of Liquidating Trustee for Relief from Automatic Stay to Liquidate Claims* [Docket No. 3375] (the "Reply").

[6]  *Supplement to the Debtors' Objection to Proof of Claim No. 947 Filed by Bruno's Supermarkets, LLC and to Proofs of Claim Nos. 991, 1020-24, and 1109-1112 Filed by the Official Committee of Unsecured Creditors of Bruno's Supermarkets, LLC as Amended by Claim Nos. 1682-1691 Filed by William Kaye, Liquidation Trustee for BFW Liquidation, LLC f/k/a Bruno's Supermarkets, LLC* [Docket No. 3381] (the "Supplement").

[7]  To the extent that any Findings of Fact constitute Conclusions of Law, they are adopted as such; and to the extent that any Conclusions of Law constitute Findings of Fact, they are so adopted.

2

2. BI-LO operates as a regional retail supermarket chain under the "BI-LO" and "Super BI-LO" banners. On March 23, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy cases (the "Chapter 11 Cases"). On March 24, 2009, the Court entered its *Order Directing Joint Administration of the Debtors' Related Chapter 11 Cases* consolidating the Chapter 11 Cases under Case No. 09-02140 for procedural purposes. On April 30, 2010, the Court entered its *Order Confirming Debtors' Fourth Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 3225] (the "Confirmation Order"). The Debtors filed a notice of the Effective Date of the Plan on May 12, 2010 [Docket No. 3250]. BI-LO continues to be one of the largest food retailers in the southeastern United States, operating more than 200 stores in South Carolina, North Carolina, Georgia and Tennessee, with the majority of stores located in South Carolina. BI-LO's corporate headquarters are located in Greenville, South Carolina, and it employs more than 15,000 employees.

3. On October 27, 2009, the Bruno's Trustee filed the Lift Stay Motion. The hearing on that Motion has repeatedly been postponed for various reasons.

4. As a result, the hearing on the Lift Stay Motion, which was filed well before confirmation of the Plan, was not conducted until after the Plan had been confirmed and had become effective. The hearing on the Lift Stay Motion was held in Spartanburg, South Carolina on June 29, 2010.

5. The evidence reflects that BI-LO has asserted against Bruno's in the Bruno's Case, and the Bruno's Trustee has asserted against BI-LO in these Chapter 11 Cases, the following claims:

3

| **BI-LO'S CLAIMS AGAINST BRUNO'S** |
|---|---|
| (based upon Amended Claim dated Oct. 23, 2009) |
| **AMOUNT** | **BASIS** |
| $3,300,000.00 | Unpaid principal balance on Promissory Note |
| $20,212.58 | Accrued and unpaid interest on the Promissory Note (through the Petition Date) |
| $44,220.65 | Accrued and unpaid fees related to the C&S Letter of Credit, Ace Letter of Credit, and the RLI Letter of Credit |
| $4,390,808.00 | Amounts paid on behalf of Bruno's under the C&S Guaranty (excluding the portion entitled to administrative expense status) |
| $1,589,810.00 | Administrative expense portion of amount paid to C&S on Bruno's behalf |
| $461,478.21 | Other amounts due |
| $6,500,000.00 | Amount owed to C&S due to draw on Letter of Credit |
| **$14,716,719.44** | **TOTAL (excluding administrative expense)** |
| **$16,306,529.44** | **TOTAL (including administrative expense)** |

| **BRUNO'S CLAIMS AGAINST BI-LO** |
|---|---|
| (based upon Amended Claim # 1682 dated April 15, 2010) |
| **AMOUNT** | **BASIS** |
| Any amounts asserted based upon rejection of the Cardinal Leases (Cardinal Landlords have filed proofs of claim asserting over $16,000,000.00) | Fraudulent transfer under § 548 based upon Cardinal Lease Assignment |
| $6,130,000.00 plus additional rent, including common area maintenance, taxes, and insurance | Preferential transfer under § 547 and applicable state law based upon Cardinal Lease Assignment[8] |
| $7,900,000.00 | Fraudulent transfer under § 548 based upon Transition Services Agreement[9] |

---

[8]  The Debtors have objected to the timeliness of the assertion of this Claim in their Supplement.

[9]  The Debtors have objected to the timeliness of the assertion of this Claim in their Supplement.

4

| | |
|---|---|
| $198,719,195.00 | Preferential Transfers Under § 547 on Account of Repayment of Advances |
| $72,000,000.00 | Preferential Transfers Under § 547 on Account of Payment under Bruno's Supply Agreement |
| *unknown amount* | Unjust Enrichment/Money Had and Received/Additional Preferences and Fraudulent Transfers |
| Subordination of all of BI-LO's claims | Equitable Subordination[10] |
| **Not less than $40,000,000.00** | **ASSERTED TOTAL PER THE PROOF OF CLAIM** |
| $300,749,195.00 | **TOTAL BASED UPON ADDING UP ALL ASSERTED CLAIM AMOUNTS[11]** |

6. Based upon their alleged aggregate amount, the Bruno's Trustee's Claim is one of the two largest unsecured claims asserted in these cases.

7. The Confirmation Order provides that the Bruno's Trustee's "ability . . . to effectuate a setoff against the claims asserted by the Debtors, Reorganized Debtors or Trustee, as may be applicable, against the Bruno's Estate shall be determined by such forum as may be determined pursuant to subparagraph (c) of this paragraph 11[5] of the Confirmation Order." Confirmation Order ¶ 115(a)(3). Subparagraph (c) of ¶ 115 of the Confirmation Order provides that:

> The disputed claims by William Kaye, the Liquidating Trustee of BFW Liquidation, LLC f/k/a Bruno's Supermarkets, LLC . . . against the Debtors and Reorganized Debtors and vice versa shall (absent settlement in the meantime) be litigated and resolved in such forum as shall be subsequently determined by Final Order of the Bankruptcy Court based on the following pending motion and pleadings: *William Kaye, Liquidating Trustee for BFW*

---

[10] In *The Liquidating Trustee's Objection to Claim No. 793, as Amended by Claim No. 986, Filed by BI-LO, LLC and BI-LO, LLC's Combined (I) Notice of Transfer of Claims from C&S Wholesale Grocers, Inc. to BI-LO, LLC Pursuant to Federal Rule of Bankruptcy Procedure 3001 (E)(1) and (II) Application for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(9)* [Docket No. 2411 in the Bruno's Case, at 20] (the "Bruno's Trustee's Claim Objection"), which is Exhibit 5 admitted at the Hearing, the Bruno's Trustee asserts that BI-LO's claims against Bruno's ought to be equitably subordinated.

[11] The parties have raised numerous objections to each others' asserted claims.

5

> *Liquidation, LLC f/k/a Bruno's Supermarkets, LLC's Motion For Relief From Automatic Stay To Liquidate Claims* filed October 27, 2009 . . . [Docket No. 1675] as amended [Docket No. 1722], the opposition to it of the Debtors [Docket No. 1769] and other parties, or any amended, supplemental or other pleadings seeking or opposing the same relief[,] and *nothing contained in the Plan or this Order shall prejudice the determination of the Lift-Stay Motion subsequently to the entry of this [Confirmation] Order.*

Confirmation Order ¶ 115(c) (emphasis added).

## DISCUSSION AND CONCLUSIONS OF LAW

As movant, the Bruno's Trustee alleges "cause" for relief from the automatic stay and, therefore, has the burden of proof in this matter under Bankruptcy Code § 362(g).  *See* COLLIER ON BANKRUPTCY ¶ 303.35 (Alan N. Resnick & Henry J. Sommer eds., 15th ed.) (explaining that pursuant to § 362(g), party moving under § 362 for relief from stay for cause "must establish its *prima facie* case").

The Lift Stay Motion requests that this Court lift the Debtors' automatic stay so that the Bruno's Trustee can liquidate its Claims against BI-LO in the Bruno's Case.  However, the Lift Stay Motion might be viewed as moot or the relief requested as unavailable because the Debtors' automatic stay has terminated.  *See* Plan § 12.11 (providing that the automatic stay terminated on the Debtors' Effective Date, which was May 12, 2010).  In place of the automatic stay, the Debtors' confirmed Plan implements the Plan Injunction, which provides:

> From and after the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order, all Persons and other entities who have been, are, or may be **holders of Claims against . . . a Debtor shall be permanently enjoined from** taking any of the following actions against or affecting a Debtor, a Reorganized Debtor, the Creditors' Trust, the Trustee, the Trust Advisory Board or the property of any of the foregoing, **with respect to such Claims** . . . (other than actions brought to enforce any rights or obligations under the Plan and appeals, if any from the Confirmation Order). . . **commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against a Debtor,** a Reorganized Debtor, the

6

> Creditors' Trust, the Trustee, the Trust Advisory Board or their property or any direct or indirect successor in interest to a Debtor or any assets or property of such successor . . . .

Plan § 9.6(1). Similar to the automatic stay prior to the Effective Date, the Plan Injunction presently in place bars the Bruno's Trustee from commencing, conducting or continuing in any manner its proceedings and claims directly and offensively against the Debtors in the Bruno's Case. Nevertheless, ¶ 115(c) of the Confirmation Order speaks to this Court deciding the Lift Stay Motion without prejudice from or on account of the confirmation of the Plan.

Accordingly, the Bruno's Trustee must at a minimum demonstrate that it would have grounds for lifting the automatic stay, as asserted in the Lift Stay Motion. *See In re Worldcom, Inc.*, 2006 WL 2270379, at * 2 (S.D.N.Y. Aug. 8, 2006) (noting that Bankruptcy Court treated motion to lift stay as request to lift Plan Injunction since it had become effective after the lift stay motion was filed, and district court considered issue with respect to lifting the Plan Injunction "by analogy" to a decision to lift stay). *See also In re Worldcom, Inc.*, 2006 WL 2255071 (S.D.N.Y. Aug. 4, 2006) (applying, by analogy and agreement of the parties, the factors regarding lifting automatic stay from *In re Sonnax Indus.*, 907 F.2d 1280 (2d Cir. 1990), to the issue of whether to lift Plan Injunction); *In re Worldcom, Inc.*, 2007 WL 841948, at *5 (Bankr. S.D.N.Y. March 12, 2007) (holding that the "cause" factors for lifting the automatic stay would apply in the context of the Plan Injunction).

Bankruptcy Code § 362(d) permits a bankruptcy court to lift the automatic stay "for cause." 11 U.S.C. § 362(d). Analogizing the Bruno's Trustee's Lift Stay Motion to a request to lift the Plan Injunction under the *Worldcom* decisions, the Bruno's Trustee must show "cause" under the present facts to lift the Plan Injunction. The Fourth Circuit in *Robbins v. Robbins (In re Robbins)* has articulated "the factors the [bankruptcy] court should consider in deciding whether 'cause' has been shown." 964 F.2d 342, 345 (4th Cir. 1992).

7

> The factors that courts consider in deciding whether to lift the automatic stay include (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Id.* As to the first *Robbins* factor, the issues in the pending litigation do not involve only state law or causes of action with which a bankruptcy court would be unfamiliar. First, the claims asserted by Bruno's against BI-LO, which are at the center of this controversy, are primarily based upon provisions of the Bankruptcy Code. Moreover, in substance, the claims asserted by the Bruno's Trustee against BI-LO are avoidance actions and other contract-based claims, which are clearly familiar territory for a bankruptcy court. Because the Claims, which were filed in this Court, do not implicate law with which this Court is unfamiliar, this factor weighs against granting the requested relief.

As to the second *Robbins* factor – whether modifying the stay to allow the Bruno's Trustee's Claims against BI-LO to be resolved by the Bruno's Court, will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court – modifying the stay would not serve to consolidate all of the issues in the Bruno's Court. By way of example, in their Supplement, the Debtors object that certain of the Claims asserted by the Bruno's Trustee in his amended Claims against BI-LO are time barred as they were not raised prior to the August 17, 2009 bar date in these Chapter 11 Cases. This issue is one to be exclusively resolved by this Court. *See, e.g.*, *Fein v. Young (In re Young)*, 425 B.R. 811, (Bankr. E.D. Tex. 2010) (explaining that issue of whether claims are time-barred is within the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I), (J) and (O)); *In re Jestice*, No. 99-14947-SSM, 2000 WL

8

1805312, at *2 (Bankr. E.D. Va. Oct. 16, 2000) (exercising core jurisdiction under 28 U.S.C. § 157(b)(2)(I) over issue of whether claims are time-barred).[12]  If the inter-estate claims of BI-LO and Bruno's were to be resolved together in the Bruno's Court, there would inevitably be residual issues to be decided by this Court since the Debtors' Plan is what controls the allowance of claims and payment, including the variable percentage recovery, of the Claims.  Thus, judicial economy would not be furthered by granting the requested relief to allow all the inter-estate claims to be resolved in the Bruno's Court.

As to the third *Robbins* factor – whether BI-LO's estates will be sufficiently protected by merely requiring the Bruno's Trustee to seek enforcement by this Court of any liquidated claim against BI-LO that has been liquidated in the Bruno's Court -- at best this factor is neutral considering the competing and equal interests of the two pending bankruptcy cases. Consideration of this factor does not sway the Court in the direction of granting the relief requested by movant.

Further, the Bruno's Trustee's asserted Claims are in excess of $40 million, one of the two largest unsecured claims filed against these Debtors.  Resolution of these Claims is central to this case and to the Debtors' reorganization. Likewise, resolution of BI-LO's Claims is similarly important to the Bruno's Case. These matters are not as simple as merely conditioning requested relief on enforcement of any judgment in a particular Court. One could argue that the matter is simplified by the fact that the Plan expressly provides that payment on the Bruno's Trustee's Claims (Class 5 Claims[13]) once reduced to judgment and allowed, will come from the Investor[14]

---

[12] It is unclear at the present time whether there are other issues relating to allowance of the Claims that must also be resolved by this Court, but there may be others.

[13] "Class 5 Claims" are defined in the Plan as:
> The Claims asserted or those that could have been asserted by or on behalf of . . . (a) the bankruptcy estate of Bruno's Supermarkets, LLC or its successor, including those Claims as evidenced by the Proofs of Claim filed against the Debtors' Estates (Claim Nos. 991, 1020-24 and 1109-1112) . . . .

rather than BI-LO.[15] However, the Claims remain Claims *against* BI-LO, and the BI-LO estates will be affected by prosecution and resolution of the Claims in at least three ways. First, BI-LO's Chapter 11 Cases cannot be concluded until these large Claims are resolved. *See* Plan § 5.3(h). The Court's responsibility for administration of the Chapter 11 Cases and implementation of the Plan with respect to all classes of claims, including Class 5, is noteworthy and will continue until the cases are closed. Second, the Bruno's Trustee's Claims are asserted *against* BI-LO, and the Debtors represented to the Court that the litigation and defense of those Claims will be paid for by the Reorganized Debtors. Third, as shown in Exhibit 10, the Bruno's Trustee has sued members of the Debtors' present management in the United States District Court for the Northern District of Texas on a number of the same allegations underlying the Bruno's Trustee's Claims against BI-LO. The Debtors therefore argue that the litigation of the issues presented by and underlying the Claims is of great importance to the Debtors and their estates and to the completion of this case.

No substantial reason has been presented by movant to persuade this Court to grant all of the requested relief and alter the status quo, which calls for this Court to determine the allowance of Bruno's claims against BI-LO filed with this Court and for the Bruno's Court to determine BI-

---

Plan § 1.1(a)(29).

[14] Capitalized terms utilized but not otherwise defined herein retain the meanings ascribed to them in the Plan.

[15] According to the Plan, a Class 5 Claim is entitled to the following treatment under the Plan:

> On the Effective Date, in full and complete settlement, satisfaction, and discharge of such Claim, each holder of an Allowed Class 5 Claim shall be entitled to receive from the Investor (or its designee) on the Distribution Dates, its Class 5 Payment calculated at the same percentage as paid to holders of Allowed Class 4 Claims (for clarity, if the Pro Rata Share ultimately paid to Class 4 Claims is 50%, then Class 5 Claims will likewise ultimately receive 50% of their Allowed Claim). Lone Star Fund V (U.S.) LP shall guarantee the Class 5 payment to be made pursuant to the Plan.

Plan § 2.6(e)(2). "Class 5 Payment" is defined in the Plan as "the Cash paid by the Investor, if any, to be made to . . . the United Food and Commercial Workers Union and Employers Pension Fund, on account of their . . . Allowed Class 5 Claim[], if any payment is required by the Plan. *See* Plan § 1.1(a)(30). The Plan defines the "Distribution Date with respect to a Class 5 Claim as "the Quarterly Distribution Date following the calendar month in which the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order or in which, by agreement, any Disputed Claim becomes an Allowed Claim." Plan § 1.1(a)(58).

LO claims against Bruno's. Both parties have submitted to the jurisdiction of each of those courts for the resolution of their respective claims by filing proofs of claim in each of the bankruptcy cases. *See, e.g., Langenkamp*, 498 U.S. at 44; *In re Exide Techs.*, 544 F.3d at 214. The Court has found no legal basis to justify shedding its jurisdiction over the resolution of the Bruno's Trustee's Claims in these Chapter 11 Cases. While there is little legal guidance regarding how to best resolve inter-estate claims of two debtors in separate bankruptcy proceedings, the case law on "dueling bankruptcies" that does exist deals only with the utilization of defensive counterclaims; the reported cases do not deal with stripping a bankruptcy court of its rightful jurisdiction to allow or disallow claims filed in the cases before it in favor of another bankruptcy court.

Furthermore, based upon the case law presented to the Court on this issue, if each of the parties raises its claims in the other bankruptcy case as defenses or purely defensive counterclaims to the claims filed in its own case, there is no law preventing them from doing so. Indeed, case law supports the proposition that doing so is acceptable. *See, e.g.*, *Justus v. Fin News Network, Inc. (In re Fin. News Network)*, 158 B.R. 570, 573 (S.D.N.Y. 1993) (automatic stay in one debtor's bankruptcy case does not prevent party against whom debtor has a claim from asserting defenses to such claims in order to protect "its own legal rights and its own bankrupt estate"); *In re Metiom*, 301 B.R. 634, 638-39 (Bankr. S.D.N.Y. 2003) (same); *see also In re Lehman Bros. Holdings, Inc.*, No. 08-13555(JMP), October 27, 2009 [Docket No. 5634] (denying debtors' motion to enforce automatic stay against creditor defending its position in foreign insolvency proceedings).

The Court acknowledges that issues of collateral estoppel, or issue preclusion,[16] may be implicated due to the fact that the parties may raise the same issues in their respective claims against each other as defensive counterclaims. The resolution of the issues underlying the defenses may be asserted to be binding on another court on that particular issue with respect to resolving the claims (which are correlative to those counterclaims), or vice versa. To the extent that the doctrine of collateral estoppel may later be implicated, it will operate as intended to enforce judicial efficiency. *See, e.g., In re PRS Ins. Grp, Inc.*, 331 B.R. 580, 588 (Bankr. D. Del. 2005) (explaining that "[j]urisdiction to consider a proof of claim submitted by a creditor includes jurisdiction to determine all defenses to that proof of claim, including affirmative counterclaims that may be set off against that claim" and that "the fact that claim or issue preclusion might apply between the two fora [in that case, the bankruptcy court and a state court's liquidation proceedings], however, enhances efficiency and judicial economy rather than destroys it"). To the extent the Bruno's Trustee is concerned that he is enjoined from asserting his counterclaims against the Debtors defensively before the Bruno's Court, the case law supports and BI-LO has acknowledged that the Bruno's Trustee may do so.

However, the Debtors argue that the Bruno's Trustee's assertion that BI-LO's claims against Bruno's should be equitably subordinated[17] is an "*offensive* action," not a defense, and may not be asserted against BI-LO in the Bruno's Case absent relief from this court. *Lehman Commercial Paper, Inc. v. Palmdale Hills Property, LLC (In re Palmdale Hills Property, LLC)*, 423 B.R. 655, 666 (9th Cir. B.A.P. 2009), *appeal docketed*, No. 10-60004 (9th Cir. April 30, 2010) ("unlike in *claim disallowance, in the situatio*n of equitable subordination, a creditor *has*

---

[16] "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). Moreover, "an equitable determination can have collateral-estoppel effect in a subsequent legal action." *Id.* at 335.

[17] *See* Bruno's Trustee's Claim Objection at p. 20.

12

the right to payment on its claim, but that property right may be modified by the bankruptcy court based upon equitable principles. This key difference turns Debtors' assertion of equitable subordination as a proper defense to Lehman Commercial's Stay Relief Motion into an offensive action against Lehman Commercial's property"). The Bruno's Trustee's subordination action "seeks affirmative control over property of [the Debtors'] bankruptcy estate by proposing to alter the priority of [the Debtors'] claim .... Thus, equitable subordination seeks *affirmative* relief: the modification of a claimant's valid claim and property interest." *Id.* at 667 (emphasis added) (citing 4 Collier on Bankruptcy, ¶ 510.01).

The Court finds that the Bruno's Trustee has shown cause to modify the stay or Plan Injunction for the limited purpose of allowing the Bruno's Trustee to litigate its assertions that BI-LO's Claims in Bruno's Case are affected by equitable subordination in the Bruno's Court as part of the claims determination process of the Bruno's Case and any distribution due from that estate. This Court, however, reserves all rights to determine the amount and treatment of any claims of the Bruno's Trustee in this case and any defenses thereto asserted by the Debtors herein, and reserves the right to determine any resulting distributions due as a result of any claim filed in this case that is to be paid pursuant to the terms of this Debtors' Plan.

## **CONCLUSION**

Because the Bruno's Trustee has not met his burden of proving that all of the requested relief should be granted, this Court concludes that the Bruno's Trustee may not liquidate Bruno's Claims against BI-LO in the Bruno's Court, except as indicated herein. The claims filed by BI-LO and the Bruno's Trustee against each other and defenses thereto can be resolved by the bankruptcy courts in which they filed their respective proofs of claim. This Court's ruling, therefore, leaves undisturbed the core jurisdiction of this Bankruptcy Court and also of the Bruno's Court over resolution of the claims filed in each respective proceeding.

**IT IS HEREBY, ORDERED**:

1. That the Lift Stay Motion is **DENIED** as to all requested relief not specifically set out herein. The relief is **GRANTED** only as is necessary to allow the Bruno's Trustee to raise and prosecute any issues regarding equitable subordination in the Bruno's Court as part of the claims determination process of the Bruno's estate and distribution therefrom.

2. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**AND IT IS SO ORDERED**.